**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-179 |
| | ) | |
| | ) | |
| RACHEL POWELL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT POWELL'S MOTION TO DISMISS COUNT ONE OF THE
INDICTMENT**

**Table of Contents**

Introduction ................................................................................................................ 1

The Indictment and Criminal Complaint .......................................................... 3

Argument ................................................................................................................ 4

I.      Standard for a Rule 12(b) motion to dismiss an indictment ................... 4

II.     Count One must be dismissed because it does not allege
an "official proceeding" under § 1512(c)(2) ........................................... 5

        A.     The plain meaning of "proceeding" contemplates investigations
and evidence; the court erred in *Montgomery* in concluding that
the joint session was a Chapter 73 proceeding ............................ 5

        B.     *Montgomery* erred in holding that the *Ermoian/Kelley* construction
of "proceeding" is inconsistent with "what Congress does" ......... 14

III.    Count One must be dismissed because § 1512(c)(2) does not reach acts
having no connection to the availability or integrity of evidence ........... 22

        A.     The text of § 1512(c) does not support the government's
interpretation ............................................................................ 22

        B.     *Miller* was plainly correct on statutory context and history ......... 32

IV.    Count One must be dismissed because the government's interpretation
of the term "corruptly" in § 1512(c) is wrong and creates unconstitutional
vagueness .................................................................................................. 35

        A.     "Corruptly" has been equated with "wrongfully" and "immorally"
only in the administration of justice context ............................... 36

        B.     *Poindexter* requires the government to prove additionally that the
defendant committed transitive obstruction .............................. 37

V.     Even if the government's constructions of § 1512 were plausible, at the
least the Court would be left with serious ambiguity or unconstitutional
vagueness .................................................................................................. 39

Conclusion ............................................................................................................ 41

**Introduction**

Rachel Powell has been indicted on eight counts, including a serious property destruction charge involving a Capitol window.  Count One, however, charging her with corruptly obstructing an official proceeding under 18 U.S.C. § 1512(c)(2), is defective for a number of mutually reinforcing reasons.

"*Official proceeding*."  For over a century before January 6, no court had found the existence of a "proceeding" under Chapter 73—titled "Obstruction of Justice"—that did not involve an investigation or evidence.  Interference with those things, directly or indirectly, is an irreducible element of an obstruction of justice offense in federal courts.  Because the joint session of Congress on January 6 involved neither, § 1512(c)(2) does not apply.  Other judges in this district have disagreed, holding that Congress could have used the terms "inquiry and investigation" to define "proceeding" in § 1512 but did not do so.  Thus, by "proceeding" Congress meant any sort of formal assembly (at least in the case of a congressional proceeding).  But that logic assumes what those decisions aimed to demonstrate: that "proceeding" does not necessarily entail an "inquiry and investigation."  When Congress uses the language of one statute in another statute, courts presume that the legislature intended the same meaning in both.  Similarly, courts presume that, when it passes legislation, Congress is aware of the construction placed on preexisting statutory terms by case law.  When the legislation creating § 1512(c)(2) was enacted, Chapter 73's "proceedings" had always been defined by courts to entail investigations and evidence.  The government's construction confuses function and form.  Chapter 73's laws are concerned with protecting a specific function—administering justice—not any form that may be likened to the forms of justice at superficial levels of generality (e.g., while sitting at a Capitol dais the President of the Senate "looks like a judge").  The function of a

Chapter 73 "proceeding" is to find facts and render judgments about them.  That is what defines those proceedings.  In the context of Congress, that means inquiries and investigations.

*Section 1512(c)(2)'s reach is limited to acts that affect the integrity or availability of evidence in a proceeding*.  The government's novel construction of § 1512, created for January 6 cases alone, holds that subsection (c)(2) is the only provision in the statute—titled "Tampering with a witness, victim or informant"—that need not have any relationship to the availability or integrity of evidence in a proceeding.  Any act that obstructs, influences or impedes a proceeding will do—political protest, for example.  Just like its unprecedented interpretation of "proceeding," this contorted reading of § 1512 is forced on the government because the joint session involved no evidence.  As Judge Nichols successfully showed in a recent decision, that interpretation runs counter to text, canons of construction, Supreme Court decisions, statutory context and legislative history.  Even if the government's interpretation were plausible, ambiguity would plainly remain, requiring application of the rule of lenity.

*The government's interpretation of "corruptly" is incorrect and creates unconstitutional vagueness*.  The government contends that § 1512(c)(2)'s term "corruptly" means nothing more than "wrongfully" or "evilly." Because its interpretation of the statute simultaneously eliminates any connection between the crime and investigations and evidence, the government conjures the following new felony punishable by 20 years in prison: any act that influences Congress wrongfully.  That overbroad understanding of "corruptly" is contradicted by decades of case law; reaches protected speech; and generates irremediable vagueness, including by collapsing any distinction between a 20-year felony and the Class B misdemeanor of "parading in the Capitol."

For all these reasons and others, the Court should dismiss Count One pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

2

**The Indictment and Criminal Complaint**

Photographs and videos depict Powell, wearing a distinctive pink beanie hat and fur-lined jacket, appearing to break a Capitol window on January 6.  Crim. Compl., ECF No. 1-1, pp. 5-6. The complaint further alleges that Powell spoke through a bullhorn to encourage others to enter the Capitol Building.  *Id.*  Powell then entered the building through the West Lower Terrace exterior door.

The complaint quotes Powell speaking to a reporter from The New Yorker: "Listen, if somebody doesn't help and direct people, then do more people die?" ECF No. 1-1, p. 12. "That's all I'm going to say about that.  I can't say anymore.  I need to talk to an attorney." *Id.*

The Indictment, filed on March 3, 2021, charges eight counts.  Count One charges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, RACHEL MARIE POWELL, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by entering and remaining in the United States Capitol without authority and engaging in disorderly and disruptive conduct and destroying federal property.

Indictment, ECF No. 12, p. 2.

The Indictment charges four additional felonies.  Count Two concerns depredation of federal property causing damage in an amount more than $1,000.  Counts Three through Five concern Powell's alleged entry into an area restricted for the protection of a U.S. Secret Service protectee, which are elevated to felonies based on the allegation that she used and carried "deadly and dangerous weapons, that is, an ice axe and a large wooden pole." ECF No. 12, pp. 3-5.  Finally, Counts Six through Eight bring Title 40 misdemeanor charges against Powell for parading in the Capitol, and disorderly conduct and physical violence there.  *Id.* at 4-5.

The Court will notice that Count One's § 1512(c)(2) charge is entirely parasitic on the other charges.  Powell, it alleges, obstructed the official proceeding not in some way independent

3

of the conduct in the other counts but because she "enter[ed] and remain[ed] in the United States

Capitol without authority," "engag[ed] in disorderly and disruptive conduct," and "destroy[ed]

federal property." ECF No. 12, p. 2.  That is, Count One asserts that Powell obstruction an

official proceeding because she committed § 1752 violations (Counts Three through Five) and a

§ 1361 violation (Count Two).

**Argument**

**I.     Standard for a Rule 12(b) motion to dismiss an indictment's charge**

Rule 7 of the Federal Rules of Criminal Procedure provides that "the indictment or

information must be a plain, concise, and definite written statement of the essential facts

constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1).  This rule performs three

constitutionally required functions: (1) fulfilling the Sixth Amendment right to be informed of

the nature and cause of the accusation; (2) preventing a person from being subject to double

jeopardy, as required by the Fifth Amendment; and (3) protecting against prosecution for crimes

based on evidence not presented to the grand jury, as required by the Fifth Amendment.  *E.g.*,

*United States v. Sunia*, 643 F. Supp. 2d 51, 77 (D.D.C. 2009); *see also United States v.

Haldeman*, 559 F.2d 31, 123 (D.C. Cir. 1976) ("[I]n order to satisfy [the Fifth Amendment's]

purpose of giving the defendant notice of the charge against him the indictment must allege the

essential elements of the offense.").

Rule 12 provides that a defendant may move to dismiss the pleadings on the basis of a

"defect in the indictment or information," including a "lack of specificity" and a "failure to state

an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii),(v).  In the Supreme Court's last decision to

address the standard, it held that an indictment must "fairly inform[] a defendant of the charge

against which he must defend" and "must be accompanied with such a statement of the facts and

circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974).

## II.   Count One must be dismissed because it does not allege an "official proceeding" under § 1512(c)(2)

### A.   The plain meaning of "proceeding" contemplates investigations and evidence; the court erred in *Montgomery* in concluding that the joint session was a Chapter 73 proceeding

Count One requires the government to prove that on January 6 Powell corruptly obstructed, influenced or impeded an "official proceeding." § 1512(c)(2).  That term is defined elsewhere in § 1515 as follows:

(a) As used in sections 1512 and 1513 of this title and in this section—

(1) the term "official proceeding" means—

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1).

The Court must begin with the text.  An "official proceeding" includes a "proceeding before the Congress." § 1515(a)(1)(B).  But that does not "advance[] the Court's inquiry so far," as the question then becomes what did Congress mean by "proceeding"? *United States v.*

*Montgomery*, 21-cr-46-RDM, 2021 U.S. Dist. LEXIS 246750, at *14 (D.D.C. Dec. 28, 2021).[1]

"[R]ead most broadly," the term "proceeding" means "'[a]n act or step that is part of a larger

action.'" *Id.* (quoting *Proceeding*, Black's Law Dictionary (11th ed. 2019)).  But even the judges

who have declined to dismiss § 1512(c)(2) charges in the January 6 investigation have held that

there "are good reasons . . . to conclude that Congress did not use the word in th[at] sweeping

sense." *Id.*  In particular,

> in each iteration of Section 1515's definition of "official proceeding," the word
> "proceeding" is followed by the preposition "before." The "proceeding" must be "before"
> a judge, court, or grand jury; "before" the Congress of the United States; "before" a
> federal agency conducting a matter "authorized by law"; or "before" an insurance
> regulator or examiner.

*Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *14.

Those prepositions led the *Montgomery* court to interpret § 1515(a)'s "proceeding" as follows:

> First. . . [t]he actions or events that constitute the "proceedings" at issue must comprise
> part of the official business of the enumerated body. The fact that the defined term
> contains the adjective "official" merely reinforces this conclusion. 18 U.S.C. §§
> 1512(c) & 1515(a)(1). Second, the phrase "proceeding before" suggests that the body has
> convened in some formal respect for the purpose of conducting that business. The Court,
> accordingly, concludes that "a proceeding before the Congress" requires more than "an
> action or series of actions" and that not every event occurring within the walls of
> Congress constitutes an "official proceeding." The "proceeding" must involve a formal
> assembly or meeting of Congress for the purpose of conducting official business. This
> interpretation accords with commonly accepted legal definitions of the word
> "proceeding," which define the word to mean, among other things, "[t]he business
> conducted by . . . [an] official body." *Proceeding*, Black's Law Dictionary (11th ed.
> 2019).

*Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *14.

Before proceeding further, it is important to take stock of the *Montgomery* court's

analysis thus far.  The first thing to observe is that its recognition of multiple meanings for

---

[1] Powell focuses on the *Montgomery* decision, as most of the other decisions denying motions to
dismiss the § 1512(c)(2) charge filed by January 6 defendants relied heavily on *Montgomery*.

"proceeding"—and the weight placed by the court on the preposition "before" and the adjective "official"—initially appear to be quite similar to an analysis of § 1515(a) performed by the Ninth Circuit in *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013).  There, the court of appeals held that an FBI investigation does not constitute an "official proceeding" under § 1515(a).  *Id.* However, the similarities between *Montgomery*'s interpretation of "proceeding" and the Ninth Circuit's end there.

First, referencing multiple dictionaries, the court of appeals determined that definitions of "proceeding" fall "into one of two categories." *Ermoian*, 752 F.3d at 1169.  The first was the "lay" sense of the noun: "'[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior.'" *Id.* (quoting *Proceeding*, Oxford English Dictionary).  Another "lay" definition: "'an act or step that is part of a larger action.'" *Id.* (quoting *Proceeding*, Black's Law Dictionary 1241 (8th ed. 2004)).  By contrast, the second and final definitional category was the "legal" sense, meaning "'[a] legal action or process; any act done by authority of a court of law; a step taken by either party in a legal case,'" *id.* (quoting *Proceeding*, Oxford English Dictionary), or "'[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment; any procedural means for seeking redress from a tribunal or agency; and the business conducted by a court or other official body; *a hearing*.'" *Id.* (quoting *Proceeding*, Black's Law Dictionary 1241 (8th ed. 2004)) (emphasis added).

Second, rather than reasoning that § 1515(a)'s preposition "before" and its adjective "official" indicate that "the actions or events that constitute the 'proceedings' at issue must comprise part of the official business of the enumerated body," *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *14, the court of appeals in *Ermoian* concluded that,

7

Several aspects of the definition for "official proceeding" suggest that the *legal*—rather than the lay—understanding of term "proceeding" is implicated *in the statute*. For one, the descriptor "official" indicates a sense of formality normally associated with *legal proceedings*, but not necessarily with a mere "action or series of actions." *See* 18 U.S.C. § 1515; *see also Proceeding*, Oxford English Dictionary, *available at* http://www.oed.com. Moreover, when used to define "official proceeding," the word "proceeding" is surrounded with other words that contemplate a *legal usage* of the term, including "judge or court," "Federal grand jury," "Congress," and "Federal Government agency" . . . .

Thus, clues in the text surrounding "proceeding"—although perhaps not conclusive—point us in a general direction. And the overall tenor of the definitions associated with the legal usage of "proceeding" supports the notion that a mere criminal investigation does not qualify as one. *See* Black's Law Dictionary 1241 (8th ed. 2004). As the commentary accompanying that definition succinctly explains, "'Proceeding' is a word much used to express the *business done in courts*" and "is an act done *by the authority or direction of the court*, express or implied." *Id.* (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 3-4 (2d ed. 1899)).

*Ermoian*, 752 F.3d at 1170 (emphasis added).

Turning back to *Montgomery*, the court did allude generally to the Ninth Circuit's observation in *Ermoian* that "proceeding" has multiple meanings. *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at \*19. However, *Montgomery* framed its definition of "proceeding" as being consistent with *Ermoian*'s: "as the Court does here, the Ninth Circuit rejected the broadest reading—that is, '[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior.'" *Id.* (quoting *Proceeding*, Oxford English Dictionary (3d ed. 2007)). The *Montgomery* court allowed that—to be sure—*Ermoian* held that "'the descriptor 'official' indicates a sense of formality normally associated with *legal proceedings*[.]'" *Id.* (quoting *Ermoian*, 752 F.3d at 1170) (emphasis added). But, *Montgomery* hastened to add, "if anything," Congress's certification of the electoral vote is "a *more* formal (and, indeed, solemn) occasion than most 'legal proceedings.'" *Id.* (emphasis original).

In fact, *Montgomery* conflicts with *Ermoian*. First, *Ermoian* did not merely "reject[] the broadest reading" of "proceeding." *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at \*19.

Rather, as indicated above, the Ninth Circuit identified two definitional categories of "proceeding": lay and legal.  The legal sense of "proceeding" meant "the business done in courts." *Ermoian*, 752 F.3d at 1170.  *Ermoian* held that *that* "understanding of the term 'proceeding' is implicated *in the statute*" overall.  *Id.* (emphasis added).  By contrast, the *Montgomery* court arrived at a meaning of "proceeding"— "compris[ing] part of the official business of the enumerated body"—that fits nowhere within the court of appeals' definitional framework for "proceeding" in *Ermoian*.

Second, the *Montgomery* court omitted from its analysis the following passage from *Ermoian*:

> Looking more broadly to § 1512 where the term "official proceeding" is repeatedly used, it becomes even more apparent that a criminal investigation is not incorporated in the definition. Section 1512 refers to "prevent[ing] the attendance or testimony of any person in an official proceeding"; "prevent[ing] the production of a record, document, or other object, in an official proceeding"; and "be[ing] absent from an official proceeding to which that person has been summoned by legal process." 18 U.S.C. § 1512(a)(1)(A)-(B), (a)(2)(B)(iv). *The use of the terms "attendance", "testimony", "production", and "summon[]" when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated.*

*Ermoian*, 752 F.3d at 1172 (italics and underlining added).

Those terms do not support *Montgomery*'s defining of "proceeding" to mean "the official business" of any "enumerated body"—even if it does not consider evidence or make findings. 2021 U.S. Dist. LEXIS 246750, at *19.  To the contrary, those terms show that it was not some "formality" per se that drove *Ermoian*, *cf. Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *19 ("if anything," Congress's certification of the electoral vote is "a more *formal* (and, indeed, solemn) occasion than most 'legal proceedings'") (emphasis added), but rather an evidence-reviewing *function* that created the "proceeding." To be sure, *Montgomery* held, many or most of § 1512's provisions "contemplate[] a formal environment in which persons are called to appear

or produce documents," but "that point is not true for all parts of the statute." *Id.* at 26.

*Montgomery* then gave the following sole counterexample to contest *Ermoian*'s reasoning:

> Section 1512(d)(1) . . . prohibits hindering "any person from . . . attending . . . an official proceeding," and would thus apply, for example, to efforts to prevent judges, magistrates, members of Congress, and agency officials from attending "official proceeding[s]"—*regardless of whether* [. . .] *any "evidence" will be received.*

2021 U.S. Dist. LEXIS 246750, at *26 (emphasis added).

*Montgomery*'s proposed counterexample to *Ermoian* requires unpacking.  The Court will notice first that *Montgomery*'s citation to § 1512(d)(1) contains a good deal of ellipsis.  Without the omissions, subsection (d) provides,

> (d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—
>
> > (1) attending or testifying in an official proceeding;
> >
> > (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;
> >
> > (3) arresting or seeking the arrest of another person in connection with a Federal offense; or
> >
> > (4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding . . . [shall be punished].

18 U.S.C. § 1512(d).

The Court will next notice that in making the point that subsection (d)(1) prohibits hindering "'any person from . . . attending . . . an official proceeding,'" 2021 U.S. Dist. LEXIS 246750, at *26 (quoting § 1512(d)(1)), *Montgomery* omitted the phrase "or testifying" after "attending." Of course, the word "testifying" does not support *Montgomery*'s perceived counterexample to *Ermoian*'s conclusion that all of § 1512's provisions implied that

"proceeding" requires a tribunal that reviews evidence.  The Court will notice next that *Montgomery* also omitted any reference to § 1512(d)(2)-(4).  All those sections are consistent with *Ermoian*'s tribunal interpretation of "proceeding." Finally, contrary to *Montgomery*, the word "attend[ance]" itself does not somehow support an inference that, although every other provision in § 1512 concerns evidence, a "proceeding" need not involve a review of it. Throughout Chapter 73, the criminal code generally, and the Federal Rules of Criminal Procedure, the verb "attend" is consistently paired with a witness's appearance in a proceeding to give testimony, even where is not ultimately given or admitted.  *E.g.*, Fed. R. Crim. P. 17 (trial subpoena must "command the witness to *attend* and testify"; witness must be paid "*attendance* fee"; subpoena "requiring a witness to *attend* a hearing or trial may be served at any place within the United States") (emphasis added).  Contrary to *Montgomery*, then, no substantive provision in § 1512 supports an interpretation of "proceeding" that does not involve an investigation or evidence.

