EXHIBIT 1

| 97th Congress 2d Session } | SENATE | { | Report No. 97–532 |
|---|---|---|---|

# THE OMNIBUS VICTIMS PROTECTION ACT OF 1982

———

# REPORT

### OF THE

## COMMITTEE ON THE JUDICIARY
## UNITED STATES SENATE

### TO ACCOMPANY

## S. 2420

### TO PROTECT VICTIMS OF CRIME



August 19 (legislative day, August 17), 1982.—
Ordered to be printed

———

U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON : 1982

89–010 O

## COMMITTEE ON THE JUDICIARY

### STROM THURMOND, South Carolina, *Chairman*

CHARLES McC. MATHIAS, Jr., Maryland     JOSEPH R. BIDEN, Jr., Delaware
PAUL LAXALT, Nevada     EDWARD M. KENNEDY, Massachusetts
ORRIN G. HATCH, Utah     ROBERT C. BYRD, West Virginia
ROBERT DOLE, Kansas     HOWARD M. METZENBAUM, Ohio
ALAN K. SIMPSON, Wyoming     DENNIS DeCONCINI, Arizona
JOHN P. EAST, North Carolina     PATRICK J. LEAHY, Vermont
CHARLES E. GRASSLEY, Iowa     MAX BAUCUS, Montana
JEREMIAH DENTON, Alabama     HOWELL HEFLIN, Alabama
ARLEN SPECTER, Pennsylvania

VINTON DeVANE LIDE, *Chief Counsel*

———

### SUBCOMMITTEE ON CRIMINAL LAW

### CHARLES McC. MATHIAS, Jr., Maryland, *Chairman*

PAUL LAXALT, Nevada     JOSEPH R. BIDEN, Jr., Delaware
ARLEN SPECTER, Pennsylvania     HOWARD M. METZENBAUM, Ohio
ROBERT DOLE, Kansas     HOWELL HEFLIN, Alabama

MICHAEL R. KLIPPER, *Chief Counsel*
RALPH OMAN, *Staff Director*

(II)

# CONTENTS

|  | Page |
|---|---|
| General statement: Text of S. 2420, as amended | 1 |
| Purpose | 1 |
| History of legislation | 10 |
| Section-by-section analysis | 11 |
| Title I—Victims impact statement | 11 |
| Title II—Protection of victims and witnesses from intimidation | 14 |
| Intimidation (section 1512) | 14 |
| Retaliation (section 1513) | 20 |
| Penalty for an offense committed while on release pending judicial proceedings (section 1515) | 22 |
| Witness relocation and protection (section 3521) | 22 |
| Civil action to restrain witness intimidation (section 3523) | 27 |
| Title III—Restitution | 30 |
| Title IV—Federal accountability for escape or release of Federal prisoner | 33 |
| Title V—Federal guidelines for fair treatment of crime victims and witnesses in the criminal justice system | 37 |
| Title VI—Profit by a criminal from sale of his story | 42 |

(III)

# Calendar No. 769

| 97TH CONGRESS<br>*2d Session* | SENATE | REPORT<br>No. 97–532 |
| --- | --- | --- |

## THE OMNIBUS VICTIMS PROTECTION ACT OF 1982

---

**AUGUST 19 (legislative day, AUGUST 17), 1982.—Ordered to be printed**

---

Mr. THURMOND, from the Committee on the Judiciary,
submitted the following

## REPORT

[To accompany S. 2420]

The Committee on the Judiciary, to which was referred the bill (S. 2420) to protect victims of crime, having considered the same, reports favorably thereon with an amendment in the nature of a substitute and recommends that the bill as amended do pass.

Strike all after the enacting clause and insert in lieu thereof the following:

That this Act may be cited as the "Omnibus Victims Protection Act of 1982".

### FINDINGS AND PURPOSE

SEC. 2. (a) The Congress finds and declares that:

(1) Without the cooperation of victims and witnesses, the criminal justice system would cease to function; yet with few exceptions these individuals are either ignored by the criminal justice system or simply used as tools to identify and punish offenders.

(2) All too often the victim of a serious crime is forced to suffer physical, psychological, or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system unresponsive to the real needs of such victim.

(3) Although the majority of serious crimes falls under the jurisdiction of State and local law enforcement agencies, the Federal Government, and in particular the Attorney General, have an important leadership role to assume in ensuring that victims of crime, whether at the Federal, State, or local level, are given proper treatment by agencies administering the criminal justice system.

(4) Under the current law, law enforcement agencies must have cooperation from victims of crime and yet neither the agencies nor the legal system can offer protection or assistance when such victim as a result of such cooperation, is threatened or intimidated.

(5) While the defendant is provided with counsel who can explain to him both the criminal justice process and his rights, the victim or witness has no counterpart and is usually not even notified when the defendant is released on bail, the case is dismissed, a plea to a lesser charge is accepted, or a court date is changed.

(1)

(6) The victim and witness who cooperate with the prosecutor often find that the transportation, parking facilities, and child care services at the court are unsatisfactory and they must often share the pretrial waiting room with the defendant or his family and friends.

(7) The victim may lose valuable property to a criminal only to lose it again for long periods of time to Federal law enforcement officials, until the trial and sometimes the appeals are over; many times that property is damaged or lost, which is particularly stressful for the elderly or poor.

(b) The Congress declares that the purposes of this Act are—

(1) to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process;

(2) to ensure that the Federal Government does all that is possible within the limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant; and

(3) to provide a victim/witness model for State and local law enforcement officials.

## TITLE I—VICTIMS IMPACT STATEMENT

SEC. 101. Section (c) (2) of rule 32 of the Federal Rules of Criminal Procedure is amended by striking ", and such other information as may be required by the court" and inserting in lieu thereof: "The report shall also contain verified information stated in a nonargumentative style assessing the financial, social, psychological, and medical impact upon and cost to any person who was the victim of the offense committed by the defendant. The report shall also include a statement of any need of the victim for restitution and any such other information as may be required by the court.".

## TITLE II—PROTECTION OF VICTIMS AND WITNESSES FROM INTIMIDATION

SEC. 201. (a) Chapter 73 of title 18, United States Code, is amended by adding at the end thereof the following new sections:

### "1512. Tampering With a Witness, Victim, or an Informant

"(a) Whoever—

"(1) knowingly uses or attempts to use physical force, threat, intimidation, or fraud with intent to—

"(A) influence the testimony of another person in an official proceeding;

"(B) cause or induce another person to—

"(i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

"(ii) alter, destroy, mutilate, or conceal an object with intent to impair such object's integrity or availability for use in an official proceeding;

"(iii) evade legal process summoning him to appear as a witness, or to produce a record, document, or other object in an official proceeding; or

"(iv) absent himself from an official proceeding to which he has been summoned by legal process; or

"(C) hinder, delay, or prevent the communication to a law enforcement officer of information relating to an offense or a possible offense;

"(2) knowingly and maliciously hinders, delays, prevents, or dissuades or attempts to hinder, delay, prevent, or dissuade—

"(A) a witness or a victim from attending or testifying in an official proceeding; or

"(B) a witness, victim, or a person acting on behalf of a victim from—

"(i) making a report of an offense or a possible offense to a judge, a law enforcement officer, a probation or parole officer, or an officer of a correctional facility;

"(ii) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted or assisting in such prosecution or proceeding; or

"(iii) arresting, or causing or seeking the arrest of, a person in connection with an offense; or

"(3) with intent corruptly, or by threats of force, or by any threatening letter or communication, influences, obstructs, impedes, or attempts to corruptly, or by threats of force, or by threatening letter or communications, influences, obstructs, impedes the—

"(A) enforcement and prosecution of federal law;

"(B) administration of a law under which an official proceeding is being or may be conducted; or

"(C) exercise of a Federal legislative power of inquiry,

shall be punished as provided in subsection (b).

"(b) Whoever is guilty of an offense set forth in subsection (a)(1) shall be fined not more than $100,000, or imprisoned not more than ten years, or both. Whoever is guilty of an offense set forth in subsection (a)(2) or (a)(3) shall be fined not more than $25,000 or imprisoned not more than five years, or both. Whoever is convicted for a second or subsequent offense under this section shall be sentenced to a term of imprisonment, or fine or both up to twice that authorized for such offense.

"(c) In a prosecution for an offense under subsection (a)(1) of this subsection, it is an affirmative defense, as to which the defendant has the burden of proving the defense by a preponderance of the evidence, that the conduct engaged in consisted solely of lawful conduct and that the defendant's sole intention was to encourage or cause the other person to testify truthfully.

"(d) It is not a defense to a prosecution under this section that—

"(1) an official proceeding was not pending or about to be instituted;

"(2) the testimony, or the record, document, or other object, would have been legally privileged or would have been inadmissible in evidence; or

"(3) no person was injured physically, or, in fact, intimidated.

"(e) There is Federal jurisdiction over an offense described in this section if—

"(1) the official proceeding, offense, or prosecution is or would be a Federal official proceding, offense, or prosecution;

"(2) the officer is a Federal public servant and the information or report relates to a Federal offense or a possible Federal offense;

"(3) the administration of justice, administration of a law, or exercise of a legislative power of inquiry relates to a Federal Government function;

"(4) the United States mail or a facility in interstate or foreign commerce is used in the planning, promotion, management, execution, consummation, or concealment of such crime punishable in this section, or in the distribution of the proceeds of such crime punishable in this section;

"(5) movement of a person across a State or United States boundary occurs in the planning, promotion, management, execution, consummation, or concealment of such crime punishable in this section or in the distribution of the proceeds of such crime punishable in this section.

## "1513. Retaliating Against a Witness or an Informant

"(a) Whoever—

"(1) knowingly engages in conduct by which he causes bodily injury to another person or damages the property of another person because of—

"(A) the attendance of a witness or party at an official proceeding, or any testimony given, or any record, document, or other object produced, by a witness in an official proceeding; or

"(B) any information relating to an offense or a possible offense given by a person to a law enforcement officer; or

"(2) threatens to cause bodily injury to another person or to damage the property of another person or otherwise endeavor to intimidate another person because of any matter described in subparagraph (A) or (B) of paragraph (1);

"(3) unlawfully subjects a Federal public servant to economic loss or injury to his business or profession because of any matter described in subparagraph (A) or (B) of paragraph (1),

shall be punished as provided in subsection (b).

"(b) Whoever is guilty of an offense set forth in subsection (a)(1) shall be fined not more than $100,000 or imprisoned not more than ten years, or both. Whoever is guilty of an offense in subsection (a)(2) shall be fined not more than $10,000 or imprisoned for not more than two years, or both. Whoever is guilty of an offense in any other case under this section shall be fined not more than $5,000 or imprisoned for not more than one year, or both.

"(c) There is Federal jurisdiction over an offense described in this section if—

"(1) the official proceeding is a Federal official proceeding;

"(2) the law enforcement officer is a Federal public servant and the information relates to a Federal offense or a possible Federal offense;

"(3) the United States mail or facility in inter-state or foreign commerce is used in the planning, promotion, management, execution, consummation, or concealment of such crime punishable in this section or in the distribution of the proceeds of such crime punishable in this section; or

"(4) movement of a person across a State or United States boundary occurs in the planning, promotion, management, execution, consummation, or concealment of such crime punishable in this section or in the distribution of the the proceeds of such crime punishable in this section."

## "1514. Definition for Certain Provisions

"As used in sections 1512 and 1513 of this title the term—

"(1) 'law enforcement officer' means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant (including an elected official, judge, or juror)—

"(A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or

"(B) serving as a parole or probation officer under this title;

"(2) 'maliciously' means for the purpose of (A) intimidating, harassing, harming, injuring in any other way another person or (B) interfering with the orderly administration of justice;

"(3) 'official proceeding' means—

"(A) a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, or a Federal grand jury, a parole or probation officer;

"(B) a proceeding before the Congress; or

"(C) a proceeding before a Federal Government agency which is authorized by law;

"(4) 'physical force' means physical action against another, and includes confinement;

"(5) 'victim' means an individual against whom an offense has been or is being committed, or was attempted to be committed;

"(6) 'witness' means an individual—

"(A) having knowledge of the existence or nonexistence of facts relating to an offense;

"(B) whose declaration under oath is received in evidence for any purpose;

"(C) who has reported an offense to a judge, a law enforcement officer, or probation officer, or an officer of a correctional facility; or

"(D) who has been served with a subpoena, including a grand jury subpoena, issued under the authority of a court of the United States.

## "1515. Penalty for an Offense Committed While on Release Pending Judicial Proceedings

"Any term of imprisonment imposed under sections 1503, 1512 or 1513 which is committed while such person is released under chapter 207 of this title shall be consecutive to any sentence of imprisonment for the offense with respect to which release was ordered.".

(b) The analysis for chapter 73 of title 18, United States Code, is amended by adding at the end thereof the following new items:

"1512. Tampering with a witness, victim, or an informant.
"1513. Retaliating against a witness or an informant.
"1514. Definitions for Certain Provisions.
"1515. Penalty for an offense committed while on release pending judicial proceeding."

(c) Subsection (a) of section 3146 of chapter 207 of title 18, United States Code, is amended by—

(1) inserting between "officer," and "unless" the following: "subject to the condition that such person not commit an offense under chapter 73 of this title,"; and

(2) inserting between "impose" and "the" the following: "a condition of release that such person not commit an offense under chapter 73 of this title and impose"; and

(3) by adding at the end thereof the following: "Notwithstanding any other provision of this subsection, the pretrial release of any person pursuant to this section or section 3148 shall be deemed to include a condition that the defendant not commit or cause to be committed any act proscribed by sections 1503, 1512, and 1513 of this title".

Sec. 202. (a) Title 18 of the United States Code is amended by adding after chapter 223 the following new chapter:

"CHAPTER 224—PROTECTION OF WITNESSES

"Sec.
"3521. Witness relocation and protection.
"3522. Reimbursement of expenses.
"3523. Civil action to restrain witness or victim intimidation.
"3524. Definition for chapter.

