# EXHIBIT 2



# Congressional Record

United States of America

PROCEEDINGS AND DEBATES OF THE 97th CONGRESS, SECOND SESSION

## SENATE—FRIDAY, OCTOBER 1, 1982

*(Legislative day of Wednesday, September 8, 1982)*

The Senate met at 9:30 a.m., on the expiration of the recess, and was called to order by the President pro tempore (Mr. THURMOND).

### PRAYER

The Chaplain, the Reverend Richard C. Halverson, D.D., offered the following prayer:

Father in Heaven, as this body disperses, we commend to Thy care and keeping each one and each family. As Thou didst rest from Thy labors, so may they. As Thou hast ordained the family as the foundation of social order, may all families be strengthened and renewed.

We pray for those who face hard work in their campaigns. Insulate them against unfair attacks from opposition and a cynical press and public. Give them wisdom to respond wisely to legitimate issues and patience to endure nonissues which may be used against them. Encourage them when they are discouraged and give them the assurance that they may entrust their destiny to Thee, having done all that is right and proper to inform the people.

We pray for the electorate, that they will take their citizenship seriously and exercise their franchise wisely.

For those who remain to continue the work here, may there be times to relax, to rest, to be renewed personally and with loved ones. We pray this in the name of Him who promised rest to the weary, strength to the weak, and unconditional love to all. Amen.

### RECOGNITION OF THE MAJORITY LEADER

The PRESIDENT pro tempore. The majority leader is recognized.

### THE JOURNAL

Mr. BAKER. Mr. President, I ask unanimous consent that the Journal of the proceedings of the Senate be approved to date.

The PRESIDENT pro tempore. Without objection, it is so ordered.

### SENATE SCHEDULE

Mr. BAKER. Mr. President, after the recognition of the two leaders under the standing order, three Senators will be recognized under special orders for not to exceed 15 minutes each; to wit, Senators ABDNOR, GORTON, and PRYOR. After the execution of the special orders, there will be a brief period for the transaction of routine morning business to extend not past the hour of 10:30 a.m., in which Senators may speak for not more than 2 minutes each. After that, Mr. President, a variety of measures will be dealt with in the so-called wrap-up. I expect that the distinguished minority leader may be able to clear a number of items that have been cleared on this side. That may consume a fair amount of time and it may be necessary to extend the time for the transaction of routine morning business in order to accommodate that requirement.

After the so-called wrap-up—that is, the items that can be done by unanimous consent—has been cleared on both sides, a number of items suggest themselves as candidates for action by the Senate today such as the highway bill, S. 2574; the Commodity Futures Trading Corporation bill, S. 2109; the Securities and Exchange Commission bill, H.R. 6156; the export trading company conference report; the Nuclear Regulatory Commission reauthorization conference report, which is H.R. 2330; the missing children's con-

---

### NOTICE

An interim issue of the daily Congressional Record for the Ninety-seventh Congress, second session, will be published on Wednesday, October 20, 1982, during the adjournment, unless otherwise ordered by the Joint Committee on Printing.

None of the material printed in the Congressional Record after adjournment may contain subject matter, or relate to any event, which occurred after the date Congress officially adjourned.

No provision herein shall be construed to supersede the two-page limitation rule.

All material must be signed by the Member and delivered to the respective Office of the Official Reporters of Debates, Room H-132 or S-220 of the Capitol, Monday through Friday, between the hours of 10:00 a.m. and 3:00 p.m., through Wednesday, October 20, except Monday, October 11.

Members of Congress desiring to purchase reprints of material submitted for Record printing during the adjournment may do so through the Congressional Information Division located at the Government Printing Office. That office may be reached by telephoning 275-2226 between the hours of 8:00 a.m. and 4:30 p.m. daily.

By order of the Joint Committee on Printing.

CHARLES McC. MATHIAS, JR., *Chairman.*

---

● This "bullet" symbol identifies statements or insertions which are not spoken by the Member on the floor.

cial—due to the early release of a dangerous person from a Federal prison, for example—but who are blocked by the blanket or sovereign immunity. All of these problems are ones which have been described in compelling testimony before the Judiciary Committee by witnesses and victims, and I believe the appropriate responses to them are before us.

Luckily, we have an official body now convened which, I am assured, will take up these three issues and make substantive recommendations for their solution. The President's task force on victims of crime is now conducting public hearings and research in order to report to the President by December 31 on steps the Federal Government can and should take to redress the wrongs perpetrated against crime victims by the criminal justice system itself. Ably led by Chairperson Lois Herrington, the task force is more than likely to deal with all three of these issues in a thoughtful and realistic fashion. I look forward to their report, and to preparing legislation based upon it.

Mr. President, it is, unfortunately, not too strong a statement to make that most crime victims are victimized twice—the second time by the insensitivity of a criminal justice system which fails to acknowledge that people, too, are victims. This bill takes a long step forward in preventing that second crime. I am proud to be able to urge its passage today.