Third, the *Montgomery* court's reasoning creates redundancy in § 1515 that *Ermoian* avoided.   Section 1515's repeated use of the preposition "before," *Montgomery* held, "indicates that the actions or events that constitute the 'proceedings' at issue must comprise part of the official business of the enumerated body." *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *19. Added the court, "[t]he fact that the defined term contains the adjective 'official' merely reinforces this conclusion. 18 U.S.C. §§ 1512(c) & 1515(a)(1)." *Id.*  To the contrary, if the preposition "before" itself indicated that *any* official business of an enumerated body constituted a § 1515(a) "proceeding," the separate term "official" does not "reinforce [that] conclusion, *id.*— it would be superfluous.  Unlike *Montgomery*, the *Ermoian* court reasoned that the preposition "before" indicated "some formal hearing before a *tribunal*[.]" *Ermoian*, 752 F.3d at 1172

(emphasis added).  That is why an FBI investigation was not a "proceeding"—though it might well be under the *Montgomery* court's definition ("official business of a body").

    *Montgomery* does not just conflict with *Ermoian*.  By not considering a relevant canon of statutory construction, it conflicts with the D.C. Circuit's holding in *United States v. Kelley*, 36 F.3d 1118 (D.C. Cir. 1994).  In *Kelley*, the court of appeals considered whether an investigation opened by the Office of the Inspector General of the Agency for International Development constituted a "proceeding" as defined by the obstruction-of-justice statute § 1505.  *Id.* at 1127.  The D.C. Circuit identified two qualities that mark such a "proceeding": "adjudicative power or . . . the power to enhance the[] investigation[] through the issuance of subpoenas or warrants." *Id.* (citing *United States v. Sutton,* 732 F.2d 1483, 1490 (10th Cir. 1984); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir. 1976); *United States v. Batten,* 226 F. Supp. 492, 493 (D.D.C. 1964), *cert denied,* 380 U.S. 912, 13 L. Ed. 2d 799, 85 S. Ct. 898 (1965), *reh'g denied,* 381 U.S. 930, 14 L. Ed. 2d 688, 85 S. Ct. 1557 (1965)).  Congress's joint session on January 6 lacked adjudicative power; was not an "investigation"; and did not have the power to issue subpoenas or warrants.

    In *Kelley*, the defendant was also charged under § 1512.  The government stipulated that a "parallel should be drawn between" § 1505 and § 1512 for purposes of defining the term "proceeding." *Kelley*, 36 F.3d at 1128.  The Department of Justice appellate attorney who personally stipulated to this "parallel" was Merrick Garland.  *Id.* at 1120.[2]

---

[2] That may go some way towards explaining why the Department of Justice's own Criminal Resource Manual itself rejects the government's "official proceeding" interpretation. Section 1512's "proceeding," the Manual accurately stated (before January 6), is simply a "restatement of the judicial interpretation of the word 'proceeding' in §§ 1503 and 1505," with the only difference being that in the latter provisions the proceeding had to be pending at the time of the offense.  *Official Proceeding*, DOJ Manual, § 1730,

According to the *Montgomery* court, however, the D.C. Circuit's decision in *Kelley* was not "on point." 2021 U.S. Dist. LEXIS 246750, at *27.  *Kelley*, *Montgomery* found, "concerns a different statute—Section 1505. . ." *Id.*  To be sure, the *Montgomery* court observed, the government stipulated in *Kelley* that the term "proceeding" had a "parallel" meaning in § 1505 and § 1512.  Indeed, the current Attorney General stipulated that point.  But that did not "illuminate the issue presented here," according to the *Montgomery* court.  *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *27.

In considering *Kelley*, *Montgomery* omitted the canons of construction that "[w]hen Congress uses the language of one statute in another statute it usually intends both statutes to have the same meaning," *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1249 (D.C. Cir. 2004), and that courts "assume Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990).  The "assumption is that Congress knows the law— by which the Supreme Court means judicial decisions." *Avocados Plus Inc.*, 370 F.3d at 1249.  In fact, later in its opinion, the *Montgomery* court implicitly identified its own error in not applying these canons in interpreting "proceeding," for it reasoned that § 1505 and § 1512(c)(2) overlapped to a great extent—and that was as it should be.  *Montgomery*, 2021 U.S. Dist. LEXIS

---

https://www.justice.gov/archives/jm/criminal-resource-manual-1730-protection-government-processes-official-proceeding-requirement.

Any defense reliance on the Manual is "flawed," according to *United States v. Caldwell*, 2021 U.S. Dist. LEXIS 243756, at *24 (D.D.C. Dec. 20, 2021).  "For one, the Manual predates the enactment of section 1512(c), [as] it was last published in 1997." *Id.  Caldwell*'s chronology was confused.  As shown below, § 1515's "official proceeding" definitions were codified in 1982.  And *Kelley*'s binding interpretation of "proceeding" was reached in 1994.  *Kelley*, 36 F.3d at 1128.  "[S]econd," *Caldwell* added, "the Manual's generalized statements cannot alter the plain meaning of the statutory text." *Caldwell*, 2021 U.S. Dist. LEXIS 243756, at *24.  However, the point is not that the Manual "alters text" but that it shows the government's interpretation of "official proceeding" is a nonce argument created for January 6 alone.

13

246750, at *43 ("Chapter 73 inescapably contains numerous overlapping provisions. . .").[3]  Yet, to *Montgomery*, the D.C. Circuit's decision in *Kelley* is not "on point," as it. . . "concerns a different statute—Section 1505." 2021 U.S. Dist. LEXIS 246750, at *27.

Section 1512(c)(2) was codified after Congress passed the Sarbanes-Oxley Act of 2002. Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807.  Thus, so far from being "off point," the *Kelley* decision, decided in 1994, should have led the *Montgomery* court to "assum[e] . . . that Congress knows the law—by which the Supreme Court means judicial decisions." *Avocados Plus Inc.*, 370 F.3d at 1249.  Because "[w]hen Congress uses the language of one statute in another statute is usually intends both statutes to have the same meaning," *id*., the *Montgomery* court did not need to create a novel construction of the Chapter 73 term "proceeding." The D.C. Circuit had supplied a definition binding on *Montgomery* well before codification of § 1512(c): "adjudicative power or . . . the power to enhance the[] investigation[] through the issuance of subpoenas or warrants." *Kelley*, 36 F.3d at 1128.

The *Montgomery* court did not identify any precedent supporting its defining of § 1512's "proceeding" to mean the "official business of [any] enumerated body." In over a century of Chapter 73 jurisprudence, there appears to be no precedent in which a court finds an "proceeding" that involves no investigation, no adjudication and no evidence.

**B.**     ***Montgomery* erred in holding that the *Ermoian/Kelley* construction of "proceeding" is inconsistent with "what Congress does"**

*Montgomery* concluded that it could not apply the *Kelley* construction of "proceeding"— "adjudicative power or . . . the power to enhance the[] investigation[] through the issuance of

---

[3] It was likely similar reasoning that led the Attorney General to stipulate that *Kelley*'s interpretation of "proceeding" in § 1505, which would require dismissal of Count One here, was "parallel to" the same term in § 1512.

subpoenas or warrants," 36 F.3d at 1127—to the joint session because "[a]s a matter of separation of powers, that is not what Congress does." *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *20.  Congress legislates, it does not adjudicate, *Montgomery* advised.  The court then added another "to be sure":

> To be sure, Congress's legislative powers include the implicit authority to summon witnesses to elicit testimony, and to investigate facts about the world.  [But that power is] *in order to legislate*. . . Defendants' efforts to read "proceedings before the Congress" to mean proceedings that are "quasi-judicial" or that involve the "administration of justice," accordingly, cannot help but bring to mind the aphorism about square pegs and round holes.  Moreover, even assuming that Defendants are merely arguing by analogy, the analogy is inapt.

*Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *21 (emphasis original).

From *Montgomery*'s abbreviated analysis, one might conclude that courts in *Montgomery*'s circuit had never addressed the contours of obstruction-of-justice jurisprudence in the context of congressional proceedings.  For, although the federal obstruction laws have been in existence from at least the late nineteenth century, *Montgomery* did not anchor its definition of "proceeding" (any "official business" of Congress) in any relevant precedent.

It might be surprising for the reader to learn, perhaps, that the D.C. Circuit addressed these issues many decades ago in a published decision that was both binding on *Montgomery* and unmentioned by it.  In 1991 the court of appeals conducted a painstaking analysis of the entire legislative history of obstruction-of-Congress offenses—tracing it back to the 1800s—in connection with the Iran-Contra prosecutions.  *United States v. Poindexter*, 951 F.2d 369, 380-82 (D.C. Cir. 1991).  *Poindexter* conflicts with virtually everything *Montgomery* has to say about the nature of a Chapter 73 "proceeding" in the context of Congress.