## "3521. Witness Relocation and Protection

"(a) The Attorney General may provide for the relocation or protection of a government witness or a potential government witness in an official proceeding if the Attorney General determines that an offense described in section 1503, 1512 or 1513 of this title, or a State or local offense that is similar in nature or that involves a crime of violence directed at a witness, is likely to be committed. The Attorney General may also provide for the relocation or protection of the immediate family of, or a person otherwise closely associated with, such witness or potential witness if the family or person may also be endangered.

"(b) In connection with the relocation or protection of a witness, a potential witness, or an immediate family member or close associate of a witness or potential witness, the Attorney General may take any action he determines to be necessary to protect such person from bodily injury, and otherwise to assure his health, safety, and welfare, for as long as, in the judgment of the Attorney General, such danger exists. The Attorney General may—

"(1) provide suitable official documents to enable a person relocated to establish a new identity;

"(2) provide housing for the person relocated or protected;

"(3) provide for the transportation of household furniture and other personal property to the new residence of the person relocated;

"(4) provide a tax-free subsistence payment, in a sum established in regulations issued by the Attorney General, for such times as the Attorney General determines to be warranted;

"(5) assist the person relocated in obtaining employment; and

"(6) refuse to disclose the identity or location of the person relocated or protected, or any other matter concerning the person or the program after weighing the danger such a disclosure would pose to the person, the detriment it would cause to the general effectiveness of the program, and the benefit it would afford to the public or to the person seeking the disclosure.

"(c) Notwithstanding the provisions of subsection (b)(6), if a person relocated under this section is named as a defendant in a civil cause of action, arising prior to the person's relocation, for damages resulting from bodily injury, property damage, or injury to business, process in the civil proceeding may be served upon the Attorney General. The Attorney General shall make reasonable efforts to serve a copy of the process upon the person relocated at his last known address. If a judgment in such an action is entered against the person relocated, the Attorney General shall determine whether the person has made reasonable efforts to comply with the provisions of that judgment. The Attorney General shall take affirmative steps to urge the person relocated to comply with any judgment rendered. If the Attorney General determines that the person has not made reasonable efforts to comply with the provisions of the judgment, he may, in his discretion, after weighing the danger to the person relocated, disclose the identity and location of that person to the plaintiff entitled to recovery pursuant to the judgment. Any such disclosure shall be made upon the express condition that further disclosure by the plaintiff of such identity or location may be made only if essential to the plaintiff's efforts to recover under the judgment, and only to such additional persons as is necessary to effect the recovery. Any such disclosure or nondisclosure by the Attorney General shall not subject the government to liability in any action based upon the consequences thereof.

## "3522. Reimbursement of Expenses

"The provision of transportation, housing, subsistence, or other assistance to a person under section 3521 may be conditioned by the Attorney General upon reimbursement of expenses in whole or in part to the United States by a State or local government.

**"3523. Civil Action to Restrain Witness or Victim Intimidation**

"(a) The Attorney General may initiate a civil proceeding to prevent and restrain an offense involving a witness or a victim under sections 1503, 1512 or 1513 of this title. After a hearing and upon a finding, which may be based upon hearsay or the representation of the attorney for the government or the counsel for the defendant, that an offense under sections 1503, 1512 or 1513 of this title involving a witness or a victim has occurred or is reasonably likely to occur, the court may order that a defendant, a witness or other persons connected with the case, of any individual in the courtroom to—

"(1) refrain from engaging in conduct in violation of section 1503, 1512, or 1513 of this title;

"(2) maintain a prescribed distance from a specified victim or witness; and

"(3) refrain from communicating with a specified victim or witness except under such conditions as the court may impose.

"(b) A district court of the United States in which a proceeding is initiated under this section has jurisdiction to hear and determine the matter so presented, and to prevent and restrain an offense referred to in subsection (a). In a proceeding initiated under this section, the court shall proceed as soon as practicable to a hearing and determination.

**"3524. Definition for Chapter**

"As used in this subchapter 'government' includes the Federal Government and a State or local government.".

(b) The table of chapters for part II of title 18, United States Code, is amended by adding after the item for chapter 223 the following new item:

"224. Protection of witnesses_____ 3521".

## TITLE III—RESTITUTION

SEC. 301. (a ) Chapter 227 of title 18, United States Code, is amended by adding at the end the following.

**"3579. Order of restitution**

"(a) The court, in imposing a sentence on a defendant for any offense under this title, except an offense described in subsection (d), may order the defendant to make appropriate restitution. The order of restitution shall require that the defendant—

"(1) in the case of an offense causing injury or death, make restitution to the victim of the offense or estate of the victim in an amount that does not exceed income lost because of the victim's incapacitation or death, necessary medical expenses including ones associated with physical, psychological or vocational rehabilitation and, if applicable, the expenses for the funeral and burial of the victim; and

"(2) in the case of an offense resulting in loss, damage, or destruction of property—

"(A) restore the property to the victim of the offense; or

"(B) make restitution to the victim of the offense in an amount that does not exceed the value of the property ; or

"(3) make restitution in money or, when the victim agrees, in services to the victim or to a person or organization designated by the victim.

If the court does not order restitution, the court must state for the record the reasons. The court shall make the order of restitution as fair as possible to the victim without unduly complicating or prolonging the sentencing process.

"(b)(1) The court shall not order restitution as to any victim who is bound by an earlier judgment in, or a settlement of a civil proceeding involving the underlying offense.

"(2) Any amount paid to a person pursuant to an order of restitution shall be set off against an amount later recovered as compensatory damages by such person in any civil proceeding.

"(3) A conviction of a defendant by a Federal court of an offense involving the act giving rise to restitution under this section shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the victim.

"(4) If appropriate the court may consider ordering restitution to any party who has compensated the victim for expenses or losses directly related to the crime.

"(5) An order of restitution may be enforced by the victim or the United States in the same manner as a judgment in a civil action and notwithstanding any other provision of law, an order of restitution shall be satisfied by the defendant before any Federal lien.

"(c) If a defendant is placed on probation or paroled pursuant to this title any restitution ordered under this section shall be a condition of such parole or probation. Failure to comply with an order of restitution shall be grounds for the revocation of parole or probation. In determining whether failure to comply with an order of restitution shall be grounds for the revocation of parole or probation, the Court shall consider the defendant's employment status, earning ability, the willfulness of the defendant's failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay".".

(b) The analysis for chapter 227 of title 18, United States Code, is amended by adding at the end thereof the following new item:

"3579. Order of restitution.".

(c) Within six months after the date of enactment of this title, the Attorney General shall report to Congress concerning any laws necessary to ensure that all victims of crime are justly compensated in those cases where restitution is not possible. The Attorney General shall consider funding methods such as imposing additional fines on all individuals convicted of Federal crimes.

(d) The court may not order restitution in any offense described in:

(1) section 24 of the Securities Act of 1933 (15 U.S.C. 77x) (relating to the registration of securities);

(2) section 325 of the Trust Indenture Act of 1939, as added by the Act of August 3, 1939, and amended (15 U.S.C. 77yyy) (relating to the public offering of notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein);

(3) section 32(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78ff (a)) (relating to regulation of transactions in securities exchanges and over-the-counter markets);

(4) section 29 of the Public Utility Holding Company Act (15 U.S.C. 79z–3) (relating to regulation of public utility holding companies and their subsidiary companies);

(5) section 49 of the Investment Company Act of 1940 (15 U.S.C. 80a–48) (relating to regulation of investment companies and securities issued by them);

(6) section 217 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–17) (relating to registration of investment advisers);

(7) section 11911 of subtitle IV of title 49, United States Code (relating to securities of carriers subject to the jurisdiction of the Interstate Commerce Commission);

(8) section 127 of chapter 2 of title I of the Act of October 26, 1970 (12 U.S.C. 1957) (relating to records and reports by uninsured banks and institutions, banks insured by the Federal Deposit Insurance Corporation, and institutions insured by the Federal Savings and Loan Insurance Corporation);

(9) section 210 of the Currency and Foreign Transactions Reporting Act (31 U.S.C. 1059) (relating to records and reports concerning domestic currency transactions, exports and imports of monetary instruments, and foreign monetary transactions);

(10) section 9(b) of the Commodity Exchange Act (7 U.S.C. 13(b)) (relating to price manipulation and other illegal practices involving transactions in commodities in interstate commerce), and section 9 (d) and (e) of that Act (7 U.S.C. 13 (d) and (e)) (relating to transactions in commodity futures by commissioners, employees, or agents of the Commodity Futures Trading Commission);

(11) the eleventh paragraph of section 25(a) of the Act of December 23, 1913, as added by the Act of December 24, 1919 (12 U.S.C. 617) (relating to the prohibition on the use of corporate funds to manipulate the price of a commodity by an agent of a corporation organized to do foreign banking); and

(12) sections 1, 2, and 3 of the Sherman Act (15 U.S.C. 1, 2, and 3) (relating to agreements in restraint of trade and monopolizing trade).

## TITLE IV.—FEDERAL ACCOUNTABILITY FOR ESCAPE OR RELEASE OF FEDERAL PRISONER

SEC. 401. (a) Section 1346(b) of title 28, United States Code, is amended by inserting "(1)" immediately after "(b)."

(b) Section 1346(b) of tile 28, United States Code, is amended by adding at the end thereof the following:

"(2)(A) Subject to the provisions of chapter 171 of this title and subparagraph (B) of this paragraph, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of any civil action on a claim against the United States for damages, accruing on and after the date of enactment of this paragraph, for personal injury or death directly caused by any dangerous offender charged with or convicted of a Federal offense who is released from, or who escapes from, lawful custody of an employee of, or any person acting as the lawful agent of, the United States as a result of the gross negligence of such employee or person.

"(B) For the purposes of this paragraph 'dangerous offender' means a person charged with or convicted of a crime involving the use, attempted use, or threatened use of violence against the person or property of another.

SEC. 402. Subsection (a) of section 2680 of title 28 of the United States Code is amended by adding at the end thereof the following: "This subsection shall not apply to actions constituting gross negligence for purposes of section 1346(b)(2) of this title.".

## TITLE V—FEDERAL GUIDELINES FOR FAIR TREATMENT OF CRIME VICTIMS AND WITNESSES IN THE CRIMINAL JUSTICE SYSTEM

SEC. 501. (a) Within six months after the date of enactment of this title, the Attorney General shall develop and implement guidelines for the Department of Justice consistent with the purposes of this Act. The Attorney General shall assign responsibilities for the implementation of each of the guidelines. In preparing the guidelines the Attorney General shall consider the following objectives:

(1) SERVICES TO VICTIMS OF CRIME.—Law enforcement personnel should ensure that victims routinely receive emergency social and medical services as soon as possible and are given information on the following—

(A) availability of crime victim compensation (where applicable) :

(B) community-based victim treatment programs ;

(C) their role in the criminal justice process, including what they can expect from them ;

(D) key points in the criminal justice process at which they might want to request information as to the status of their particular case and suggestions on how best to request this information ; and

(E) ability of law enforcement officers to protect victims and witnesses from intimidation.

(2) SCHEDULING CHANGES.—All victims and witnesses who have been scheduled to attend criminal justice proceedings should either be notified as soon as possible of any scheduling changes which will affect their appearances or have an "on call" or "telephone-alert" system available.

(3) PROMPT NOTIFICATION TO VICTIMS OF MAJOR SERIOUS CRIMES.—The opportunity to request advance notification of important criminal justice proceedings shall be given to victims, witnesses, relatives of those victims and witnesses who are minors, and relatives of homicide victims. Those same individuals, who provide the appropriate official with a current address and telephone number should receive prompt advance, if possible, notification of judicial proceedings relating to their case, including—

(A) arrest or initial appearance before a judicial officer of the accused :

(B) initial bond decision of the accused ; and

(C) disposition of the case (including trial, sentencing, and eventual release of accused).

(4) CONSULTATION WITH VICTIM.—The prosecution should obtain the nonbinding views of victims of serious crimes, or in the case of a minor child or homicide, the victim's family, prior to making a recommendation to the court, when the victim has provided a current address and telephone number.

The key points for consultation include—
    (A) pretrial release hearings (if feasible) ;
    (B) pretrial diversion program ;
    (C) dismissal ; and
    (D) plea negotiations ;

    (5) SEPARATE WAITING AREA.—Victims and other prosecutor witnesses should be provided prior to court appearance a waiting area that is separate from all other witnesses.

    (6) PROPERTY RETURN.—Law enforcement agencies and prosecutors should promptly return victim's property held for evidentiary purposes unless there are compelling law enforcement reasons for retaining it.

    (7) NOTIFICATION TO EMPLOYER.—A victim or witness should be asked if he would like his employer to be notified of need for the victim/witness to co-operate and, therefore, be absent from work. If the victim or witness has to take time off from work to assist in the investigation or prosecution of the case, employers should be encouraged to continue to pay the victim or witness as if he had actually worked. In situations where as a direct result of a crime or cooperation with law enforcement officials, the victim or witness is subjected to serious financial strain, a law enforcement official should offer to contact creditors to explain the circumstances.

    (8) TRAINING BY FEDERAL LAW ENFORCEMENT FACILITIES.—The Attorney General and Secretary of the Treasury should instruct the directors of the Federal training facilities to ensure that victim assistance training be offered to law enforcement personnel so that victims are properly assisted immediately following the commission of crime and throughout the duration of the criminal justice proceedings; and to ensure that criminal justice personnel are familiar with these guidelines.

    (9) GENERAL VICTIM ASSISTANCE.—The guidelines should also ensure that when feasible other important means of assisting victims and witnesses, such as the adoption of transportation, parking, and translator services for victims in court, are provided.

(b) Nothing in this title shall be construed as creating a cause of action against the United States.

SEC. 502. All Federal law enforcement agencies, outside of the Department of Justice, shall adopt guidelines consistent with section 501.

### TITLE VI—PROFIT BY A CRIMINAL FROM SALE OF HIS STORY

SEC. 601. Within one year after the date of enactment of this title, the Attorney General shall report to Congress regarding any laws that are necessary to ensure that no Federal felon derives any profit from the sale of the recollections, thoughts, and feelings of such felon with regards to the offense committed by the felon until any victim of the offense receives restitution.