I thank my friend from South Carolina for every bit of the help he gave.

The substitute bill has been reviewed by a number of my colleagues on the Judiciary Committee, and by Members of the other body who have worked with equal diligence to enact a landmark victim rights bill this session. I am assured that my proposal has the support of all concerned as a reasonable accommodation between the two similar bills which the two Houses have proposed.

This substitute includes a number of improvements both to our earlier proposal and to the House version of this legislation. Changes in the two proposals can be summarized as follows.

The substitute version of the section of the bill relating to intimidation of victims and witnesses does not (except in the catchline of the section) refer to "victim" or "witnesses" (the Senate passed bill did use those terms). This change from the Senate bill was agreed to in order to insure the broadest possible coverage of this provision. The purpose of section 1512 in the legislation now being considered is to broaden the universe of protected individuals to anyone who might suffer intimidation or injury because of his knowledge of a commission of a crime. Any victim (victims, of course, are nowhere specifically protected in current law) would be covered, as would witnesses who would not be scheduled to testify because, for example, the testimony would constitute hearsay, be privileged, or be otherwise inadmissible.

Subsection (3) of section 1512(a) of the Senate passed bill, general obstruction of justice residual clause of the intimidation section, was taken out of the bill as beyond the legitimate scope of this witness protection measure. It also is probably duplicative of obstruction of justice statutes already in the books.

In line with the ABA's recommendations regarding witness protection, the Senate proposed penalties for intimidation and retaliation of victims and witnesses have been changed. Acts of intimidation and retaliation which involve violence, threats of violence, or "misleading conduct" will be treated as felonies and will have a penalty of not more than 10 years' imprisonment or not more than $250,000 in fines (which is higher than the fine proposed in the Senate passed bill), or both. Less serious acts will be treated as misdemeanors and shall carry the penalty of imprisonment of not more than 1 year or fined not more than $25,000, or both. The penalties attached to the more serious crimes underline the view that such intimidation of victims and witnesses cannot be tolerated and will be treated as such; the lesser penalties for crimes which are in the nature of harassment will make prosecutions more likely, and more likely to result in convictions, for such crimes.

The House version of the section on "civil action to restrain witness or victim intimidation," has the same objectives as earlier Senate proposal. However, the House bill is closely based on the system working well in California and elsewhere, and, more significantly, in conformity with current Federal rules of civil procedure. That means it will be easier to implement, and therefore can go into operation sooner. The House version does not require a hearing to get a temporary restraining order issued. However the person subject to the order may thereafter contest it in an adversarial proceeding before a judge.

As mentioned above, 18 U.S.C. 1503 already provides some witness protections—but only as to witnesses under subpena in active cases. The Senate passed bill allowed a slight overlap between old section 1503 and new sections 1512 and 1513. The House version amends section 1503 so it will make no mention of, and provide no protection to, supenaed witnesses. The compromise accepts the House position. By amending section 1503 in this way, the proposal will contribute to a clearer and less duplicative law.

The restitution section draws from both proposals to provide more detailed procedures, and to make it easier to use and understand. The basic concept in both bills is retained that the sentencing court, in the event that restitution is not ordered, must state for the record its reasons. Thus, restitution to the victim will be the expected norm, and no longer an afterthought.

The Senate passed bill proposed, limited its restitution provisions to title 18 crimes. The House version extended the provisions to aid people victimized during an airline hijacking. That addition is just and meritorious, and is included in the new proposals.

The Senate passed version of this legislation stated that any order of restitution would be given precedence over any Federal lien. This provision was deleted because it was the view of both House and Senate sponsors that such a change in current law merited hearings, and there have never been any. We do believe, however, that this issue should be subject to further examination and, we hope, congressional hearings.

The restitution section has also been altered since the version originally passed by the Senate in that it no longer delineates a number of regulatory offenses not subject to the restitution provision. This section was found to be superfluous, because earlier in the bill, it is stated that restitution orders will be limited to title 18 offenses.

The Senate passed bill making it clear that a Federal conviction is res judicata as to the underlying facts in any subsequent civil proceeding. The only changes the substitute would make in that provision is to make clear that it applies only to Federal civil actions and to State cases when such treatment is consistent with State law.

In the section of the legislation calling for the Attorney General to develop and implement guidelines for the fair treatment of victims and witnesses in the criminal justice system, the time period in which the Department of Justice must act has been extended from 6 to 9 months.

The section on Federal accountability for the premature release or escape of dangerous offenders has been dropped from the bill. The Department of Justice would like more time to examine the issue, and many interested parties would like further hearings on it. We are hopeful that such examination will take place soon, and that legislation to address this very serious problem will be considered in the near future.

The section expanding the witness protection program was dropped because of the controversy surrounding the program as it now exists. Consequently, the issues in this bill must await a broader examination of the operation of the current program.