Through the 1980s and 1990s, the primary obstruction-of-Congress statute was § 1505. *Poindexter*, 951 F.2d at 380.  Section 1505 explicitly states the type of congressional proceeding

to which it applies: "the due and proper exercise of the power of inquiry under which any *inquiry or investigation* is being had by either House, or any committee of either House or any joint committee of the Congress. . ." § 1505 (emphasis added).  To *Montgomery*, this language meant that "Congress had the necessary vocabulary at hand and could have easily defined an 'official proceeding' to include . . . a proceeding involving 'the power of inquiry or investigation,'" but did not.  *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *17.  That is mistaken.  In fact, as *Poindexter* makes clear, in the context of congressional proceedings Congress and the courts had been using the terms "proceeding" and "inquiry or investigation" interchangeably prior to codification of § 1512 and § 1515:

> The terms of § 1505 were borrowed from a 1909 statute that has since become § 1503. . . The 1909 statute, codified at § 241 of the Criminal Code, read:
>
> Whoever corruptly, or by threats or force*,* or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness*,* in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein*,* [violates the statute].

*Poindexter*, 951 F.2d at 380.

Later, in 1940, Section 241(a), the direct predecessor of § 1505, was enacted to supplement § 241 with a parallel provision applicable to "conduct affecting *proceedings* before . . . the Congress:

> That [1] whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede *any witness* in any proceeding pending before any department, independent establishment, board, commission, or other agency of the United States, or *in connection with any inquiry or investigation being had by either House, or any committee of either House, or any joint committee of the Congress of the United States*, or [2] *who corruptly or by threats or force, or by any threatening letter or communication shall influence, obstruct, or impede,*

16

*or endeavor to influence, obstruct, or impede* [a] the due and proper administration of the law under which such proceeding is being had before such department, independent establishment, board, commission, or other agency of the United States, *or* [b] the due and proper exercise of *the power of inquiry under which such inquiry or investigation* is being had by either House, or any committee of either House or any joint committee of the Congress of the United States [violates the statute].

*Poindexter*, 951 F.2d at 380 (quoting § 241(a)) (emphasis added).

The § 241(a) clause numbered "[1]" above "covered influencing *a witness* before . . .either House or a committee of the Congress." *Poindexter*, 951 F.2d at 381 (emphasis added). The clause numbered "[2]" "came later to be known as the 'omnibus clause,'" which "covered influencing . . . 'the due and proper exercise of the power of inquiry' by either House or a committee of the Congress." *Id.*  Section 1505 later inherited this "omnibus" clause.  *Id.*

As the D.C. Circuit explained the history behind §§ 241(a) and 1505,

The Senate and House Reports and the floor debates concerning § 241(a) focused almost exclusively upon *the need to protect witnesses*. Both reports state that the proposed legislation *simply extends the protection now provided by law for witnesses in Court proceedings [under § 241], to witnesses in proceedings before either House of Congress or committees of either House (or joint committees),* and to witnesses in proceedings before administrative agencies of the Government. The need of outlawing intimidation and corruption applies to every witness.

H.R. Rep. No. 1143, 76th Cong., 1st Sess. 1 (1939); S. Rep. No. 1135, 76th Cong., 1st Sess. 1 (1939).

On the floor of the House, the bill's sponsor stated that it "*simply . . . outlaws intimidation, coercion, and corruption of other witnesses, just exactly as existing law protects witnesses called to testify in courts*." *See* 84 Cong. Rec. 9312 (1939) (Rep. Hobbs). *References to the need to protect non-court witnesses were made throughout the debates in both chambers*. *See id.* at 10526, 10910, 10911, 10912. . . .

[A] Senator explained [that] the bill was meant to protect *witnesses* from congressional committees and boards who were "mercilessly muckraking" those witnesses.

*Poindexter*, 951 F.2d at 381 (emphasis added).

17

The D.C. Circuit then turned to § 1512's place in this statutory lineage.  Created in the Victim and Witness Protection Act of 1982, Section 1512 simply received "many activities that were formerly prohibited by §§ 1503 and 1505." *Poindexter*, 951 F.2d at 382.

*Poindexter*'s next passage demonstrates that *Montgomery* was wrongly decided.  The original Senate version of § 1512 contained its own omnibus clause, closely paralleling the language of the omnibus clauses in §§ 1503 and 1505:

> (a) Whoever . . . (3) corruptly, by threats or force, or by any threatening letter of [sic] communication, intentionally influences, obstructs or impedes, or attempts to influence, obstruct or impede the (A) enforcement and prosecution of Federal law; (B) administration of a law under which an official proceeding is being or may be conducted; or (C) *exercise of a Federal legislative power of inquiry* [violates the statute].

*Poindexter*, 951 F.2d at 382 (quoting 128 Cong. Rec. 26,360 (1982)) (emphasis added).

The court of appeals observed that a "Senate Report explained the purpose of this clause.

> The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper *administration of justice* may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.

*Poindexter*, 951 F.2d at 382 (quoting 128 Cong. Rec. 26,360 (1982)) (emphasis added).

The fate of the Senate's draft omnibus clause in § 1512 is critical here.  The clause originally sat alongside § 1515, also first codified pursuant to the Victim and Witness Protection Act of 1982.  Pub. L. No. 97-291, sec. 4, 96 Stat. 1250.  The original § 1515 provided as follows,

As used in sections 1512 and 1513 of this title and in this section—

(1) the term "official proceeding" means—

> (A) a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a Federal grand jury;

> (B) *a proceeding before the Congress*; or

> (C) a proceeding before a Federal Government agency which is authorized by law.

Pub. L. No. 97-291, sec. 4, 96 Stat. 1252 (emphasis added).

After the "House and Senate [] compromised the differences between their versions [of §

1512][,] the resulting statute did not contain [the] omnibus clause, as had the original version."

*Poindexter*, 951 F.2d at 383.  On the floor, Senator Heinz explained why:

> Subsection (3) of section 1512(a) of the Senate passed bill, general obstruction of justice residual clause of the intimidation section, was taken out of the bill as beyond the legitimate scope of this witness protection measure. *It also is probably duplicative of abstruction [sic] of justice statutes already on the books*.

*Poindexter*, 951 F.2d at 383 (quoting 128 Cong. Rec. 26,810 (1982)) (emphasis added).

All of this history is omitted from *Montgomery*.  If *Montgomery* were correct that §

1515's "a proceeding before the Congress" should not be limited to congressional inquiries and

investigations, the statutory history above lacks sense.  If by "a proceeding before the Congress"

the legislature specified a type of congressional "proceeding" in §§ 1512 and 1515 other than the

inquiries and investigations in § 1505, the § 1512 omnibus clause Congress rejected in 1982 for

being "duplicative of [o]bstruction of justice statutes already on the books" would not, in fact,

have been duplicative.  *Poindexter*, 951 F.2d at 383.  As shown above, the only other relevant

obstruction law "on the books" in 1982 for congressional proceedings was § 1505, which is

limited to congressional inquiries and investigations.  Thus, according to *Montgomery*, in § 1512

Congress created new protections for its proceedings that were not inquiries or investigations and

simultaneously undercut them by deleting the only omnibus clause that would have reached the

newly covered proceedings—on the mistaken ground that the just-drafted clause duplicated §

1505.  That is, *Montgomery*'s analysis erroneously rests on the improper assumption that

Congress did not know what it was doing in 1982.  The above history shows that the obstruction

of Congress offense in § 241(a), which was then transferred to § 1505 and § 1512, "extend[ed]

the protection [then] provided by law for *witnesses* in Court proceedings [under § 241], to

*witnesses in proceedings* before either House of Congress or committees of either House (or joint committees)." *Poindexter*, 951 F.2d at 381 (internal quotation and citation omitted) (emphasis added).  That is what is meant by obstruction of Congress and *Montgomery* does not show otherwise with statutory context or history.  Nothing in this long history, stretching back to the nineteenth century, offers any support for the conclusion that Congress intended to cut the obstruction offense loose from any connection to evidence, investigations, and witnesses—by the mere addition of the phrase "a proceeding before the Congress" in 1982.[4]  Yet that is the reed on which *Montgomery* rests.

---

[4] The court in *United States v. Sandlin*, 21-cr-88-DLF, 2021 U.S. Dist. LEXIS 237131 (D.D.C. Dec. 10, 2021) also rejected a January 6 defendant's "official proceeding" argument but on somewhat different grounds.  A § 1512 "proceeding" need not entail the "administration of justice" (e.g., the ability to issue subpoenas, review evidence), *Sandlin* held.  2021 U.S. Dist. LEXIS 237131, at *12.  Rather, the "proceeding" must only be "akin to a formal hearing." *Id.* at *9.  The court did not define "hearing." *Sandlin*'s reasoning is contradictory: courts define "hearing" as, e.g., "'a proceeding of relative formality . . . generally public, with definite issues of fact or of law to be tried, *in which witnesses are heard and parties proceeded against have the right to be heard . . .*'" *U.S. ex rel. Health Choice All., LLC v. Eli Lilly & Co.*, 4 F.4th 255, 264 (5th Cir. 2021) (quoting *Hearing*, Black's Law Dictionary (5th ed. 1979)) (emphasis added).  Thus, a "formal hearing" is not to be distinguished from "the administration of justice."  To the extent *Sandlin* meant by "akin to a formal hearing" something other than "adjudicative power or . . . the power to enhance the[] investigation[] through the issuance of subpoenas or warrants," *Kelley*, 36 F.3d at 1127, the court erred under D.C. Circuit precedent.