## I. PURPOSE

The purpose of S. 2420 is to strengthen existing legal protections for victims and witnesses of Federal crimes and require the United States Attorney General to develop additional legislative proposals and guidelines toward this end. S. 2420 does not call for increased Federal expenditures; in fact it has been designed to ensure that improvements will be made within the limits of available Federal resources.

The major provisions of S. 2420 are: to amend the Federal Rules of Criminal Procedure to require that the sentencing judge be given a Victim Impact Statement; to amend title 18 of the United States Code to require restitution for crimes involving loss of property or personal injury; to amend title 28, the Federal Tort Claims Act, to make the Federal government civilly liable for bodily injury caused by a "dangerous person" who has either escaped or been released from federal custody where the government is found to be "grossly negligent"; to

require the Attorney General to prepare guidelines for the fair treatment of victims of Federal crimes; and to require that the Attorney General recommend legislation requiring that restitution be made to the victim before a Federal felon may profit from his crime's notoriety.

In declaring the last week in April, 1982 as "Crime Victim's Week," President Reagan noted that the "plight of innocent citizens, victims of lawlessness, deserves immediate national attention." Numerous studies and hearings have established the need for legislative action to assist victims and witnesses, including hearings before the Special Committee on Aging on September 22, 1981 and the Senate Judiciary Subcommittee on Criminal Law on May 27, 1982. These hearings and studies have shown repeatedly that too often the victim has been the "forgotten person" in the criminal justice system. With few exceptions, victims and witnesses are either ignored by the criminal justice system or simply used to identify offenders.

While the defendant in a Federal criminal proceeding is provided with counsel to explain to him both the criminal justice process and his rights as a defendant, the victim has no assistance and few rights. The victim does not usually receive information regarding the status of the case, is usually not notified when the defendant is apprehended or released on bail, and is not consulted before important decisions are made, such as whether or not to dismiss the case or to reduce the charges through pleabargaining. Moreover, the victim or witness who cooperates with the prosecutor often does so at his own risk.

The victim or witness has little hope of protection from the government if he is harrassed or threatened by the defendant out on bail, or the defendant's friends or family; or if the convicted criminal, after serving his time, decides to retaliate against the individual who assisted the government. This insensitivity and lack of concern for the victim and witness is a tragic failing in our criminal justice system, one which hurts the whole society. Without the cooperation of victims and witnesses, the criminal justice system would simply cease to function and few criminals, if any, would be brought to justice.

S. 2420 has been developed with the cooperation of many national organizations concerned about crime and the criminal justice system. The bill has been drafted with the knowledge that the majority of serious violent crimes fall within the jurisdiction of the State and local law enforcement agencies. An important purpose of S. 2420, therefore, is to provide a model statute for State and local governments.

## II. History of the Legislation

Senator Heinz and Senator Laxalt and 39 other Senators introduced S. 2420 on April 22, 1982. In putting together this omnibus bill, Senators Heinz and Laxalt adopted a number of the provisions which appeared in the Criminal Code Reform bill, S. 1630, and recommendations made by a wide range of legal and victims' interest organizations relating to the Federal government's capacity to protect and assist victims and witnesses of crime.

S. 2420 was referred to the Committee on the Judiciary and then to the Subcommittee on Criminal Law. The Subcommittee held a hearing on May 27, 1982, receiving testimony supporting the concepts and language of S. 2420. Testimony was given by the Department of

Justice, a senior Federal judge and chief Federal probation officer from the District of Maryland, the American Bar Association, The National Organization for Victim Assistance, the Victim's Assistance Legal Organization, and three victims. All of these witnesses supported the aims of S. 2420 in one form or another.

As a result of the hearings, a number of changes were made in S. 2420. The amended S. 2420 was submitted as an amendment in the nature of a substitute to the Subcommittee members, who reported the bill favorably to the full Committee by unanimous vote. As a result of further discussions among Subcommittee staff and outside experts, additional amendments were made and these were offered by Senator Laxalt to the full Judiciary Committee.

### III. SECTION-BY-SECTION ANALYSIS

The following discussion includes a summary of key provisions of S. 2420 and an anlysis of each provision.

### TITLE I—VICTIM IMPACT STATEMENT

#### SECTION 101—VICTIM IMPACT STATEMENT

*1. Summary*

Section 101 requires, for the first time, that the presentence report prepared for federal judges include a victim impact statement.

*2. Current Federal Law*

Current law does not contain a provision requiring the presentence report to contain information on the impact of the crime on the victim. Rule 32 of the Rules of Criminal Procedure requires that: "The report of the presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of the defendant, and such other information as may be required by the court."

*3. Problems of Current Law*

In testifying before the Subcommittee on criminal Law on May 27, 1982, the Chief United States Probabtion Officer for the district of Maryland, Paul R. Falconer, and the Senior Judge, for the same district, the Honorable Edward S. Northrop, stated that:

> The victim of an offense has no standing in the Court beyond the status of a mere witness—he has no right of allocution and is often overlooked in the process of plea negotiation. Our position is that we should not prosecute, try, and sentence any defendant without at least listening to the victim's offense-related needs. It is essential that a victim impact statement be factual and confirmed; it must be non-inflammatory and non-argumentative. We never want to be guilty of waving the bloody shirt; neither are we to bury the bloody shirt with the victim still in it.

The victim impact statement was first used in Federal Courts for the District of Maryland in May, 1979, as a way of providing the sentencing judge with information on the victim that might not otherwise

be brought to his attention. Many times, especially in cases involving plea bargaining, the judge must pass sentence on the defendant without ever having seen or heard from the victim, much less having had access to information about the impact the crime had on that victim. Take, for example, a victim of an assault who suffers a broken arm. The victim impact statement would ensure, for example, that the sentencing judge be informed if the victim lost time on the job or even lost his job permanently due to the injury.

One victim's testimony received by the Subcommittee related how her entire case was settled and the defendant sentenced without anyone from the court ever contacting her. Mrs. Virginia Montgomery testified:

> For months I was left wondering what had happened to the man who committed the crime—Would there be a trial? Would I have to testify? Would he go to jail? After the day of the crime I wasn't contacted at all by anyone in the criminal justice system. The first word I received about my case was nine months later in February, while I was recuperating at the home of my daughter in Texas, I received a letter from a probation officer saying that I was the victim of a purse snatching and that I would be awarded $350 restitution. I was really upset. Questions filled my mind, why was there no trial? Would this mean I wouldn't have a chance to tell anyone what had happened to me? And why was I given only $350 dollars in restitution when in fact my medical bills were over $11,000? I just couldn't understand what had happened so I called the probation officer in Washington. He told me he was not aware of my injuries since there was no mention of them in my file. He suggested that I file a civil suit for damages and gave me several organizations to contact.

According to recommendations offered by Judge Northrop from Baltimore, the information necessary for a thorough victim impact statement is that which is "not only relevant to the sentencing process," but is "readily available and easily verified." The Chief United States Probation Officer for the District of Maryland, Paul R. Falconer, told Subcommittee members that "utilization of the Victim Impact Statement has not added significantly to the task of the probation officer in preparing the presentence report. We should estimate that perhaps an additional hour of preparation time is required in interviewing the victim and assessing the impact. Acceptance by the bench has been uniformly positive. Members of our highly competent and aggressive Federal Public Defender's Office have acknowledged the fairness and impartiality of the Victim Impact Statements . . ."

Surveys conducted by the American Bar Association's Victim Witness Assistance Committee and the Washington Legal Foundation reveal that several states have adopted "victim impact statements." According to the ABA, "victim statements usually contain such items as (1) a list of specific economic losses; (2) identification of physical or psychological injuries and their seriousness; and (3) changes in the victim's work or family status resulting from the offense."[1] The

---

[1] "Victim/Witness Legislation," American Bar Association, 1981, p. 46.

Washington Legal Foundation states that "no state explicitly denies the right of the victim to be considered during the pre-sentence report. Only four states—Indiana, Connecticut, Illinois and Kansas—have statutes that explicitly require a statement from or concerning the pre-sentencing report." Since this 1981 report was published, Maryland and Nevada have passed a victim impact statute; analogous legislation is pending in New York and other states. However, the Washington Legal Foundation also discovered that 16 state statutes are predominantly defendant oriented, with no mention at all of the victim.[2]

### 4. Provisions of the Bill, as Reported

Sec. 101 amends subsection (c) (2) of Rule 32 of the Federal Rules of Criminal Procedure to require that the presentence report prepared for the Federal district judges include a "victim impact statement" which consists of verified information assessing the financial, social, psychological, and medical impact upon the victim of the crime committed by the defendant.

The Committee regards the victim impact statement as a first step to ensure that the victim's side is heard and considered by adjudicative officials. The Committee would also encourage courts to take advantage of other victim assistance techniques already available, such as the allocution by the victim at the sentencing and consultation with the prosecutor at plea bargaining and before dismissal.

The Committee intends that the victim impact statement be used in all crimes where their is a human victim. But even in cases where the crime is legally perpetrated against an institution, such as a bank, and there is a human victim such as a bank teller, a victim impact statement should be prepared. The Committee also notes that the definition of victims is purposely broad to include other "indirect" victims such as family members of homicide victims.

The Committee also agrees with the statement made by Mr. Falconer from Baltimore that the victim impact statement "allows the victim of the offense some privilege of allocution at the sanctioning phase of the proceedings." Mr. Falconer also said that preparation of the statement "makes possible further services or considerations for the victim, which can include occasions when the probation officer may:

—Mediate employment problems for a victim when that person loses time at work due to offense-related injuries or losses;

—Intervene with the victim's creditors if the offense caused financial problems;

—Help and advise the victim to apply for compensation, if eligible under local law;

—Notify the victim of the outcome of the prosecution."

In light of this testimony, the Subcommittee chose to add the additional sentence, "The report shall also include a statement of any need of the victim for restitution" to Section 101. This information should make it easier for the sentencing judge to decide what kind or amount of restitution to order. The use of the word "need", however, should not influence the judge to order restitution in only those cases where the victim is destitute since the Committee does not intend to limit restitution to the financially needy.

---

[2] "Crime Victims Impact Statement," Washington Legal Foundation, 1981, p. 8.

By making information available on the consequences of the crime for the victim, the legislation is in keeping with the testimony of the Chairman of the New York State's Compensation Board, Mr. Ronald A. Zweibel, that "the victim impact statement will lend balance to the present information available to the court and therefore improve the quality of justice administered by the sentencing court."

## TITLE II—PROTECTION OF VICTIMS AND WITNESSES FROM INTIMIDATION

Title II has seven sections. Two of those sections create new offenses in 18 U.S.C.: Section 1512 applies to offenses against witnesses, victims, or informants which occur before the witness testifies or the informant communicates with law enforcement officers; while Section 1513 applies to offenses against witnesses or informants after they have testified or reported information about the crime to law enforcement officers. Sections 1514 and 1515 provide definitions and penalties for an offense committed while on release pending judicial proceedings. Sections 3521 and 3522 concern witness relocation and protection, including reimbursement. Section 3523 allows civil action to restrain witness or victim intimidation.

The analysis for each of these sections follows:

### SECTION 1512

#### 1. Summary

Section 1512 provides criminal penalties for the intimidation against not only witnesses (current law) but victims as well. It also lowers the threshold of seriousness for commission of an intimidation offense and increases the penalties.

#### 2. Current Law

Several sections of title 18 U.S.C. relate to coercive acts intended to tamper with witnesses and informants in official proceedings. These are 201(h) (offering a bribe to a witness); 202(i) (accepting a bribe by a witness); 1503 (influencing or injuring a witness) and 1510 (obstruction of criminal investigations).

Current law covers at least some of the acts proscribed by Title II of S. 2420, though the punishments for offenses are considerably lower under present law. Current law, however, requires a relatively high threshold of seriousness for commission of a crime. For instance, section 1503 requires corruption, threats or force as elements as the offense of influencing a witness. Section 1510 requires bribery, misrepresentation, intimidation, force or threats as elements of obstructing criminal investigations. Neither proscribe conduct knowingly and maliciously hindering, delaying, preventing or dissuading testimony or reports to law enforcement officers. Moreover, under current law, it is not a crime to intimidate a victim or witness who may wish to report a parole or probation violation.

Section 1503 relates to witnesses in criminal proceedings, but only applies to witnesses under subpoena in cases which are still active. While section 1510 sought to close the loopholes created by section 1503, it also creates some, such as failing to include third parties (e.g. friends and relatives of victims and witnesses) from retaliation.

### 3. Problems of Current Law

The problem of victim and witness intimidation which this Title addresses was brought out clearly in two days of public hearings held in 1979 by the American Bar Association Criminal Justice Section's Victims Committee. Testimony by some 80 witnesses showed intimidation to be a widespread and pervasive problem which inherently thwarts the administration of criminal justice.[3] These findings have since been confirmed by the prestigious Victim Services Agency (VSA) in New York City which reports that intimidation occurs in at least 10 percent of criminal cases.[4] According to the VSA study, intimidation usually takes the form of direct verbal confrontation but can also occur as vandalism, threats with a weapon or actual physical attack.

Section 1512 of S. 2420 draws heavily upon a model statute developed by the ABA Victims Committee following the 1979 hearings. Since its adoption by the American Bar Association in August, 1980, the model statute has been the basis of legislation in five states. Similar legislation is currently under consideration in several other states.

Under current law there is ambiguity about who would constitute a "witness." Generally, court decisions define "witness" to mean a person "expected" to testify in a court proceeding.[5] Therefore, it is questionable whether title 18 as presently written would protect a witness who is able to provide information about a crime but who is not necessarily expected to testify because the testimony would either constitute hearsay (often the case with informants), would be privileged, or would otherwise be inadmissible.[6] The scope of the offense should not be limited by concerns about the status of the victim as a person who has testified or will be able to testify in court. Rather, the offense should be addressed to punishing the acts of intimidating or injuring a person because of his knowledge about the commission of a crime. Therefore Title II would include potential witnesses and informants, and would preclude a defense that the testimony the witness would give would not be admissible. Comparable provisions are included in the Criminal Code Revision bill (S. 1630, sections 1323–1324).