In *Caldwell*, the court's rationale for rejecting a defendant's "official proceeding" argument appeared to center around the point that Congress "could have" used the words "investigation and inquiry" in § 1512 but did not.  2021 U.S. Dist. LEXIS 243756, at *18.  Like *Montgomery*, *Caldwell* omitted the statutory and legislative history outlined in *Poindexter* showing that it does not make sense to reason that Congress "could have" used "investigation and inquiry" but did not.  Congress's decision in 1982 to drop the draft omnibus clause in § 1512—and the statutory context and legislative history of obstruction of Congress offenses—plainly show that "a proceeding before the Congress" has been consistently synonymous with congressional inquiries and investigations.

The remaining decisions in this group mostly rely on the reasoning of *Montgomery*, *Sandlin*, and *Caldwell*. *United States v. Mostofsky*, 2021 WL 6049891 (D.D.C. Dec. 20, 2021); *United States v. Nordean*, 2021 WL 6134595 (D.D.C. Dec. 28, 2021); *United States v. McHugh*, 2022 WL 296304 (D.D.C. Feb. 1, 2022); *United States v. Grider*, 2022 WL 392307 (D.D.C. Feb. 2022).

Hence, until the *Montgomery* decision, all obstruction-of-Congress cases had involved investigations and evidence, i.e., interference with Congress's investigatory power. *E.g.*, *Poindexter*, 951 F.2d at 383 (witness lying to congressional committee); *United States v. Kanchanalak*, 37 F. Supp. 2d 1 (D.D.C. 1999) (destruction of records subpoenaed by Congress). Decoupling § 1512's "proceeding" from congressional inquiries and investigations would criminalize a great deal of protected activity and ordinary legislative business, contrary to congressional intent.  Consider the following examples:

A firearms lobbyist wheedles a Senator to limit federal spending on research into gun-related fatalities.  A "markup" on relevant legislation is set to soon take place. The lobbyist gives and promises no thing of value in return.  A text from the lobbyist to his friend later turns up: "I drink too much because my work is evil."

A former politician calls a congressman of the same political party on a recorded line, saying, do whatever you have to do at this "markup" to block the pending legislation providing aid to children in poverty—"boy, we are evil and/or immoral comma depraved aren't we, but it will hurt our chances in 2022 if the other side gets a win."

According to *Montgomery*, these congressional markups are "official proceedings." *Montgomery*, 2021 U.S. Dist. LEXIS 246750, at *25.  The government asserts that § 1512's "corruptly" means "wrongfully" or "evilly" (see *infra*). Thus, a jury may find the lobbyist and former politician guilty of a 20-year felony under § 1512(c)(2) for wrongfully "influencing" the "official proceedings" in Congress.  It should go without saying: this outcome is absurd and not intended by Congress.  And the absurdity lies in the lack of any connection between the hypothetical defendants' actions and investigations and evidence.

In sum, *Montgomery*'s construction of "proceeding" in § 1512 is contrary to text (*Ermoian*), D.C. Circuit precedent (*Kelley*, *Poindexter*), the statutory context (*Poindexter*), and the legislative history.  It is unsupported by case law.  Prior to January 6, no court had found a Chapter 73 "proceeding" that did not entail adjudication, investigation, or evidence.  That is what is irreducibly meant by obstruction of justice.  Because the joint session did not involve those elements, Count One must be dismissed.

## III.   Count One must be dismissed because § 1512(c)(2) does not reach acts having no connection to the availability or integrity of evidence in a proceeding

The government's interpretation of § 1512, created for the January 6 cases alone, posits that subsection (c)(2) criminalizes any act that obstructs, influences or impedes an official proceeding, regardless of whether it affects the integrity or availability of evidence in a proceeding.  This allows the government simply to convert traditional misdemeanor offenses into a felony with a 20-year statutory maximum sentence.  Thus, "parading in the Capitol Building," 40 U.S.C. § 5104(e)(2)(G) (Class B misdemeanor), and "entry into a restricted area," 18 U.S.C. § 1752(a) (Class A misdemeanor), become felony obstruction of an official proceeding.  After all, trespass can "influence" the "proceeding" in Congress (which, according to the government, need not entail investigations or evidence).  Under this reading, because there is no conceptual distinction between the 20-year felony and a misdemeanor, the charging decision between the two rests entirely in the government's undiscoverable discretion.  As a judge in this Court recently demonstrated, this nightmare of due process is not consistent with § 1512(c).

### A.   The text of § 1512 does not support the government's interpretation

Recall what § 1512(c)(2) proscribes:

(c) Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; *or*

(2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

§ 1512(c) (emphasis added).

Subsection (c)(2) cannot be read in isolation. *United States v. Miller*, 2022 U.S. Dist. LEXIS 45696, at *16 (D.D.C. Mar. 7, 2022). On its own, subsection (c)(2) would criminalize "whoever corruptly. . . *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so. . ." (emphasis added). Thus, it must be read together with subsection (c)(1), and the term "otherwise" is critical to determining how the subsections differ.

*Miller* noted that when § 1512(c)(2) became law, "otherwise" had three different plausible definitions in this context: "'in a different way or manner: differently'"; "'in different circumstances: under other conditions'"; and "'in other respects.'" 2022 U.S. Dist. LEXIS 45696, at *16 (quoting *Otherwise*, *Webster's Third New Int'l Dictionary of the English Language Unabridged* (2002)). *Miller* determined that the government's argument made use of the first definition—"in a different way or manner"—to argue not only that subsection (c)(2) covered all acts of obstructing, influencing and impeding an official proceeding beyond those specifically enumerated in (c)(1), but also that (c)(2) encompassed the very acts in (c)(1) itself (and the rest of § 1512 into the bargain). *Id.* Thus, under the government's construction, the only question is whether the defendant "corruptly . . . obstruct[ed], influenc[ed], or imped[ed] any official proceeding, or attempt[ed] to do so." *Id.* *Miller* called this the "clean break" reading of § 1512(c)(2).

*Miller* found inconsistency in the clean break construction.  The parties had agreed that §
1512(c)(2) cannot be read alone, given the term "otherwise."[5]  But if, as the government would
have it, the only question is whether the defendant "corruptly . . . obstruct[ed], influenc[ed], or
imped[ed] any official proceeding, or attempt[ed] to do so," the word "otherwise" not only does
no work to "link" subsection (c)(2) to (c)(1)—it is "pure surplusage."  2022 U.S. Dist. LEXIS
45696, at \*17.  "[U]nder [the government's] reading, subsection (c)(2) would have the same
scope and effect as if Congress had instead omitted the word 'otherwise.'"  *Id.*  "Otherwise"
must do some work.

   *Miller* held that the clean break interpretation was inconsistent with *Begay v. United
States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S.
591 (2015).  As here, *Begay* concerned the interpretation of an "otherwise" clause.  For the
Court's convenience, Powell displays the "otherwise" clause in *Begay* (§ 924(e)(2)(B)) next to
the "otherwise" clause in § 1512(c)(2):

> (B) the term "violent felony" means any crime punishable by imprisonment for a term
> exceeding one year. . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against
> the person of another; or
>
> (ii) is **burglary, arson, or extortion, involves use of explosives**, *or otherwise* involves
> conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis and emboldening added).

   (c)Whoever corruptly—

---

[5] Indeed, the contrary authority from this district on which the government most relies is in
agreement.  *Sandlin*, 2021 U.S. Dist. LEXIS 237131, at \*14 ("Subsections (c)(1) and (c)(2) *are
linked by the word 'otherwise.'*") (emphasis added); *see also Caldwell*, 2021 U.S. Dist. LEXIS
243756, at \*43 n. 6 ("[T]he subsections are separated by the word 'otherwise,' which *connects*
the two provisions. . .") (emphasis added).

(1) **alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding**; *or*

(2) *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis and emboldening added).

Interpreting § 924(e)(2)(B)(ii), *Begay* held that the proximity of the listed crimes "burglary, arson, extortion, or crimes involving the use of explosives" to a general crime "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was sufficient to "indicate[] that [the 'otherwise' clause] covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 553 U.S. at 142 (emphasis original).  It continued:

> If Congress meant the latter, i.e., if it meant the statute to be all-encompassing, it is hard to see why it would have needed to include the examples at all.  Without them, [§ 924(e)(2)(B)(ii)] would cover *all* crimes that present a "serious potential risk of physical injury." *Ibid*.  Additionally, if Congress meant [§ 924(e)(2)(B)(ii)] to include *all* risky crimes, why would it have included [§ 924(e)(2)(B)(i)]? A crime which has as an element the "use, attempted use, or threatened use of physical force" against the person (as [§ 924(e)(2)(B)(i)] specifies) is likely to create "a serious potential risk of physical injury" and would seem to fall within the scope of [§ 924(e)(2)(B)(ii)]. . . .
>
> These considerations taken together convince us that, "to give effect . . . to every clause and word" of this statute, we should read the examples as limiting the crimes that [§ 924(e)(2)(B)(ii)] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves.

*Begay*, 553 U.S. at 143 (emphasis original).