Current law also does not address the most common form of intimidation—verbal harassment. Testimony given to the ABA suggested that sometimes innocent acts, such as telephoning a victim to say hello, coming to his home, or even driving a motorcycle by, may be extremely effective in preventing a victim or witness from testifying. This type of activity is not covered by section 1503 which requires corruption, threats or force for an offense. Section 1510 includes intimidation as a method of obstructing criminal investigations in addition to force, threats, bribery and misrepresentation; however, nowhere is intimidation defined. The Committee believes a clear and straightforward prohibition of such activity will increase prosecutions of such cases, where warranted.

[3] "Reducing Victim/Witness Intimidation," American Bar Association 1981, p. 4.
[4] "Witness Intimidation: An Examination of the Criminal Justice System's Response to the Problem," Victim Services Agency, New York. 1982.
[5] See, e.g., *United States* v. *Griffin*, 463 F. 2d 177 (8th Cir. 1972), cert. denied, 409 U.S. 988; *Hunt* v. *United States*, 400 F. 2d 306 (5th Cir. 1978), cert. denied, 393 U.S. 1021 (1969) and cases cited therein.
[6] In *Neal* v. *United States*, 102 F. 2d 643 (8th Cir. 1939), cert. denied, 312 U.S. 679 (1941), it was held that concealment of items relevant to the commission of a crime did not constitute a violation of 18 U.S.C. 4 when its evidentiary nature was not established.

## 4. *Provisions of the bill, as reported*

### A. *Elements of the offense*

Subsection (a)(1) provides that a person commits an offense if he knowingly uses or attempts to use "force, threat, intimidation, or fraud" with intent to accomplish a variety of enumerated results. The terms quoted above are similar to those used by the National Commission on Reform of Federal Criminal Laws [7] except that "intimidation" has been added.

The prohibited purposes in paragraph (1) are: First, to influence the testimony of another person in an official proceeding; second, to cause or induce another person to (i) withhold testimony, or a record, document, or any other object from an official proceeding, whether or not the person would be legally privileged to do so, and regardless of its admissibility in evidence; [8] (ii) alter, destroy, mutilate or conceal an object with the intent to impair such object's integrity or availability for use in an official proceeding; (iii) evade legal process summoning him to appear as a witness, or to produce an object, in an official proceeding; or (iv) absent himself from an official proceeding to which he has been summoned by legal process; and third, to hinder, delay or prevent the communication of information relating to an offense or possible offense to a law enforcement officer. The Committee considers that it is equally as obstructive to deceive the officer (e.g., as to the meeting place with an informant) and thereby discourage the informant, as it is to deceive the informant in the first instance. "Misrepresentation" to prevent a report of an offense to a criminal investigator is also currently a violation of 18 U.S.C. 1510.

In subsection (a)(1) the term "witness" is not directly mentioned. A useful consequence of dropping this term and talking in terms of threats to induce action by any person is that the scope of the offense extends to threats that are made, not against the witness himself, but against his family or anyone else of interest to him. Current law would probably reach threats to a witness' family through the catch-all clause at the end of 18 U.S.C. 1503.

The first prohibited purpose uses the term "influence." This is the broadest word used in 18 U.S.C. 1503, and the Committee intends that it also receive an expansion interpretation in this section. The fact that the section requires that force, threat, intimidation, or deception be employed, suffices to narrow the offense to clearly culpable conduct.

Subsection (a)(2) makes it an offense for an actor to knowingly and maliciously hinder, prevent or dissuade or attempt to hinder, delay, prevent, or dissuade (A) a witness or a victim from attending or testifying in an official proceeding, or (B) a witness, victim, or a person acting on behalf of a victim, from (i) making a report of an offense or possible offense to a judge, law enforcement officer, probation or parole officer, or officer of a correctional facility, (ii) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted or assisting in such prosecution or proceeding, or (iii) arresting, or causing or seeking the arrest of, a person in connection with an offense. Under section 1514, the term "witness" is defined ex-

---

[7] Final Report of the National Commission on Reform of Federal Criminal Laws (1971) (hereinafter in this report cited as Final Report and National Commission respectively).
[8] See the defenses precluded, subsection 1512(d)(2).

pansively to mean an individual (A) having knowledge of the exitence or nonexistence of facts relating to an offense, (B) whose declaration under oath is received in evidence for any purpose, (C) who has reported an offense to a judge, law enforcement officer, probation officer, or officer of a correctional facility, or (D) who has been served with a subpoena, including a grand jury subpoena, issued under the authority of a court of the United States. "Victim" is defined as an individual against whom an offense has been or is being committed or was attempted to be committed.

Thus, while subsection (a)(1) is confined to the traditional means of tampering involving the use of force, threat, intimidation, or fraud, subsection (a)(2) covers any conduct that maliciously hinders, delays, prevents, or dissuades a witness or victim from fulfilling his societally desirable role with reference to attending or testifying in an official proceeding, or reporting or taking other action in relation to an offense or possible offense, if the conduct is done with intent to intimidate, harrass, harm, or injure another person.

Some concern has been expressed that the definition of "tampering" in this section might inadvertently reach conduct that has previously been regarded as within the ambit of the First and Fifth Amendment, i.e. draft counseling.

The problem arises specifically in subsection (a)(2), where, for example, a counselor "knowingly and maliciously ... dissuade[s] a witness ... from ... testifying in an official proceeding," presumably a trial or other hearing relating to the federal statute concerning the draft.

While the reply might be that such counseling is not undertaken "maliciously," that word can be defined under the bill as "interfering with the orderly administration of justice" (section 1514(2)(B)).

While such a case can be postulated, it is clearly unintended, since there is no intent whatsoever to limit any existing Constitutional rights in the name of protecting victims and witnesses. The Committee considered further language changes, particularly a change in the definition of "maliciously." But it became clear that the definition of "maliciously" should be retained in its present form because one could tamper "maliciously" without necessarily intimidating, harassing, harming, or injuring another person. And in the overwhelming number of cases, the definition would not reach constitutionally protected conduct in its present form.

Therefore, the language is preserved with the Committee's caveat that it is not intended to be applied in a manner that would interfere with rights traditionally protected under the Constitution.

The term "official proceeding" is defined broadly in section 1514 where definition also is given for the term "law enforcement officer." It should be noted that the broad definition of "witness" includes a person who has become aware of a crime but who has not yet been subpoenaed.

Subsection (a)(3) provides that a person is guilty of an offense if he corruptly, by threats of force, or by any threatening letter or communication, intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the enforcement and prosecution of federal law under which an official proceding is being conducted, or the exercise of a legislative power of inquiry.

The use of a broad residual clause was recommended by both the American Bar Association's Committee on Reform of the Federal Criminal Laws and the New York City Bar Association's Special Committee on the Proposed New Federal Criminal Code.[9] As one court has noted.[10]

The obstruction of justice statute is an outgrowth of Congressional recognition of the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.

In the Committee's view, this observation leads to the conclusion that the purpose of preventing an obstruction or miscarriage of justice cannot be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses. There must also be protection against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice. Some examples of such conduct, actually prosecuted under the current residual clauses, which would probably not be covered in this series without a residual offense clause, are as follows:

(i) A conspirator arranging to have an unnecessary abdominal operation in order to cause a mistrial of an ongoing trial in which he was a defendant.

(ii) Persons plying the illiterate administrator of an estate with liquor and obtaining documents from him which they then used in an effort to have a civil case dismissed.[11]

(iii) The defendant planting an illegal bottle of liquor on the victim's premises in order to discredit the victim, who was planning on being a witness against the defendant in a separate case.[12]

(iv) A conspiracy to cover up the Watergate burglary and its aftermath by having the Central Intelligence Agency seek to interfere with an ongoing FBI investigation of the burglary.[13]

In order to reach such cases, as well as the example previously referred to in which the conduct was found not to come within the scope of the current residual clause, the Committee determined to include subsection (a)(3). The Committee does not intend that the doctrine of *ejusdem generis* be applied to limit the coverage of this subsection. Instead, the analysis should be functional in nature to cover conduct the function of which is to tamper with a witness, victim, or informant in order to frustrate the ends of justice. For example, a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer would be guilty under subsection (a)(3), irrespective of whether he employed deception, intimidation, threat, or force as to the person.[14]

The first branch of the proposed subsection, referring to the "enforcement and prosecution of federal law" is designed to carry forward the basic coverage in 18 U.S.C. 1503. The latter two branches of the subsection, referring to the "administration of a law under which an offi-

[9] ABA Committee on Reform of Federal Criminal Laws of the Section of Criminal Law, Hearings, pp. 5788, 5806, 7735, 7736.
[10] *Catrino* v. *United States*, 176 F. 2d 884, 887 (9th Cir. 1949) ; see also *Falk* v. *United States*, 370 F. 2d 472 (9th Cir. 1966), cert. denied, 387 U.S. 826 (1967).
[11] *United States* v. *Alo*, 439 F. 2d 751 (2d Cir.). cert. denied, 404 U.S. 850 (1971).
[12] *Knight* v. *United States*, 310 F. 2d 305 (5th Cir. 1962).
[13] *United States* v. *Haldeman*, et al., 559 F. 2d 31 (D.C. Cir. 1976), cert. denied, 431 U.S. 933 (1977).
[14] Compare *United States* v. *St. Clair*, 418 F. Supp. 201 (E.D.N.Y. 1979).

cial proceeding is being conducted" and to the "exercise of a legislative power of inquiry," are designed to continue the general scope of the final paragraphs of 18 U.S.C. 1505.

### B. Affirmative Defense

Subsection (c) of section 1512 makes it an affirmative defense to a prosecution under subsection (a)(1)(A) that the conduct engaged in consisted solely of lawful conduct and that the defendant's sole intention was to encourage the other person to testify truthfully.

This provision is derived from the recommendation of the National Commmission.[15] It is intended primarily to avoid the possibility that a prosecutor, judge, or presiding officer would violate this statute by threatening a witness or potential witness with a perjury or false swearing prosecution if he testifies falsely. Conceivably, it could also extend to the situation where a person threatens to institute legal action to recover a debt unless another person testifies truthfully. The defense is made "affirmative," and the defendant has the burden of proving the defense by a preponderance of evidence.

### C. Defenses Precluded

Subsection (d) of Section 1512 contains these defense precluded provisions. The first (d)(1) obviates the requirement that there be an official proceeding in progress or pending. The Committee felt that this increases the scope of the section by expanding the galaxy of witnesses and victims the protections of its language is meant to embrace. Intimidation offenses are particularly insidious and do violence to traditional notions of justice because no one can be convicted of a crime which is not reported. Subsection (d)(1), among other things, specifically reaches intimidation offenses committed before a crime is reported to the appropriate authorities.

Subsection (d)(2) makes explicit the theory that section 1512 is meant to protect the integrity of the process. It is not for the alleged violator to determine what is, or is not, legally privileged evidence or what evidence may prove to be legally inadmissible. Those findings are made by the court, not someone who seeks to withhold the evidence.

Finally, subsection (d)(3) makes clear that attempted intimidation is also a clear violation of this section. Unsuccessful attempts at intimidation are to be punished as if the offense had been completed. The Committee is fully aware that intimidation is one offense where the completed offense is rarely prosecuted since it is not reported.

### D. Jurisdiction

There is Federal jurisdiction over an offense under this section in five situations. Subsection (e)(1) states that if the official proceeding, offense, or prosecution is, or would be, Federal then Federal jurisdiction applies.

Subsections (e)(2) and (e)(3) ensure that there be a sufficient Federal nexus to the offense in order that jurisdiction could be exercised. Some concern had been expressed, for example, that Federal jurisdiction is neither appropriate nor meant to apply to instances dealing with state legislative power of inquiry or state probation officers.

---

[15] See Final Report, sec. 1321(3)(a).

In subsection (e)(4), on the other hand, the Committee intends that Federal jurisdiction will be exercised if the U.S. mails are used. However, unlike in the case of the U.S. mails, if a facility of interstate commerce is not used interstate, in the planning, promotion, management execution, consummation or concealment of a crime punishable by this section, then there is no Federal interest involved.

Finally, subsection (e)(5) emphasizes the interstate requirement for Federal jurisdiction. If the crime is wholly intrastate then prosecution of the offense is properly retained with the state authorities. On the other hand, if there is movement interstate during any phase of the offense, it is the Federal government which has the authority and the power to reach such conduct. In general, the scope of the crimes brought under Federal jurisdiction by the use of the words "interstate" or "interstate or foreign commerce" is intended to be similar to the use of those phrases in other Federal criminal statutes.

SECTION 1513

## 1. The Issue

Section 1513 provides criminal penalties for retaliating against witnesses and informants in official proceedings and criminal investigations.

## 2. Current Law

The Committee is aware that section 1513 overlaps considerably with 18 U.S.C. 1503, 1505 and 1510. The Committee decided against striking sections 1503, 1505 and 1510 because of the case law, and the large number of pending prosecutions. The intent of section 1513 is to expand considerably the protections offered by those sections to victims and witnesses.

## 3. Problems of Current Law

Current law does not explicitly provide for unsuccessful attempts at retaliation; moreover, current law does not clearly proscribe retaliation against friends, relatives, or associates of an individual who has provided information concerning criminal investigations.

## 4. Provisions of the Bill, as Reported

Subsection (a) provides that a person commits an offense if he (1) engages in conduct by which he causes bodily injury to another person or damages the property of another person, (2) threatens to cause bodily injury or damage the property or "otherwise endeavors to intimidate another person", or (3) unlawfully subjects a Federal public servant to economic loss or injury to his business or profession, because of (A) the attendance of a party or witness at the official proceeding, or any testimony given, or any record, document, or other object produced, by a witness in an official proceeding; or (B) any information relating to an offense or possible offense given by a person to a law enforcement officer.