It is no different here.  If Congress meant § 1512(c)(2) to cover any act that obstructs, influences or impedes an official proceeding, "it is hard to see why it would have needed to include" subsection (c)(1) at all.  Indeed, it is hard to see why it would have needed the rest of §

1512. *Begay* made an identical point about what would happen to § 924(e)(2)(B)(i) if the government's construction of § 924(e)(2)(B)(ii) were correct.  553 U.S. at 143.[6]

Several judges and the government have challenged Judge Nichols' reading of *Begay* in several ways.  They are mistaken.  First, they contend that the "semicolon and line break" between (c)(1) and (c)(2) is sufficient to distinguish *Begay* from the government's interpretation here.  *United States v. McHugh*, 21-cr-453, ECF No. 64 (D.D.C. May 2, 2022).  That is wrong. A sentencing's meaning, and thus a statute's meaning, is resolved by grammar and syntax, not visual formatting.  The sentence, "the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year . . . that . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another," cannot be correctly interpreted without the above-displayed emboldened phrase in § 924(e)(2)(B)(ii) that immediately precedes "or otherwise." Identically, the sentence, "Whoever corruptly. . .or otherwise obstructs, influences or impedes any official proceeding, or attempts to do so. . .," cannot be correctly interpreted without the above-displayed emboldened phrase in § 1512(c)(1) that immediately precedes "or otherwise." The semicolon and line break in § 1512(c) do not change the meaning of the sentence that is segmented by them, though they do change its visual appearance.  The statute in *Begay* shows the error of *McHugh*'s "line break" distinction.  *McHugh* would presumably agree that Section 924(e)(2)(B)(ii) cannot be read without reference to § 924(e)(2)(B)—despite the "line break" between them.[7] The government's semicolon and line

---

[6] Powell anticipates soon submitting a syntactician's expert analysis of § 1512(c)(2) showing that basic linguistic concepts are more consistent with Judge Nichols' reading of the statute than with the government's.

[7] "Line break" is not even a legal term of statutory construction. It is a literary term denoting where one line of verse ends and another begins, a formatting decision dictated not by meaning but meter and rhyme.  *Line break*, Literary Devices, https://literarydevices.com/line-

break argument was rejected in another decision on which it relies.  *Caldwell*, 2021 U.S. Dist. LEXIS 243756, at *43 n. 6.

Second, a court has held, *contra* Judge Nichols, that "paragraph (c)(2) is grammatically distinct from paragraph (c)(1).  Although the two provisions share a subject and an adverb ('whoever corruptly'), paragraph (c)(2) contains an independent list of verbs that take a different object ('any official proceeding') from the verbs in paragraph (c)(1) (which take the object 'a document, record, or other object')." *McHugh*, 21-cr-453, ECF No. 64, p. 8.  Though they are not formally incorrect, *McHugh*'s points miss the syntactical forest for minor grammatical trees. Subsection (c) is a complete sentence.  Subsection (c)(1) is not a sentence, nor is subsection (c)(2).  Neither subsection is an independent clause, that is, a clause capable of forming a complete sentence on its own.  Subsection (c)(2) is a dependent clause, which does not form a meaningful sentence individually.  Thus, *contra McHugh*, paragraphs (c)(1) and (c)(2) are not "semantically independent." *McHugh*, 21-cr-453, ECF No. 64, p. 10.[8]

Third, the government and a judge have contended that the *ejusdem generis* principle underlying *Begay* does not apply to § 1512(c)(2) because subsection (c)(1) does not contain a "list." *McHugh*, 21-cr-453, ECF No. 64, p. 8.  "[R]ather than, 'A, B, C, or otherwise D,' section 1512(c) follows the form '(1) A, B, C, or D; or (2) otherwise, E, F, or G.'" *Id.*  This analysis assumes what it tries to prove by simply adding makeweight numbers and a semicolon on one side of the equation rather than explaining the interpretive principle that makes "(1) A, B, C, or

---

break/#:~:text=A%20line%20break%20refers%20to,completes%20a%20sentence%20or%20cla use.  The *Sandlin* court did not explain why it applied a verse term to its legal analysis of § 1512(c)(2).  2021 U.S. Dist. LEXIS 237131, at *14.

[8] Powell's forthcoming syntactical tree analysis will make this point more formally and through a professor of linguistics.

D;" not a list but does make "A, B, C, or otherwise D" a list.  The canon of *ejusdem generis*

holds that "where general words follow specific words in a statutory enumeration, the general

words are [usually] construed to embrace only objects similar in nature to those objects

enumerated by the preceding specific words." *Yates v. United States*, 575 U.S. 528, 545, 135 S.

Ct. 1074, 191 L. Ed. 2d 64 (2015).  Turning to § 1512(c), displayed above, the Court will notice

that the emboldened portion of subsection (c)(1) contains these "specific words in a statutory

enumeration": "alters, destroys, mutilates, or conceals a record, document, or other object, or

attempts to do so. . ." § 1512(c)(1).  Those specific words are "follow[ed]" by "general words":

the italicized words in subsection (c)(2), "or otherwise obstructs, influences, or impedes any

official proceeding, or attempts to do so. . ."  *McHugh* did not cite any authority holding that a

"semicolon" or a "line break" neutralizes *ejusdem generis* even where those punctuation marks

do not change a sentence's meaning.  In any case, *Begay* did not even formally cite *ejusdem*

*generis*; indeed, the canon of *noscitur a sociis*—a word is known by the company it keeps—

appears to have been at least equally determinative.  *Begay*, 553 U.S. at 143.  *McHugh* does not

hold that the words in (c)(1) are not in the close "company" of (c)(2), which is a part of the same

sentence.  Multiple courts have held that subsections (c)(1) and (c)(2) *are* in "close company."

*Sandlin*, 2021 U.S. Dist. LEXIS 237131, at *14; *Caldwell*, 2021 U.S. Dist. LEXIS 243756, at

*43 n. 6.  Thus, even if the words in (c)(1) are not a "list," the "otherwise" clause in (c)(2) must

be construed in light of them because it is "known" by their company.  For that reason, the

Supreme Court's decision in *Yates* supports Judge Nichols' decision in *Miller* no less than

*Begay*.  *Yates*, 575 U.S. at 545.

    *McHugh* cites to *Overdevest Nurseries, L.P.*, *v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021)

for the proposition that *ejusdem generis* is "irrelevant" when the term at issue "was not even in

the same provision" as the narrower term supposedly limiting its scope.  *McHugh*, 21-cr-453,

ECF No. 64, p. 8.  But a glance at the statute in *Overdevest Nurseries, L.P.* reveals how §

1512(c)(2) is different.  Here is the statute at issue there:

> To participate in the H-2A program, an employer must first certify to the Secretary of Labor that:
>
> A. there are not sufficient workers who are *able, willing, and qualified*, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and
>
> B. the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States *similarly employed*.

*Overdevest Nurseries, L.P.*, 2 4th at 981 (citing 8 U.S.C. § 1188(a)(1)(A)-(B)) (emphasis added).

The plaintiff in *Overdevest Nurseries, L.P.* argued that *ejusdem generis* and *noscitur a*

*sociis* applied such that subsection A's "able, willing, and qualified" limited subsection B's

"similarly employed.  2 4th at 982.  The court disagreed, finding that the two sets of phrases

were not in the "same list." *Id.*  But, as the *McHugh* court itself sometimes observes, meaning is

derived from grammar and syntax, not visual formatting.  *McHugh*, 21-cr-453, ECF No. 64, p. 8.

(Other times *McHugh* inconsistently suggests that rather than grammar and syntax, line breaks

determine meaning. *Id.*)  Unlike subsections (c)(1) and (c)(2) in section 1512, subsections A and

B in § 1188(a)(1) are complete sentences.  Unlike subsections (c)(1) and (c)(2) in section 1512,

subsections A and B in § 1188(a)(1) are not clauses with mutually dependent meaning.  Unlike

subsections (c)(1) and (c)(2) in section 1512, subsection B does not contain the adverb

"otherwise," linking the two relevant subsections in meaning.  Because it is grammar and not

"line breaks" that determines meaning, *Overdevest Nurseries, L.P.* is distinguishable.

The comparisons *McHugh* endeavors to draw between § 1512(c)(2) and § 1344, § 1952,

and 28 U.S.C. § 2466(a) do not connect.

§ **1344**.  In *Loughrin v. United States*, 573 U.S. 351, 350 (2014), the Court considered this statute:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

573 U.S. at 354 (citing 18 U.S.C. § 1344).

The defendant argued that § 1344(2) had "no independent meaning" but that it merely "specifies part of what § 1344(1) already encompasses." 573 U.S. at 359.  He relied on *McNally v. United States*, 483 U.S. 350 (1987), where the Court interpreted similar language in the mail fraud statute.  *Id.*  The *Loughrin* court distinguished the mail from statute in *McNally* from § 1344 on the ground that the former contained two phrases strung together in a "single, unbroken sentence." *Id.*  But a distinction drawn between the outcome in *McNally* and the statute in *Loughrin* does not somehow guide the Court on the application of *Begay/Yates* to section 1512(c).  *Ejusdem generis* and *noscitur a sociis* were not even at issue in *Loughrin*.  Indeed, unlike in § 1512(c), the specific words in § 1344(2) *follow*—they do not *precede*—the general term in § 1344(1).  That is the opposite of *Ejusdem generis*.  *Yates*, 575 U.S. at 545.

§ **1952(a).**  In *United States v. O'Hara*, 143 F. Supp. 2d 1039, 1040 (E.D. Wisc. 2001), the court considered this statute:

> (a) Whoever travels in interstate or foreign commerce . . . with intent to --
>
> (1) distribute the proceeds of any unlawful activity; or
>
> (2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform [such an act commits a crime].