As under present statutes, the types of injuries covered include harm to both person and property. It has been determined that the phrase in 18 U.S.C. 1503 and 1505 "injures any party or witness in his person or property" extends to the situation where the retaliation takes the

form of forcing a person out of business,[16] and, presumably, it would also reach acts of discharging a person from his job on account of his testimony, or otherwise damaging him in his business or profession (e.g., by blacklisting). The Committee concurs that such forms of retaliation should be covered and so has included the "or unlawfully subjects" language in this section. An earlier version of subsection (a)(2), which appeared in S. 1630, the Criminal Code Revision bill, was broader in that it was phrased in terms of "improperly subjects another person" to economic loss or injury. The National Association of Manufacturers and others pointed out that such expansive language would make it criminal for employers in the private sector to discharge disloyal employees.[17] Accordingly, the Committee determined to limit this branch of the offense to those who retaliate against "whistleblowers" employed by the Federal Government. The term "unlawfully" is designed to exclude from the ambit of the offense such actions as failing to vote for a candidate because of his testimony or failing to patronize the business establishment of a person because of information he gave to a law enforcement officer. The Committee believes such individual choices to be permissible. Where the retaliation takes the form of unlawful action, however, whether tortious, criminal, or otherwise wrongful, it should clearly be reached. The terms "business" and "profession" are intended to be broadly construed to reach all manner of callings, livelihood, and occupations in which a person may be engaged.

Only serious acts of retaliation are included. These are delineated in paragraph (1) as those that cause bodily injury or damage the property of another person. The concept of "damages the property of another" is intended to mean physical damages to property of the sort covered in the arson and property destruction offenses in current law. Other forms of economic damage are covered in paragraph (2) via the phrase "economic loss or injury to his business or profession." This is intended to reach non-physical acts such as effecting the discharge or transfer of a person from his employment, causing labor problems to beset a person's business, breaching or failing to renew a contract, etc. This phrase is not, however, intended to reach strikes, boycotts, or picketing undertaken in support of lawful labor objectives, nor to interfere with the enforcement of conditions of employment such as the payment of union dues and initiation fees. Although this provision broadens the offense contained herein considerably, its scope is still far less expansive than that embodied in the notion of any harming by an unlawful act, as recommended by the National Commission.

The conduct can be directed against any person, not just the person who gave the testimony or the information or who attended the proceeding. Although current law with respect to witnesses appears to be limited to injuries to the person or property of the witness himself,[18] the Committee believes that it is important to protect family, friends, associates, etc., from acts of retaliation. Note also that it is not an

---

[16] *United States* v. *Campanale*, 518 F. 2d 352, 366 (9th Cir.), cert denied, 423 U.S. 1050 (1975).

[17] See correspondence from National Association of Manufacturers to Senator Thurmond, dated November 30, 1981.

[18] See 18 U.S.C. 1503, 1505. By contrast, 18 U.S.C. 1510, applicable to informants, appears to cover injuries to any person.

element of the offense that the testimony or information was lawful (e.g., not perjured). Even where false testimony or information has been given by a witness, the Committee considers that society's remedy is to prosecute for perjury and that retaliaton against the witness in the manner prohibited here should not be sanctioned.[19]

With respect to the informant retaliation branch, the Committee considered but rejected the idea of the National Commission of defining "informant" as a "person who has communicated information to the government in connection with any government function." [20] This would vastly increase Federal covnizance over such offenses without any need for an increase having been demonstrated. Thus, the Committee has retained the current restriction on the offense to the giving of information relating to an offense (or possible offense) to a law enforcement officer, as defined in section 1514.[21]

### 3. Jurisdiction

There is a Federal jurisdiction over an offense under this section in four situations. The four bases enumerated are identical to those applicable to section 1512 and the discussion there suffices for this section.

#### SECTION 1514—DEFINITIONS FOR SECTIONS 1512 AND 1513

A number of terms used in Sections 1512 and 1513 of Title II are defined in Section 1514. The terms defined are: "law enforcement officer," "maliciously," "official proceeding," "physical force," "victim," and "witness." The definitions are discussed in relation to the sections to which they apply.

#### SECTION 1515—PENALTY FOR AN OFFENSE COMMITTED WHILE ON RELEASE PENDING JUDICIAL PROCEEDINGS

The Committee, in order to demonstrate its grave concern for the problem of victim/witness intimidation, has determined that any successful prosecution for offenses included in sections 1503, 1512, or 1513, if committed while on release, will be punished consecutively to any sentence imposed for the offense for which the defendant was on bail. The purpose of section 1515 is to ensure that those who abuse the freedom they receive during pretrial release will not have done so with impunity.

For example, if a person charged with assault is released prior to trial and subsequently goes on to commit any crime included in sections 1503, 1512, or 1513, the sentence for this offense will be consecutive to that for the assault offense if convicted. This, in the Committee's view, will encourage prosecutions in this area while possibly deterring the proscribed conduct.

#### SECTION 3521—WITNESS RELOCATION AND PROTECTION

### 1. Summary

Section 3521 expands the authority of the Attorney General to provide witness protection in cases other than those involving organized

---

[19] See Comment to Final Report. sec. 1367.
[20] See Final Report. sec. 1367.
[21] 18 U.S.C. 1510 refers to a "criminal investigator," which is defined in virtually the same manner as the term "law enforcement officer."

crime and broadens the definition of witness to include potential witnesses, victims, and their families, and persons closely associated with them. This section also gives the Attorney General the discretion to order the kinds of protective measures he deems necessary, which may be considerably less than the relocation authorized under current law. Finally, Section 3521 authorizes federal protection, on a reimbursable basis, of State witnesses when State protective measures are inadequate. Section 3521 is identical to Section 3131 of S. 1630, the Revised Criminal Code bill of the 97th Congress.

*2. Present Federal Law*

Title V of the Organized Crime Control Act of 1970 (which appears in headnote fashion in chapter 223 of Title 18 preceding 18 U.S.C. 3481) authorizes the Attorney General to provide for the security of government witnesses, potential witnesses, and members of their families when those individuals are in danger by virtue of being a witness in legal proceedings against any person alleged to have participated in an organized crime activity.

*3. Problems of Current Law*

Present law authorizes the Attorney General to provide ". . . protected housing facilities and to otherwise offer to provide for the health, safety and welfare of witnesses and persons intended to be called as government witnesses . . ." but does not give statutory guidance to the Attorney General on what techniques and procedures are to be used. Moreover, it does not explicitly authorize the Attorney General to take what measures he deems appropriate—such as merely protecting rather than relocating a witness. Current law only covers witnesses in organized crime cases. Finally, current law does not cover individuals closely associated with the witness even though the individual may be endangered as a result of this association.

*4. Provisions of the Bill, as Reported*

Section 3521(a) continues the current law authority of the Attorney General to provide protection and security by means of relocation for witnesses (and their immediate families) in proceedings brought against persons involved in criminal activity. Several changes have been made.

First, under current law the protection may be offered where the proceedings have been instituted against a person alleged to have participated in an "organized crime activity". The Committee feels that the term "organized crime activity" is, on the one hand, too vague in that it fails to give sufficient guidance to the Attorney General in the implementation of this statute, and is, on he other hand, too limiting of the Attorney General's authority to afford protection where it is otherwise warranted. Accordingly, the Committee has substituted a more precise term. Under section 3521, witness protection may be provided in "an official proceeding if the Attorney General determines that . . ." an offense described in section 1503 (Influencing or injuring officer, juror or witness generally), or a similar State or local offense involving a crime of violence directed at a witness, 1512 (Intimidating a Witness) or 1513 (Retaliating against a Witness or an Informant) is likely to be committed.

The reference to sections 1503, 1512, and 1513 insures completeness of coverage. Clearly, the offenses set forth in those sections are pre-

cisely the type of conduct against which this bill seeks to afford protection for witnesses, potential witnesses, victims, and their immediate families. The Committee intends by reference to these three sections to describe the general kind of conduct which must be protected against. There is no intention to limit the availability of protection to the threat that these specific Federal offenses will be committed. Rather, it is the intent of the Committee that the Attorney General be free to afford whatever protection is necessary in any case in which he believes the conduct described in those offenses is likely to occur. In addition, the section makes clear that there is no intent to limit protection to Federal offenses. The Attorney General can order protection of State or local witnesses on a reimbursable basis. Similarly there is no intent to restrict protection to organized crime activities. There is no reason to deny protection to a witness who is in danger of retaliation, simply because the nexus between the offense and organized criminal activity is lacking. For instance, a rape victim fearing retaliation from her assailant may not be willing to testify unless relocation or protection is made available. That a further assault will subject the attacker to further prosecution is cold comfort in such a situation. Protection or relocation should be available in such a circumstance. Extending witness protection in this manner should not create a burden on the Department or the witness relocation program, first, because any State victims are to be protected subject to reimbursement of the Federal government by the State, and, second, because the Attorney General retains discretion as to any individual victim being afforded protection.

The Committee has also substituted the term "official proceeding," which is defined in section 1514 for the current law term "legal proceedings." This change is in no way intended to limit the reach of the current language. In particular, the Committee intends that the statute remain applicable in civil and administrative proceedings, where warranted, as well as in criminal proceedings. The term "official proceeding" is intended to achieve this result. In addition the word "involving" is used instead of the more limited word "instituted" to make it clear that relocation is possible prior to formal charges being brought against a specific defendant. The definition of "official proceeding" would indicate the same result.

In addition, relocation and protection may be offered not only to the witness or a potential witness and to the immediate family of such witness but "to a person otherwise closely associated" with the witness. Experience has shown that the danger of retaliation is not always confined solely to the witness and his immediate family. Protection has to be afforded occasionally to the fiance of a witness, to children of the fiance, to a former spouse, and to others closely associated with the witness. The phrase "a person otherwise closely associated" is intended to recognize this need. The standard that must be applied before protection and relocation will be afforded to a family member or a person associated with the witness is that such person may also be endangered.

Section 3521(b) is new and spells out in more detail the protective measures that the Attorney General may take to ensure witness protec-

tion or relocation. The general concept is that protection of the witness will be achieved either through relocation and the establishment of a new identity or through whatever means the Attorney General deems necessary and adequate short of relocation. This can mean as little as putting someone in a motel outside of town until the trial is over, or it could include the full panoply of procedures listed in section 3521(b).

The procedures developed by the Attorney General to implement section 3521(b) must be designed to protect the health, safety, and welfare of the person to be protected from bodily danger. The Attorney General is afforded wide latitude in taking any action he deems necessary to achieve this result, and he can continue such action for so long as, in his judgment, the danger continues. To guide the exercise of this discretion, the Committee has outlined six measures that may be involved in any relocation. These measures are the same as contained in Section 3131(b) of the Criminal Code, S. 1630. The list in section 3521(b), however, is not intended to be all-inclusive and for the most part reflects procedures already developed to implement the current statute.

First, the Attorney General is authorized to provide suitable official documents to enable the person relocated or protected to establish a new identity without having to reveal his prior identity. Such documentation may include such items as birth certificates, drivers licenses, social security cards, military records, school records, medical records, and the like. It is expected that new names will, in most instances, be legitimized ultimately by court approved name changes. The Committee is aware of the cooperation afforded to the existing program by many Federal, State, and local governmental agencies in this regard and urges that such cooperation and assistance be maintained in the future.

Second, the Attorney General is authorized to provide housing for the protected or relocated persons and, third, for transportation of persons and property to the new residence. In this regard the Attorney General may assist in the selection and location of a new residence and the payment of moving expenses, and may render such other assistance as may be necessary to effect the relocation.

Third, the Attorney General is granted authority to provide a tax free subsistence payment in a sum to be established by him in regulations. This provision is in recognition of the need to provide funds for living expenses to a witness and his family who are suddenly removed from their existing life and employment. The subsistence amount and length of payment will vary from witness to witness, but it is not intended that it be paid for a great length of time. It is a stop-gap measure until the relocated family can become established and self-sufficient. There is no requirement that the Attorney General continue such payments beyond the length of time he deems sufficient in the individual case for the relocated witness to be able to fully support himself. This payment is in no way to be a substitute welfare system. In this regard, the Committee notes with approval the existing Department of Justice efforts to limit the duration of such payments. This payment is also not intended to relieve the investigative agencies of any authority or responsibility that they may have to pay informants from time to time.

Fourth, the Attorney General is authorized to assist the person relocated in procuring employment. Here the obligation is to assist in finding job opportunities; however, the primary obligation in finding new employment rests with the relocated witness. Accordingly, there is no guarantee of a job contemplated and the responsibility does not hold for finding future employment in later years.

Fifth. the Attorney General is authorized, in his discretion, to refuse to disclose to anyone the identity, location, or any other matter concerning the person relocated or protected under the program. Obviously, the success of a witness protection and relocation program depends on assured security as to its details. There is no point in relocating a witness with a new identity if that identity will be made public. In exercising his discretion to maintain the secrecy of the program, the Attorney General is to be guided by certain factors. These are the danger to the life and safety of the person relocated or protected, the security of the program itself, and the benefit that would accrue from such disclosure to the public or to the person seeking the disclosure.[22]

Subsection (c) was added in the form of a floor amendment to S. 1437, the Criminal Code Revision bill of the 95th Congress, by Senator Huddleston. The Committee has included this amendment in S. 2420. It deals with the occasional but vexing problem of a citizen who has a civil cause of action against a protected person and is stymied in his efforts to litigate because he cannot learn the new identity or where-abouts of the potential defendant. Under subsection (b)(6), disclosure of such information for the purpose of serving process would generally be forbidden. It is not the intent of the witness relocation and protection program to deprive otherwise innocent persons of their right to litigate civil claims for damages; however, a balance must be struck to ensure protection of the witness. Subsection (c) seeks to strike such a balance. It authorizes the Attorney General to accept the service of process on a protected person named as a defendant in a civil cause of action ensuing prior to the person's relocation. The Attorney General is required to make reasonable efforts to serve a copy of the process on the relocated person at his last known address. If a judgment is entered against the relocated person the Attorney General must determine if the person has made reasonable efforts to comply with the provisions of the judgment, and, if the person can still be located, the Attorney General is required to take affirmative steps to urge compliance by the protected person with the judgment. If the Attorney General determines that the person has failed to make reasonable efforts to comply with the judgment, he is granted discretion to reveal to the plaintiff, after giving appropriate weight to the danger to the protected person that will be caused, the identity and location of the person. Such disclosure to the plaintiff must be made upon the express condition that the plaintiff will not use that information for any purpose other than for disclosures that are essential for recovery under the judgment. Finally, the subsection provides that any disclosure or nondisclosure of the identity or location of the protected person by the Attorney Gen-

---

[22] As drafted, section 3521(b)(6) should be read as a statute permitting the denial of information under 5 U.S.C. 552(b)(3), as amended, of the Freedom of Information Act. Other exemptions under that Act may apply as well.