18 U.S.C. § 1952(a).

*McHugh* notes that in *O'Hara*, the court observed that it was long "perceived" that the use of "otherwise" in § (a)(3) created a catchall provision that encompassed the crimes in § (a)(1) and (a)(2). *McHugh*, 21-cr-453, ECF No. 64, p. 11 (citing *O'Hara*, 143 F. Supp. 2d at 1042). But *McHugh* missed an important distinction. Well before *O'Hara*, "Congress increased the maximum sentence under § (a)(2) to 20 years, while leaving §§ (a)(1) and (a)(3) with a maximum sentence of 5 years." *O'Hara*, 143 F. Supp. 2d at 1041. Thus, one significant reason it was long "perceived" that the "otherwise" provision in § (a)(3) encompassed the other subsections is that it would make no sense for a defendant to argue that the lesser though more general crime in § (a)(3) is "limited" by the greater through more specific, 20-year penalty crime in § (a)(2). That is not true of subsection (c)(1) and (c)(2) of section 1512 which carry the same penalty.

**28 U.S.C. § 2466(a).** In *Collazos v. United States*, 368 F.3d 190, 200 (2d Cir. 2004), the court considered this statute:

A judicial officer may disallow a person from using the resources of the courts of the United States in furtherance of a claim in any related civil forfeiture action or a claim in third party proceedings in any related criminal forfeiture action upon a finding that such person –

(1) after notice or knowledge of the fact that a warrant or process has been issued for his apprehension, in order to avoid criminal prosecution --

    (A) purposely leaves the jurisdiction of the United States;

    (B) declines to enter or reenter the United States to submit to its jurisdiction; or

    (C) otherwise evades the jurisdiction of the court in which a criminal case is pending against the person;

*Collazos*, 368 F.3d at 200 (citing 28 U.S.C. § 2466(a)).

 *McHugh* notes *Collazos*' holding that "'the use of the introductory word 'otherwise' indicates that the evasion referred to in subpart (C) reaches beyond the specific examples to myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of the court.'" *McHugh*, 21-cr-453, ECF No. 64, p. 12 (quoting *Collazos*, 368 F.3d at 200). But Powell does not dispute that subsection (c)(2) of section 1512 "reaches beyond the specific examples" in subsection (c)(1). Rather, she contends that subsection (c)(2) covers "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples" in (c)(1). *Begay*, 553 U.S. at 143. That is consistent with *Collazos*. Just as *Collazos* held that the "otherwise" clause in § 2466(a)(1)(C) must still relate to acts that "avoid the jurisdiction of the court" (like the acts proscribed in subsection (a)(1)(A) and (a)(1)(B)), the Court here should hold that subsection (c)(2) of section 1512 covers crimes that are "roughly similar in kind" to the common theme uniting the crimes in (c)(1): acts that affect the integrity and availability of evidence in a proceeding. By disconnecting § 1512(c)(2) from any relationship with evidence, it is *McHugh* that conflicts with *Collazos*.

  **B.** ***Miller* was plainly correct on statutory context and history**

 *Miller* painstakingly and thoughtfully analyzed § 1512's structure, its historical development and its legislative history. 2022 U.S. Dist. LEXIS 45696, at *28-38.

 First, *Miller* aptly observed that the government's construction of § 1512(c)(2) presumes Congress would "hide [an] elephant in [a] mousehole." 2022 U.S. Dist. LEXIS 45696, at *29. The other subsections of the statute criminalize discrete conduct in narrow contexts; subsection (c)(1) continues that focus. If subsection (c)(2) covered *any* act that obstructs, influences, or impedes an official proceeding, it would be the "only provision in § 1512 not to have a narrow

focus." *Id.*  The Court might have added that it would also be the only provision in § 1512 that has no connection to the integrity or availability of evidence (object or non-object) in a proceeding.  That makes little sense.

Second, the Court held that the government's construction of § 1512(c)(2) would make surplusage of "at least eleven subsections" of § 1512. 2022 U.S. Dist. LEXIS 45696, at *29.  The canon against surplusage holds that "all words in a statute are to be assigned meaning, and that nothing therein is to be construed as surplusage.'" *Independent Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) (quoting *Qi-Zhuo v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995)).  "[T]he canon . . . is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Rev. Corp.*, 568 U.S. 371, 386 (2013) (emphasis added).  If § 1512(c)(2) covers *any act* that obstructs, influences or impedes an official proceeding, these provisions are rendered superfluous: §§1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), 1512(a)(2) (B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1).  2022 U.S. Dist. LEXIS 45696, at *29.

*McHugh* contends that this overlap was unavoidable given the following.  Subsection (c)(2) was added to § 1512 to fix the "Arthur Andersen loophole": Section 1512's earlier provisions proscribed "indirect obstruction,"e.g., corruptly persuading another person to destroy a document. § 1512(b)(2)(B).  Congress added subsection (c)(2) to cover "direct obstruction" involving those records. *McHugh*, 21-cr-453, ECF No. 64, p. 15.  That addition, *McHugh* determined, necessarily created overlap with every other provision in § 1512.  *Id.* ("[E]very example of indirect obstruction—say, threatening a witness to keep them from testifying at a hearing—is also an example of . . . direct obstruction, since the act of threatening the witness

itself obstructs, influences or impedes the hearing."). *McHugh* added, "*any* attempt to close the direct obstruction loophole while working within § 1512's pre-existing structure would have created substantial overlap." *McHugh*, 21-cr-453, ECF No. 64, p.16.

 *McHugh* makes at least two mistakes.  First, it assumes what it is trying to prove—it reasons that Congress intended that § 1512(c)(2)'s direct obstruction crime would cover every type of indirect obstruction crime in § 1512 because. . . it *does* cover every other crime in the statute *under the government's interpretation*.  In fact, as indicated below, Judge Nichols' review of the statutory and legislative history demonstrates that Congress gave no indication that subsection (c)(2) would apply outside the context of the object-based evidence in subsection (c)(1).  Second, even if there were some evidence of congressional intent to suggest that subsection (c)(2)'s direct obstruction prohibition was to cover every indirect crime in the statute, that would still not support the government's theory here, which claims that § 1512(c)(2) reaches acts that have *no connection to any kind of evidence, object or otherwise*, unlike every other provision in § 1512.  That is, there was no "Arthur Andersen loophole" that Congress needed to fill with subsection (c)(2) concerning obstruction of justice that has no relationship to evidence at all.[9]

 Third, *Miller* determined that the legislative history of § 1512(c) in the Sarbanes-Oxley Act of 2002 is littered with legislators' statements and reports "regarding the focus of the proposed new subsection on documents and document-shredding." 2022 U.S. Dist. LEXIS

---

[9] *McHugh* suggests that because Chapter 73 will contain some overlap regardless of how broadly Section 1512(c)(2) is construed, the Court can overlook the fact that the government's construction of subsection (c)(2) swallows the rest of the statute and indeed much of Chapter 73. *McHugh*, 21-cr-453, ECF No. 64, p. 17.  But, first, this sort of pragmatic consideration sheds no light on Congress's intent with respect to § 1512(c)(2).  And, more importantly, even as a pragmatic argument "because my room is messy I might as well not clean it at all" is a recipe for a much messier room.

45696, at *36-38.  In its motion for reconsideration, the government conceded that "the legislators who enacted Section 1512(c) . . . undoubtedly had document shredding foremost in mind. . ." *United States v. Miller*, 21-cr-119-CJN, ECF No. 75, p. 20.

In sum, *Miller* concluded there were "two plausible interpretations of the statute: either § 1512(c)(1) merely includes examples of conduct that violates § 1512(c)(2), or § 1512(c)(1) limits the scope of § 1512(c)(2). The text, structure, and development of the statute over time suggest that the second reading is the better one." But "[a]t the very least, the Court is left with a serious ambiguity in a criminal statute." 2022 U.S. Dist. LEXIS 45696, at *39.  In such circumstances, courts have "'traditionally exercised restraint in assessing the reach of a federal criminal statute.'" *Id*. (quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995)).  *Miller* therefore concluded that § 1512(c)(2) "must be interpreted as limited by subsection (c)(1), and thus requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *Id.*  Because the indictment did not allege those "essential facts," Fed. R. Crim. P. 7(c)(1), *Miller* dismissed the § 1512(c)(2) charge.  This Court should follow *Miller*'s well-reasoned opinion.

**IV.    Count One must be dismissed because the government's interpretation of the term "corruptly" in § 1512(c)(2) is wrong and creates unconstitutional vagueness**

To prove a violation of § 1512(c)(2), the government must show that Powell "corruptly" obstructed, influenced or impeded an official proceeding.  In the January 6 cases, the government contends that "corruptly" means nothing more than "wrongfully" or "evilly."  It pulls that definition from cases involving obstruction of the administration of justice—even as it argues that the joint session need not and did not involve the administration of justice.  But courts permit "corruptly" to be synonymized with "wrongfully" only in that specific context, where interference with the proceeding is corrupt per se.  By contrast, the D.C. Circuit has held that

35

congressional proceedings are different and that a distinct definition of "corruptly" applies.  For the following reasons, the Court should dismiss Count One because it fails to allege that Powell obstructed an official proceeding (1) with the intent to obtain an unlawful material advantage for herself or an associate; and (2) by influencing another to violate their legal duty.