27

eral is not to subject the government to liability in any action based on the consequences of such disclosure.

## SECTION 3522—REIMBURSEMENT OF EXPENSES

This section continues the existing authority of the Attorney General to provide transportation, housing subsistence, or other assistance for a witness or other person pursuant to section 3521 to State or local governments conditioned, in his discretion, upon reimbursement of all or part of the costs involved. For prison witnesses, the Attorney General is authorized to accept, with or without reimbursement, at his discretion individuals incarcerated, sentenced or unsentenced in the federal prison in state or local institutions for their safety as is deemed appropriate.

## SECTION 3523—CIVIL ACTION TO RESTRAIN WITNESS INTIMIDATION

### 1. Summary

Section 3523 would permit the Attorney General to initiate a civil proceeding to prevent or restrain a criminal offense involving the intimidation or harassment of a victim of or a witness to a crime. He would be empowered to seek a court order to enjoin an offense that involves tampering with or attempting to influence a witness or victim by the use or attempted use of physical force, threats, intimidation or fraud with the intent to influence the victim's or witness' testimony, or cause him to withhold testimony, alter evidence, absent himself from a proceeding or fail to report the offense to a law enforcement officer. This would be a new provision and is designed to supplement federal criminal laws such as 18 U.S.C. 1503 and new sections 1512 and 1513 that would be added by Title II of this bill which proscribe such conduct. Section 3523 would allow the court to take immediate action to ensure the integrity of the judicial process as well as the safety of the victim and witnesses by ordering the defendant, or any other person in the courtroom, to maintain a certain distance from a specified witness and not to communicate with him. Violation of such a court order could result in revocation of the defendant's pretrial release or the invocation of the court's contempt power.

### 2. Present Law

Neither the present witness intimidation statute, 18 U.S.C. 1503, nor the new sections 1512 and 1513 explicitly authorize the court to issue an order to restrain witness intimidation, harassment, or threats. Rather, these are criminal statutes that are enforced through the prosecution of the offender. While these offenses are serious matters clearly deserving of criminal prosecution, the threat of such prosecution, by itself, may not be enough to protect the integrity of the ongoing investigation or trial or to provide for the safety of the victim and witnesses. A court order forbidding certain conduct would supplement the existing criminal sanctions. However, up to this point such court orders have been infrequent, a legacy of the early distinction between proceedings in law and in equity and the reluctance of equity to enjoin a crime. Indeed, the Committee is unaware of any cases where the present section 1503 of title 18 has provided the basis

for a restraining order to prevent or halt a violation of that section. Moreover, courts have found that this section also provides no basis for a private civil action—for example for assault—by a victim of witness harassment so that even this minimal additional deterrent is not available.[23]

The result is that the defendant, or his associates, who realizes that he will in all likelihood be convicted and imprisoned if a particular witness testifies, sees little additional risk in harassing and intimidating the witness in an effort to dissuade him from testifying. A criminal trial for these actions would be in the future, if at all, and any punishment may be less than could be meted out for the underlying offense that impacted on the witness or victim who is now again harassed.

Present law, to be sure, is not totally unable to respond to this problem, but is severely limited. In a criminal proceeding, the judge, if he has reason to believe that the victim or witness is being or is likely to be intimidated, has the authority to issue a restraining order to the defendant. He does not have authority, however, to order other individuals who may be threatening the victim or witness to stay away. His only power over individiuals who are friends, associates, or family members of the defendant arises if these individuals cause some sort of disruption in the courtroom. In such a case they could be ordered to leave but this is of little help since most threats and acts of harassment are made or carried out clandestinely.

Section 3523 would provide a statutory basis for issuing orders to protect the criminal judicial process and guard the safety of victims and witnesses. Although, as discussed, such orders have been rarely issued in the past, statutes authorizing them have assisted in overcoming the reluctance of courts to enjoin a crime. Moreover, today it is generally conceded that a legislature may authorize the injunctive relief in the enforcement of a criminal statute.[24]

### 3. Problems of Current Law

The ABA found in its extensive hearings on intimidation that there is widespread and pervasive intimidation of victims.[25] One of the problems pointed out in the hearings was intimidation of victims and witnesses by individuals other than the defendant. For example, one witness testified that, after she had been raped by a motorcycle gang, several gang members not involved in the rape drove their motorcycles by her house, which intimidated her. The ABA states "There seems to be no efficacious way of directing orders at persons beyond the court's immediate presence," and it was for this reason the ABA recommended that judges be given greater ability to deal with intimidation.

In 1980, the ABA approved a model statute to reduce victim and witness intimidation.[26] To date, at least five states—California, Louisiana, Pennsylvania, Rhode Island and Wisconsin—have adopted court orders. Informal ABA inquiries have found that jurisdictions within these states vary considerably in their use of civil action to re-

[23] See *Jones* v. *United States* 401 F. Supp. 168 (D.C.E.D Ark. 1975), and the cases cited in *Birch* v. *Snider*, 461 F. Supp. 598, 602 (D.C. Md. 1978).
[24] See Case Comments, "Equity's Power to Enjoin Criminal Acts," 16 Wash. and Lee L. Rev. 303, 305 (1959).
[25] "Reducing Victim/Witness Intimidation," American Bar Association, 1981, p. 6.
[26] Appendix to hearings before the Subcommittee on Criminal Justice, House of Representatives, 96th Congress, 1st session, on H.R. 4257.

strain victim and witness intimidation. Where court orders are regularly used in intimidation cases, there appear to be no problems except for an occasional disregard of the orders by defendants. Where they are used less frequently, the mere potential for issuing such orders may in itself be effectual in reducing intimidation. Currently, several additional state legislatures are considering providing their courts with authority to issue court orders as recommended in the ABA model statute.

### 4. Provisions of the Bill, as Reported

Section 3523 is new to Federal law and permits the Attorney General to initiate a civil proceeding to obtain a court order prohibiting intimidation or harrassment of a witness or victim.

Under subsection (a), the Attorney General can initiate a civil proceeding to restrain the types of offenses that are set forth in sections 1503 (Influencing or injuring officer, juror or witness generally) ; 1512 (Tampering with a victim, witness or informant) ; or 1513 (Retaliating against a witness or informant). S. 2420 requires a hearing prior to the witnesses but to the court itself and to its duty to ensure that its any of these sections has occurred or is reasonably likely to occur. In view of the potentially serious impact of intimidation, the court may base its findings upon hearsay or upon the representation of the attorney for the government or the defense counsel.

If the court finds that a proscribed offense has occurred or is reasonably likely to occur, it can take any of three actions. It can order that the defendant, a witness, any other person connected with the case, or any other person in the courtroom, not violate section 1503, 1512, or 1513. It can order that any such person maintain a prescribed distance from a specified witness or victim. It can order that any such person not communicate with a specified witness or victim, except under such conditions as the court may impose.

The restraining orders under this section are intended to place those who might intimidate witnesses or victims on notice that the court will not tolerate such activities, which are inherently threatening not only to the witnesses but to the court itself and to its duty to ensure that its proceedings are fair and just. The provision permitting the court to issue an order restraining those in the courtroom from violating section 1503, 1512, or 1513, is in recognition of the fact that many persons in the courtroom other than the accused may pose possible intimidation problems—for example, when numbers of family members or friends appear in the courtroom although the defendant himself may be in custody.[27]

The Committee recognizes that in cases where the defendant chooses to represent himself court orders should reflect a balance between the defendant's right to investigate the charges and the rights of a victim or witness to be free from intimidation. It is the Committee's intent that in such pro se cases the court provide appropriate consideration to the defendant's concerns prior to issuing orders.

Subsection (b) grants jurisdiction to the United States district courts to hear and determine proceedings under section 3523, 1503, 1512, and 1523.

---

[27] "Reducing Victim/Witness Intimidation," op. cit. p. 10.

## TITLE III—RESTITUTION

### 1. Summary

Section 3579 permits the court, for the first time, to order payment of restitution independently of a sentence of probation. If restitution is not ordered, the court must state for the record the reasons for not imposing it. Compliance with restitution orders is mandated as a condition of probation or parole. The premise of the section is that the court in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make goods, to the degree possible, the harm he has caused his victim.

### 2. Current Law

Current law does not contain a provision covering an order of restitution as a part of any sentence other than probation. 18 U.S.C. 3651 provides that as a condition of probation the defendant "may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had."

### 3. Problems of Current Law

The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the sanctioning power of society does to punish its wrongdoers, it should also insure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being.

As simple as the principle of restitution is, it lost its priority status in the sentencing procedures of our federal courts long ago. Under current law, 18 U.S.C. 3651, the court may order restitution for actual damage or loss, but only as part of a probationary sentence.

As a matter of practice, even that discretionary grant of authority is infrequently used and indifferently enforced. In this respect, federal criminal courts have gone the way of their state counterparts, reducing restitution from being an inevitable if not exclusive sanction to being an occasional afterthought.

Crime victims and their advocates have called on state legislators to restore restitution to its proper place in criminal law. They point out that the average dollar losses victims suffer total hundreds of dollars, not thousands, and that most ex-offenders, not just those on probation, have some means to undo the financial harm they have done. There is no reason to believe that victims of federal crimes do not have the same grievances. The legislative remedies proposed here parallel those being enacted by state legislatures.

The subcommittee heard testimony from one victim whose case is all too typical. This retired civil sevant was the victim of a purse snatching as a result of which she also suffered a broken hip. She learned that her assailant had been caught, and went to some lengths to cooperate with law enforcement agencies. Nonetheless, the first she heard about the judicial processing of the case was when she received a letter informing her that part of the $350 restitution owed her was being held by the local probation department.

It later appeared that no one involved with the plea negotiations in her case, and no one working on the pre-sentence report, knew any-

thing about the costs of the crime to the woman; and neither the prosecutor's office nor the probation department could account for there having been a restitution order. Both were surprised and dismayed when they later learned that the victim's medical costs alone were over $10,000, and that, because of her inability to pay for bills not covered by her insurance policy, she was in debt and had to forgo needed, rehabilitative surgery.

This story is typical of the casual way restitution is being used in all our courts.

In contrast, new methods at constructive, victim-oriented sentencing practices can insure, for example, that the prosecutorial, judicial and probation authorities know, and are encouraged to respond to, the victim's monetary damages. A hallmark of this revived effort at producing restitutive justice is the creative use of "split sentences," requiring felons, after a period of incarceration, to act responsibly in the free community (including paying restitution) or face a much longer term in prison. This kind of sentencing is not specially authorized under federal law at this time.

Similarly, federal statutes, unlike many state statutes, do not declare that the underlying facts of an adjudicated crime are to be treated as res judicata in a later civil proceeding. That is an ambiguity in the law that the bill would also correct.

Typically, sentences in both federal and state courts are less likely to require restitution if the victim was insured. The common practice of not permitting insurance companies to be subrogated to the rights of insured victims means that some offenders are being relieved of their debts. It also means that insurance companies and the insurance-buying public are being asked to pay off the offender's debt. Finally, there is the problem in the federal system in the common inattention of criminal justice authorities to enforce restitution orders after they are made. The bill encourages better monitoring and enforcement procedures.

### 4. Provisions of the Bill

Section (a) authorizes the court to order a defendant convicted of any offense under Title 18 of the United States Code other than those described in section (d), which caused injury or death, or loss, damage, or destruction of property, to make restitution directly to the victim or, when the victim agrees, to a person or organization designated by the victim. If the court does not order restitution, it must state its reasons for the record.

The section requires that restitution be "as fair as possible to the victim without unduly complicating or prolonging the sentencing process." The Committee added this provision to prevent sentencing hearings from becoming prolonged and complicated trials on the question of damages owed the victim. In those unusual cases where the precise amount owed is difficult to determine, the section authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim.

The Committee recognizes that an offense—particularly one causing bodily injury or death—may have lifelong cost implications for the victim or the victim's family, but it also recognizes that there may

32

sometimes be a practical necessity in limiting both the amount of restitution ordered and the period during which restitution payments are ordered to be made. In line with the American Bar Association Criminal Justice Standard 18–2.3, the Committee's intention is that the offender's ability to pay will be a factor in the restitution order, and that the order will cover a period that will reasonably assure full and complete payment of the restitution order notwithstanding any maximum period of probation or incarceration the defendant could have served.

Section 3579 (a) expands current law by authorizing an order of restitution independent of a condition of probation, thereby permitting its use in conjunction with imprisonment, fine, suspended sentence, or other sentence imposed by the court.

Subsection (a) (1) authorizes restitution to the victim for income lost because of the victim's injury and for necessary medical expenses, including those associated with physical, psychological, and vocational rehabilitation. Funeral and burial expenses, and loss of income are also appropriate expenses for restitution to the deceased victim's estate.

Under subsection (a) (2), an offender may be required to make restitution for property loss, damage, or destruction, by restoring the property to the victim or by paying the victim an amount not to exceed the value of the property. If the victim agrees, restitution may be made in money or services to a person or organization designated by the victim. The Committee included these several options to provide the court with some flexibility in determining the kind of restitution which would both satisfy the victim and provide maximum rehabilitative incentives to the offender.

The property restoration provision should require either that the condition of the returned property be at least as good as it was at the time of the offense, or that the defendant should pay for restoring it to that condition. If the property cannot be returned, the victim should receive the value of the property at the time it was taken, or the value of the property at the time of sentencing, whichever is greater. Where appropriate, the payment for property should include compensation for loss of use of the property.

Subsection (b) describes the relationship between restitution and civil proceedings brought by the victim against the defendant. Subsection (b) (1) prohibits the court from ordering restitution to victims bound by a judgment or settlement in a civil proceeding involving the underlying offense. Subsection (b) (2) provides that any amount paid to a person pursuant to an order of restitution shall be set off against an amount later recovered as compensatory damages in a civil proceeding. The purpose of these provisions is to assure that the victim does not receive double damages.