### A.   "Corruptly" has been equated with "wrongfully" and "immorally" only in the administration of justice context

In *United States v. Aguilar*, 515 U.S. 593, 616 (1995), the Court considered the defendant's argument that § 1503's term "corruptly" was unconstitutionally vague when defined to mean nothing more than "wrongly." Justice Scalia's dissent was the only opinion to address the argument.  In doing so, the Justice reasoned that the nature of the proceeding may determine the appropriateness of a particular definition of "corruptly" in an obstruction statute.  515 U.S. at 617.  "[I]n the context of obstructing jury proceedings," the situation in *Aguilar*, "any claim of ignorance of wrongdoing is incredible." That is because acts "intended to 'influence, obstruct, or impede, the due administration of justice' are obviously wrongful, just as they are necessarily 'corrupt.'" *Id.* In support of this point the Justice cited to *United States v. Reeves*, 752 F.2d 995, 1001 (5th Cir. 1985) *cert. denied*, 474 U.S. 834 (1985) and *United States v. North*, 910 F.2d 843, 882 (D.C. Cir. 1990).  Those decisions show why the government misinterprets "corruptly" in the context of congressional proceedings.

*Reeves* involved tax obstruction.  Section 7212 penalizes "Whoever . . . corruptly . . . obstructs or impedes . . . the due administration of [the internal revenue laws.]" 26 U.S.C. § 7212(a).  Reeves knew he was under IRS criminal investigation.  So, he filed a common law lien against the residence of his IRS investigator, demanding payment of $250,000.  In his § 7212(a) trial, the district court "expressly adopted the definition of 'corruptly' as meaning 'with improper motive or bad or evil purpose.'" 752 F.2d at 998.  The Fifth Circuit vacated his conviction.

36

The court of appeals began with the legal chestnut that it is context-dependent whether the "corruptly" element of an obstruction offense describes a type of act or a type of purpose. 752 F.2d at 998.  However, its review of § 1503 case law led it to the conclusion that, "ordinarily," the term "corruptly" "is not directed at actions motivated by all 'bad,' 'evil' or 'improper' purposes." *Id.*  The Fifth Circuit then grasped the nettle: why, then, do some courts seem to define "corruptly" with value-laden terms like "evil"? They do so in "the special circumstances surrounding a criminal trial." *Id.* at 999.  Reasoned the court,

> "[T]o obstruct or impede the due administration of justice is per se unlawful and is tantamount to doing the act corruptly." *Id.* (quoting *United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979)).  Thus, where a defendant has endeavored to obstruct a criminal proceeding, the advantage inconsistent with the duties and rights of others is so clear that courts have often been willing to impute the desire to obtain such advantage on a per se basis.

*Reeves*, 752 F.2d at 999.

But the facts in *Reeves* did not involve a judicial proceeding.  Section 1505, covering pending judicial proceedings, "presupposes a proceeding the disruption of which will almost necessarily result in an improper advantage to one side in the case." 752 F.2d at 999.  But interference with the administration of tax laws

> need not concern a proceeding in which a party stands to gain an improper advantage [so] there is no reason to presume that *every* annoyance or impeding of an IRS agent is done per se "corruptly."  A disgruntled taxpayer may annoy a revenue agent with no intent to gain any advantage or benefit other than the satisfaction of annoying the agent.  Such actions by taxpayers are not to be condoned, but neither are they "corrupt. . ."

752 F.2d at 999 (emphasis original).

The Fifth Circuit continued.  The court of appeals had previously "upheld section 1503 as not unconstitutional on vagueness grounds largely because the statute covers only actions related to pending judicial proceedings, thus providing adequate notice to potential violators." 752 F.2d at 999 (citing *United States v. Howard*, 569 F.2d 1331, 1336 (5th Cir. 1978)).  But "merely

prohibiting 'bad,' 'evil,' and 'improper' purposes is very probably insufficient where, as here, a statute *reaches such a broad category of circumstances*." *Id.* (emphasis added). "To interpret 'corruptly' as meaning 'with an improper motive or bad or evil purpose' would raise the potential of overbreadth in this statute because of the potential chilling effect on protected activities.  The Court has a duty to construe a federal statute to avoid constitutional questions where such a construction is reasonably possible." *Id.* at 1001 (citing *Arnett v. Kennedy*, 416 U.S. 194 (1974)).  And "where 'corruptly' is taken to require an intent to secure an unlawful advantage or benefit, the statute does not infringe on first amendment guarantees and is not overbroad." *Id.*

Reeves's unlawful advantage standard is the default, not the "wrongfully" interpretation offered by the government.  *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) ("'[C]orruptly' requires proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit.") (citing 21 Am. Jur. 2d, Criminal Law § 114 (2016)). *See also* Black's Law Dictionary 414 (rev. 4th ed. 1951) ("Corruptly" "generally imports a wrongful design to acquire some pecuniary or other advantage").

In *North*, the D.C. Circuit considered the meaning of "corruptly" in the context of obstruction of Congress.  It observed that, unlike in the judicial proceedings context considered in *Aguilar*, in the context of congressional proceedings,

> No one can seriously question that people constantly attempt, in innumerable ways, to obstruct or impede congressional committees.  An executive branch official, for example, might call the chairman of a congressional committee convened to investigate some wrongdoing and say, "We both know this investigation is really designed to embarrass the President (or a Senator), not to investigate wrongdoing.  Why don't you call it off?" The official surely intends to obstruct or impede the inquiry, but it does not necessarily follow that he does so corruptly.  Similarly, a political activist might contact his representative and tell her that unless she stops spending her time pursuing a certain

38

investigation rather than some other legislative endeavor, the activist's group will oppose her reelection.  Again, the activist is endeavoring to impede or obstruct the investigation, but it is not necessarily doing so corruptly.

*North*, 910 F.2d at 882.

Accordingly, the Court should dismiss Count One because it fails to allege what unlawful material advantage Powell or an associate gained by allegedly obstructing an official proceeding.

### B.   *Poindexter* requires the government to prove additionally that the defendant committed transitive corruption

The D.C. Circuit has already rejected the government's argument that "corruptly" means "wrongfully" in the context of obstruction of Congress.  *Poindexter*, 951 F.2d at 379.

Considering § 1505's "corruptly," the court of appeals held,

to read "corruptly" in an intransitive sense as "wickedly" or "immorally" would appear to render the other methods of violating [§ 1505] superfluous: surely the use of force to influence a congressional inquiry would always be "wicked" or at least "immoral."

*Poindexter*, 951 F.2d at 379.

Exactly the same surplusage problem bedevils the government's proposed definition of "corruptly" in § 1512(c)(2).  If "corruptly" means "immorally," subsection (c)(1) is rendered superfluous.  "Surely," altering or destroying documents with the intent to prevent their use in an official proceeding "would always be 'wicked' or at least 'immoral.'" *Poindexter*, 951 F.2d at 379.

So, in the context of congressional proceedings, *Poindexter* held that "corruptly" must be defined by acts not merely by "evil" purposes.  And to avoid surplusage, the corrupt act had to be different from the act that obstructed or influenced Congress.  As a result, "corruptly" was interpreted in the transitive sense—"A corrupts B, i.e., A causes B to act corruptly." 951 F.2d at 379.  Thus, a defendant "corruptly" obstructs a congressional proceeding when he "influences another to violate [their] legal duty" and thereby obstructs Congress.  *Id.* at 386.  Critically, the

transitive interpretation was essential to avoiding vagueness inherent in a purpose-based definition.  For if a defendant may intransitively "corruptly . . . obstruct[] [or] influence[]" Congress, the term "corruptly" can only be defined by an impermissibly vague purpose, to avoid rendering superfluous the obstructive act itself.  951 F.2d at 379.

*Poindexter*'s holding has been extended to § 1512(c)(2).  *United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996) ("[W]e agree that . . . [*Poindexter*'s] 'transitive' reading of the word 'corruptly'" applies to § 1512).

The Court should therefore dismiss Count One because it fails to allege how Powell obstructed an official proceeding by influencing another person to violate their legal duty.

## V.   Even if Powell's constructions of § 1512 were not correct, at the very least the Court would be left with serious ambiguity or unconstitutional vagueness

Courts have "'traditionally exercised restraint in assessing the reach of a federal criminal statute.'" *Miller*, 2022 U.S. Dist. LEXIS 45696, at *39 (quoting *Aguilar*, 515 U.S. at 600). Under the rule of lenity, "'courts construe penal laws strictly and resolve ambiguities in favor of the defendant.'" *Id.* (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985)).

Under the related constitutional doctrine of vagueness, the Court should not enforce "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (internal quotation and citation omitted).  Finally, under the novel construction principle of the Due Process Clause, an "unforeseen judicial enlargement" of a statute, even if not vague, may not be applied retroactively to conduct that occurred before the enlargement.  *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964).

Here, even if Powell's interpretation of § 1512(c)(2)'s "official proceeding" is not plainly correct, patent ambiguity remains for the Court.  As indicated above, before January 6 no court

had ever found a Chapter 73 "proceeding" not involving an investigation, adjudication, or evidence.  Protesters had trespassed in the Capitol hundreds of times without being charged with "obstruction of an official proceeding." Likewise, before January 6, § 1512(c) had never reached conduct having no relationship to evidence in a proceeding.  And protesters had never been accused of "corruptly" protesting under the obstruction laws.  Even if the Court concludes that the government's interpretations at plausible, ambiguity and vagueness plainly remain about the issues and even if they did not, the Court should not retroactively apply the novel constructions sought by the government to conduct that occurred before any court accepted them.

**Conclusion**

For all the foregoing reasons, the Court should dismiss Count One of the Indictment.

Dated: May 4, 2022                    Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869

**Certificate of Service**

I hereby certify that on the 4th day of May, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, and counsel of record were served by electronic means.

*/s/ Nicholas D. Smith*
Nicholas D. Smith (Va. Bar No. 79745)
7 East 20th Street
New York, NY 10003
Phone: (917) 902-3869

41