Subsection (b) (3) provides that conviction of an offense that would properly give rise to restitution shall estop the defendant from denying the essential allegations of the criminal offense in any subsequent civil proceeding brought by the victim. It is the Committee's intention in this subsection that a criminal conviction obviate a victim's need to establish a defendant's liability in a civil suit for punitive and/or compensatory damages.

Subsection (b) (4) authorizes the court to order restitution to third parties who have compensated the victim or the victim's family for

expenses or losses directly related to the crime. Third parties might include friends, family members, or other individuals and organizations who have assisted the victim or the victim's family, as well as insurance companies and state victim compensation programs.

Subsection (b)(5) substantially increases the victim's chances of collecting restitution by permitting either the victim or the United States to enforce the order in the same manner as a judgment in a civil action. Under this subsection, Rule 64 of the Federal Rules of Civil Procedure is made applicable, and the remedies available include arrest, attachment, garnishment, replevin and sequestration.

Section (c) mandates compliance of any restitution orders imposed under 3579 as a condition of probation or parole. Failure to comply with such orders is grounds for probation or parole revocation hearing. Upon determination that the offender is financially capable of compliance and that failure to comply is willful, parole or probation shall be revoked.

Section (d) specifically provides that restitution may not be ordered in cases arising under the antitrust laws, the securities laws, or certain other regulatory statutes. These statutes involve complex issues which are outside the intended scope of Section 3579 such as standing, reliance, and causation. Moreover, these statutes have historically contained their own methods of restituting victims—such as the authorization of treble damages—a system of sanctions and reparations the Committee believes should remain integral parts of the regulatory statutes themselves.

The Committee believes the increased use of restitution orders encouraged by sections (a) through (c) will benefit a substantial number of victims. Nevertheless, restitution alone is not sufficient. Many cases do not result in the apprehension or conviction of the offender and thus no restitution can be ordered. Even where there is a conviction, defendants are often financially unable to make full restitution. Therefore, section (c) requires that within six months of the title's enactment the Attorney General report to Congress whether additional laws are necessary to ensure for all crime victims just compensation. One funding method to be considered is the imposition of additional fines or penalties on individuals convicted of Federal crimes. The moneys collected would either be allocated to uncompensated crime victims, or for services which restore victims to their pre-victimization state, or both, as is now the practice in California, Oklahoma, and Kentucky.

### TITLE IV—FEDERAL ACCOUNTABILITY FOR ESCAPE OR RELEASE OF FEDERAL PRISONER

*1. Summary*

Section 401 amends Section 1346(b) the Federal Tort Claims Act (title 28) to impose a measure of accountability upon agents and employees of the United States. It proposes to make the federal government civilly liable for injuries or property losses suffered at the hands of persons who escape or are released from federal custody where the government is found to have been grossly negligent.

*2. Current Law*

By enacting the Federal Tort Claims Act (FTCA), 28 U.S.C. 1346 (b), 2671–2680 (1976), Congress authorized a limited waiver of sovereign immunity in tort actions. The FTCA confers jurisdiction upon the federal district courts with respect to "claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable . . .". Excluded from this broad grant of jurisdiction is "Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." (28 U.S.C. 2680 (a)).

*3. Problems of Current Law*

The underlying philosophy of Title IV was summed up by Senator Laxalt when S. 2420 was introduced:

> Once a person has been convicted and sentenced to prison, it becomes important to society that the departments charged with that person's custody perform their duty at an acceptable level. One provision of this bill (Title IV) will place liability on the Federal Government for the grossly negligent actions of its officials. In my view, public policy would be well served by allowing such suits under the Federal Tort Claims Act. I think this represents good policy for three reasons: first, parole and probation officers would be considerably more cautious in releasing potentially dangerous convicts; second, it would force these officials to be publicly accountable—although not personally liable—for what are often grossly negligent acts. Finally, and most important, victims would be provided a Federal cause of action. Damages would be awarded if gross negligence caused the premature release or the escape of a violent Federal prisoner who went on to prey on society.

The Attorney General's Task Force on Violent Crime recommended in its Final Report of August 17, 1981, that the Attorney General study the necessity of allowing suits to be brought against Federal Government agencies for gross negligence exemplified by the early release of, or the failure to supervise, obviously dangerous persons, or the failure to warn potential victims of these dangerous persons.

In is commentary on third-party accountability, the Attorney General's Task Force delineated the reasons for the legislative provisions of Section 401.

> In the past, there have been a number of occasions where extremely dangerous criminals have been precipitously released into society by prison officials, parole boards, and mental institutions. Once at large in society, they have brutalized

and even murdered persons. Since these victims and their survivors have had no real recourse to redress the wrongs visited upon them, they have, with some justification, felt that their government had failed in its obligation to protect them. In an effort to find some redress, the survivors of one such victim brought a suit against the Federal Bureau of Prisons and the U.S. Board of Parole under the Federal Tort Claims Act. The facts of this case, *Payton* v. *United States*, 636 F. 2d 132 (5th Cir. 1981), are briefly set out below in an effort to elucidate the issue of third-party accountability.

A member of the U.S. Air Force, Thomas Whisenhant, was sentenced in 1966 to 20 years in Federal prison on a charge of assault with intent to murder a female member of the Air Force, whom he severely and brutally beat almost to death. While in prison he manifested his continued homicidal tendencies by threatening the life of a female penitentiary employee. He was reportedly diagnosed in prison as a paranoid, schizophrenic psychotic who had tendencies toward brutal assaultive behavior. One psychiatric concluded that he was in dire need of long-term psychiatric treatment. Nonetheless, his sentence was inexplicably reduced to 10 years and he was released. This release, according to the testimony of a psychiatrist, was a grievous error bordering on gross negligence.

After his release, he brutally beat and murdered two women and kidnapped, raped, murdered, and mutilated a third woman, whose survivors brought suit under the Federal Tort Claims Act against the Federal Bureau of Prisons and the U.S. Board of Parole. This suit was dismissed by the trial court, but the dismissal was reversed by the Fifth Circuit Court of Appeals. There is presently a motion for rehearing en banc pending.

The public expects vigorous governmental efforts to protect it against such occurrences as took place in the *Payton* case. A growing body of authority recognizes the duty to properly supervise parolees and patients who are dangerous, to advise appropriate officials of their release and to warn potential victims. Such accountability would act as an incentive for professional and efficient administration and would tend to act as a deterrent to grossly negligent actions that result in the release of obviously dangerous persons into our society. As the scope of government grows, the potential for harm due to its negligence increases. When injury results from the grossly negligent actions of government under circumstances herein described, there is a need to compensate the victims. Since there is no real method in existence now, it should be created.

The Subcommittee on Criminal Law heard testimony from Douglas Payton on May 27, 1982. He succinctly stated his rationale for suing the Federal government:

> I have sued the Federal Government because I know they were responsible for Cheryl's terrible death and that the Federal Government isn't any different than anyone else; if they

are wrong, anyone ought to be able to sue them. The Parole Board that let him out did an awful, ignorant, foolish thing. They just turned their back on society, they just didn't care about the public. They knew about him and what he might do and they let him out anyway.

The Committee agrees that victims such as Mr. Payton should have some means of redress. Two major arguments against this section are that this new provision in the law will lead to a multiplicity of lawsuits and have a "chilling effect" upon independent parole decisions. In a well-argued brief filed as amici curiae (which was made part of the May 27, 1982 hearing record) the Crime Victims Legal Advocacy Institute (now known as the Victims' Assistance Legal Organization) argues strongly against the "multiplicity of lawsuits" position. The Committee agrees with the brief which states in part:

> ... almost every case, successful or unsuccessful, which has been brought by victims or their survivors against custodial officials for release of dangerous prisoners had, as its basic premise, the fact that the officials involved acted in a grossly negligent or reckless manner. This fact, in turn, has narrowed the issue in such cases, and consequently has narrowed the potential for adverse impact on the government because of the limited nature of the liability.

The Committee also agrees with the opinion of the Fifth Circuit Court of Appeals (which reversed the original *Payton* case) when it discussed the "chilling effect" issue. The Court of Appeals panel stated:

> There is ample room for vigorous governmental implementation of policies when the only limit placed upon such activities is that officials do not act in a manner so unreasonable that no sensible, well-intentioned person could accept it. (636 F.2d at 148.)

### 4. Provisions of the Bill, as Reported

Section 401 amends section 1346(b) of title 28 U.S.C. by inserting at the end of that section, which authorizes individuals to sue the federal government, "for personal injury or death directly caused by any dangerous offender charged with or convicted of a Federal offense who is released from, or who escapes from lawful custody of an employee of, or any person acting as the lawful agent, of the United States as a result of the gross employee or person".

"Dangerous offender" for purposes of this section means one whose past criminal history involve crimes of violence. There would be no liability for damages if the releasee or escapee had no history of violent crime.

After some deliberation, the Subcommittee chose not to give a statutory definition of the term "gross negligence." It is a term that has been created and defined by court decisions in our legal history, and the Committee believes that it is particularly wise to let courts work out such legal definitions, on a case-by-case basis, in developing areas of law, such as the area of third-party victims litigation.

The Committee also decided to amend S. 2420 as originally introduced to eliminate crimes of property, limiting coverage to only the most serious cases involving personal injury or death.

The term "any person acting as the lawful agent of" would cover those situations in which the Federal government has turned over a person on contract to a local or state facility for incarceration. However, the bill would not cover situations when a person accused of a federal crime is indicted and to be tried in a state court.

A new section was added at the end of Title IV to clarify that subsection (a) of section 2680 of title 28 the "exceptions" to tort liability, "shall not apply to actions constituting gross negligence for purposes of section 1346(b)(2) of this title". The Committee added this section to ensure that there was no confusion that the actions of the parole board might fall under "discretionary function" exception.

TITLE V—FEDERAL GUIDELINES FOR FAIR TREATMENT OF CRIME VICTIMS AND WITNESSES IN THE CRIMINAL JUSTICE SYSTEM

## 1. Summary

Section 501 requires, that, within six months, the Attorney General develop and implement Department of Justice guidelines for fair treatment of crime victims and witnesses in the Federal criminal justice system. All Federal law enforcement agencies outside the Justice Department must adopt consistent guidelines.

## 2. Current Federal Law

Federal law does not currently provide for the development of comprehensive guidelines for fair treatment of crime victims and witnesses, nor does it address the specific objectives set forth in section 501. No Federal executive policies set forth general or specific guidelines for fair treatment of victims and witnesses; nor are there executive branch initiatives to achieve the same result by way of policy statements or guidelines.

## 3. Problems of Current Law

The need for such guidelines was addressed by the Attorney General's Task Force on Violent Crime which recommended that the Attorney General ". . . should take a leadership role in ensuring that the victims of crime are accorded proper status by the criminal justice system" and by Chief Justice Warren Burger who, in his State of the Judiciary address, declared that the "rights of crime victims should be given equal time with the rights of the accused and convicted criminals."

The victim's interest in seeing these changes happen was clearly articulated at the subcommittee hearing on S. 2420. "My life has been permanently changed," one witness told the Subcommittee. "I will never forget being raped, kidnapped, and robbed at gunpoint."

"However," she went on, "my sense of disillusionment with the judicial system is many times more painful. I could not, in good faith, urge anyone to participate in this hellish process." She then went on to recite instances of being kept in the dark, of being treated insensitively, of having her trial given three last-minute postpone-

ments, of having her feelings discounted by the sentencing judge—
and so on—a long and familiar litany of hurts that well-meaning
public agencies so often inflict on victims.

The fact that the process is often "hellish" for victims has outraged
many in the criminal justice field, leading Attorney General William
French Smith, for one, to say, "Some rights of law-abiding Americans
are so fundamental as to cry out for protection . . . they include the
right to civilized and compassionate treatment when we have fallen
victims to a law-breaker."

On the local level, an increasing number of individual law enforce-
ment agencies, courts, prosecutors' offices and correctional depart-
ments are taking it upon themselves to address victim and witness
concerns. In addition, several states (Washington, Oklahoma, Ne-
braska, Wisconsin) have passed "victims' bill of rights" legislation
to encourage such activities.

According to the American Bar Association, the "basic" bill of rights
which spurred the subsequent legislation is Wisconsin's:

950.04 Basic bill of rights for victims and witnesses. Vic-
tims and witnesses of crimes have the following rights:

(1) To be informed by local law enforcement agencies
and the district attorney of the final disposition of the
case. If the crime charged is a felony or is specified in
ch. 940, the victim shall be notified whenever the defend-
ant or perpetrator is released from custody.

(2) To be notified that a court proceeding to which
they have been subpoenaed will not go on as scheduled,
in order to save the person an unnecessary trip to court.

(3) To receive protection from harm and threats of
harm arising out of their cooperation with law enforce-
ment and prosecution efforts, and to be provided with
information as to the level of protection available.

(4) To be informed of financial assistance and other
social services available as a result of being a witness or
a victim of crime, including information on how to apply
for the assistance and services.

(5) To be informed of the procedure to be followed in
order to apply for and receive any witness fee to which
they are entitled.

(6) To be provided, whenever possible, a secure wait-
ing area during court proceedings that does not require
them to be in close proximity to defendants and families
and friends of defendants.

(7) To have any stolen or other personal property ex-
peditiously returned by law enforcement agencies when
no longer needed as evidence. If feasible, all such prop-
erty, except weapons, currency, contraband, property
subject to evidentiary analysis and property the owner-
ship of which is disputed, shall be returned to the person
within 10 days of being taken.

(8) To be provided with appropriate employer inter-
cession services to ensure that employers of victims and
witnesses will cooperate with the criminal justice process

in order to minimize an employee's loss of pay and other benefits resulting from court appearances.

(9) To be entitled to a speedy disposition of the case in which they are involved as a victim or witness in order to minimize the length of time they must endure the stress of their responsibilities in connection with the matter.

(10) To have the family members of all homicide victims afforded all of the rights under subs. (1) to (4) and (6) to (9) and analogous services under § 950.05, whether or not they are witnesses in any criminal proceedings.

Like Wisconsin's, the statutes of other States generally enumerate certain "rights" which victims and witnesses should be able to expect from the justice system. In most instances, the statutes do not assign responsibilities for enforcing the rights, do not provide sanctions for failing to implement them, and do not create a cause of action by private citizens to have the rights enforced. Thus, the "rights" are more properly called "guidelines" as they are termed in S. 2420. Experience has shown that the State guideline legislation on which this section is modeled has been extremely helpful and that implementation, once institutionalized, is relatively routine.

In the Federal criminal justice system, there has been little activity to improve the treatment of victims and witnesses. Despite the August, 1981, recommendations of the Attorney General's Task Force on Violent Crime, the Federal system has been given no formal guidance or incentive for such activities. The Committee is well aware of the fact that the Federal system processes relatively few cases involving the kind of personal crimes that inspired State and local reform efforts. Nevertheless, such cases are not unheard of in the Federal system, and the victims and witnesses concerned deserve the fair treatment intended by this legislation. Also, it is well for the Federal system to adapt these guidelines for use with the kinds of victims and witnesses that it deals with. In addition the Committee expects S. 2420 as amended to serve as a model to encourage further state legislation in this area.

*4. Provisions of the Bill, as Reported*

Section 501(a) requires the Attorney General to develop guidelines addressing nine specified objectives and to assign responsibilities for implementing them. The Committee intends by this requirement to recognize legislatively what those working within the criminal justice system are increasingly recognizing—that many problems of crime victims and witnesses occur or are exacerbated within the system itself. The system can and should be responsive to victim and witness needs, both as a matter of simple justice and because their cooperation is absolutely essential to a successful criminal justice system.

While the Committee does not intend to limit the Attorney General to the nine objectives enumerated, it does require that the Attorney General address at least those nine, each of which has been successfully dealt with on the local level, either as a result of State statute or policy directive. In some instances, traditional work patterns may have to be changed to comply with the guidelines; however in no instance would the guidelines per se require the creation of new services beyond the various departments' budgetary capacity.

The objective of subsection 501(a)(1) is to provide crime victims with services and information to minimize the effects of the crime itself and provide realistic expectations regarding the victim's relationship to the criminal justice process. Under the subsection, law enforcement personnel are to ensure that victims receive emergency social and medical services as soon as posible. In addition, they are to provide victims important information regarding victim compensation, community-based treatment programs, the victim's participation in the criminal justice process, and the ability of law enforcement to protect them from intimidation. Most of the information required can easily be handled by simple printed material which the law enforcement officer hands to the victim.

While the Committee recognizes that scheduling changes are necessary in many criminal cases, it also knows that the victim or witness is often the last to learn about such changes—not infrequently when he or she appears at the scheduled proceeding. Subsection 501(a)(2) is an attempt to reduce the unnecessary, inconvenient, and often financially costly trips of victims and witnesses to proceedings which have been postponed or cancelled.

Subsection 501(a)(3) recognizes that victims and witnesses of serious crimes have a legitimate interest in the processing of their cases and seeks to facilitate their receiving advance notification of such proceedings. Such victims and witnesses (and specified relatives, if the victim is a minor, or a homicide victim) who provide appropriate officials with a current address and telephone number are to receive prompt notification of judicial proceedings relating to their case.

Subsection 501(a)(4) provides that, in serious cases, victims (or in the case of minors or homicide victims the victims' family) should be able to have their views heard by the prosecutor prior to certain key criminal justice decisions or recommendations in the case. The non-binding consultation should precede recommendations on pretrial release, pretrial diversion, dismissal, and plea negotiations. American Bar Association Criminal Justice Standard 14–3.1 addresses the last of these, stating that "the prosecuting attorney should make every effort to remain advised of the attitudes and sentiments of victims ... before reaching a plea agreement."

Whereas subsection 501(a) (1), (2), and (3) are concerned with giving victims and witnesses rudimentary, timely information about their cases, the intent of 501(a)(4) is to permit victims to respond to certain information in ways that give them a sense of involvement in their cases. In his testimony to the subcommittee on this point, Ronald Zweibel, chairman of the New York State Crime Victims Board, put the issue in a broad context:

> In the past, the victim's place and interests in the system were much more central, but government gradually took over the prosecutorial role from the victim and relegated the crime victim to a mere informational source. By being treated as information sources, crime victims are often exposed to further hardships including: having to tell their story over and over again; appearing in court in anticipa-

tion of testifying; helping the police with identification; and a variety of other time-consuming, frustrating, and psychologically difficult activities.

Regardless of these hardships, the information provided by the victim is essential to the continued functioning of the system. In this vein, due process must be afforded to the victim which is readily provided to the offender. It must be acknowledged that the interests which the system has in the cooperation and assistance that the victim can provide is no greater than the interests victims have in being informed, notified, and in having their input considered in matters which so fundamentally affect their rights as people harmed by a society which failed to protect them.

The Attorney General, in framing appropriate guidelines here, can look to several eminent and responsible prosecutors for their experience in implementing similar guidelines locally. Three examples include his Assistant Attorney General in charge of the Criminal Division, D. Lowell Jensen; a member of his Task Force on Violent Crime, David L. Armstrong; and Robert J. Miller, recently appointed to the President's Task Force on the Victims of Crime.

Their experience, like that of others, is that the effect of eliciting victim views on such discretionary decisions as a negotiated plea is not to undermine prosecutorial discretion, or to unduly burden the workload of assistant prosecutors, or to produce harsher punishments for offenders. Instead, in the vast majority of cases, the victim expresses confidence in the assistant prosecutor's recommendations but is grateful to have been consulted. On occasion, however, the consulting process uncovers some facts about the case about which the prosecutor is grateful to learn, and is influenced to handle the case in a more appropriate manner.

It is not uncommon for victims and witnesses to be required to wait for long periods in the same courtroom areas as those who have been accused of the crime in question. In almost every case this is extremely uncomfortable for the victims and prosecution witnesses; not infrequently, it is intimidating as well. Subsection 501(a)(5) seeks to obviate this problem by requiring waiting facilities for victims and prosecution witnesses which are separate from those used by defendants.

Victims of property crimes are often astonished and disillusioned to learn that, even though their property has been recovered by law enforcement officials, it is not returned to them for months or even years—if ever. Substituting well-documented photographs for the actual property has proven evidentially acceptable in California and several other States. This experience deserves replication wherever possible in the Federal system, as set forth in objective 501(a)(6).

Cooperation with the criminal justice system often results in substantial financial hardship for witnesses whose employers either withhold their wages for the work time lost or fire them because of their absence. On the local level where law enforcement officials have officially informed the witness' employer of the criminal justice obligations of the employee, the employer often agrees to forego such measures. Subsection 501(a)(7) encourages the federal system to use sim-

ilar employer intercession methods and, in cases of serious financial strain resulting from the crime itself or subsequent participation in the criminal justice process, to notify creditors as well.

The Committee recognizes that training law enforcement officials concerning the various issues addressed by the Attorney General's guidelines is essential if the guidelines are to have the intended effect. For many years, the FBI Academy and other federal facilities have offered training courses to leaders of state and local law enforcement agencies, as well as to federal law enforcement officers and officials. Some of the new techniques in aiding crime victims have already found their way into the curricula of these professional training courses. Subsection 501(a)(8) would encourage the Attorney General and other government officials to accelerate and institutionalize such efforts.

Subsection 501(a)(9) provides for a final objective that other important means of assisting victims and witnesses be considered. This subsection is intended to promote a spirit of inquiry among those drafting, promulgating and working within the guidelines to find techniques of victim responsiveness that are not otherwise included.

Subsection 501(a)(b) expressly states that nothing in the title shall be construed as creating a cause of action against the United States. The Committee is confident that the Attorney General will promulgate realistic guidelines and assign responsibility for them in such a way as to assure implementation to the maximum extent possible. Where implementation is not possible for budgetary or other reasons, the Committee does not wish to make the federal government liable.

Since the Department of Justice is not solely responsible for all federal law enforcement, section 502 requires other federal law enforcement agencies to develop their own guidelines consistent with the objectives set forth in section 501.

### TITLE VI—PROFIT BY A CRIMINAL FROM SALE OF HIS STORY

#### 1. Summary

Section 601 requires the Attorney General to report to Congress regarding any laws that are necessary to ensure that no federal felon profit financially as a result of notoriety (T.V. and media interviews, books, movies etc.) directly related to the criminal act until the restitutions rights of the victim are determined by forfeiture or civil proceedings.

#### 2. Current Federal Law

Current federal law offers no aid to victims seeking to obtain reparation owed them from certain kinds of convicted felons. That silence in the present law permits such offenders to transfer present or future earnings to others, thereby making themselves "judgment-proof" in any civil suit brought against them.

#### 3. Problems of Current Law

With print and broadcast media and paperback journalistic fascination with sensational, true-to-life story lines, the advent of the criminal-turned-author is a fairly recent phenomenon. Public awareness of the need for a statutory provision preventing such direct profit

crime followed the "Son of Sam" case in New York City. During 1977, the "Son of Sam" killer terrorized New York by a series of random shootings of young women. These killings generated considerable publicity for the killer. Subsequently, publishers were willing to pay large sums of money for the killer's story. Against this background, the New York State legislature passed a bill commonly referred to as the "Son of Sam" law (New York Exec. Law 632-a). Since enactment of New York's law, approximately 10 other states have passed similar legislation.

In testimony submitted to the Subcommittee on Criminal Law, Ronald A. Zweibel, Chairman of the New York State Crime Victims Board and President of the National Association of Crime Victim Compensation Boards, pointed out five specific provisions of the New York law which have been of "great importance." According to Mr. Zweibel:

(1) The law creates a new statute of limitations commencing from the date the Board places money in an escrow account. The victim has five years from such date within which to commence a civil action. This provision is critical in that the underlying statute of limitations on the intentional tort based upon the criminal act is usually one year. The commercial exploitation of the crime story will usually occur several years after the crime.

(2) Subdivision II of the statute sets out priorities in the payment of claims. As many different interests may be competing for payment out of the escrow account, it is important that priorities be set forth. Included among these priorities is a provision for the limited payment of the criminal's legal expenses incurred at any stage of the criminal proceedings against him.

(3) The Board's rules contain administrative due process procedures providing the criminal with notice and an opportunity to be heard at the time the Board seizes funds and prior to distribution of the funds.

(4) Adequate notice to the victim(s) of monies available. Subdivision II provides for publication of notices every six months for the entire five year period the escrow account exists.

(5) The definitional sections of the law are also of great importance. Subdivision X specifically defines victims and a person convicted of a crime. In addition, the term "representative," Section 632-a, is defined in the Board's statute to be one "who represents or stands in the place of another person, including but not limited to an agency, an assignee, an attorney, a guardian, a committee, a conservator, a partner, a receiver, an administrator, an executor or an heir of another person, or a parent or a minor." This definition was necessitated by a court interpretation of the original statute. Holding that a court appointed conservator was not a "representative" of the accused and thus monies paid to a conservator were not subject to the statute, this ruling points out the significance of precisely defining those third parties that the law applies to.

According to an American Bar Association survey, most of the state "Son of Sam" statutes have placed the profit monies in an escrow account. The state, generally through the Crime Victim Compensation Board, has a lien on the funds in this account. Notice of the fund's existence is sent to the victims periodically. The ABA report states:

> To recover from this fund, the victim or the victim's next-of-kin must bring a civil suit against the offender (e.g., a wrongful death action). If the defendant is convicted in the criminal action, and if the victim wins in the civil action, the victim may recover funds from the escrow account up to the amount of the civil judgment.
>
> The victim must bring action within a specified time period, usually from two to five years. If no civil action is filed within this period, the funds are either returned to the defendant (New York, South Carolina) or are paid over to a Victim Compensation Fund (Oklahoma). Escrow fund statutes also commonly contain a clause providing for funds to be paid out of the account for 'legal representation' of the defendant (New York).[29]

### 4. Provisions of the Bill, as Reported

Section 601 requires the Attorney General to develop a specific legislative proposal to assist crime victims in securing restitution when the federal felon profits financially due to the publicity about the crime. The Committee does not intend that the felon be prohibited from selling his ideas; the Committee is concerned that the victims of the publicized crime receive payment (in the form of restitution) before any other individuals do.

Because of the complexity of administering a program at the federal level absent a Federal Victim Compensation Board, S. 2420 requires the Attorney General to recommend the best approach. In this context the Committee was impressed by five suggestions Mr. Zweibel submitted for consideration by the Attorney General. The Committee commends them to the Attorney General's attention:

> (1) Moneys collected should be escrowed by the U.S. Department of Justice.
>
> (2) Federal Law should defer to state law when a state has a "Son of Sam" law which is applicable and enforceable; where an analogous state law does not exist or is not capable of enforcement, the federal law should be made to apply to crimes under the U.S. Criminal Code, whether or not the person is or was actually prosecuted by the Federal Government.
>
> (3) Victim suits should be brought in the United States District Courts or United States Court of Claims and should receive calendar preference.
>
> (4) Federal income taxes should be levied on income "received" by the perpetrator of the crime.
>
> (5) Subrogation rights of any state with a crime victim compensation program should be protected.

---

[29] "Victim/Witness Legislation," American Bar Association, 1981.

45

## Regulatory Impact Statement

In compliance with paragraph 11 Rule XXVI of the Standing Rules of the Senate it is hereby stated that the bill will have no additional direct regulatory impact. After due consideration, the Committee has determined that the changes in existing law contained in this bill will not increase or diminish any present regulatory responsibilities of the U.S. Department of Justice or of any other Department which exercises a law enforcement responsibility.

## Cost Estimate of Congressional Budget Office

A cost estimate of the Congressional Budget Office is on request but was not available at the time of this report.

## Judiciary Committee Vote

S. 240 was favorably polled out of the Judiciary Committee. Of the Committee's 18 members, 17 voted in support of the bill's passage, and Senator Byrd passed.

## Changes in Existing Law

The Committee felt that the requirement of subsection (4) of rule XXIX of the Standing Rules of the Senate should be waived. Because S. 2420 represents new law almost entirely and because the bill is reprinted in the first section of the report, compliance with the "Cordon Rule" was deemed unnecessary.

○