IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:21-cr-179-RCL |
| | ) |
| | ) **Oral argument requested** |
| RACHEL POWELL, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT POWELL'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HER MOTION TO MODIFY CONDITIONS OF RELEASE**

Defendant Powell, through her counsel, files this reply to the government's Response in Opposition to Motion to Modify Conditions of Release. ECF No. 69. The government contends that Powell's strict release conditions of home detention and location monitoring should be maintained because her "stated reasons [for modification] do not withstand scrutiny." *Id.* at 1. In reality, virtually no factual representation made in the government's 15-page opposition is both accurate and relevant to the matter at issue. Powell has been under house arrest for over 482 days. Though she is a presumptively innocent person, Powell is barred from visiting her ailing children and from attending funerals, her daughter's wedding, and the birth of her granddaughter. Because the government has articulated no specific danger to the community posed by the grandmother-defendant, the Court should grant Powell's motion to modify her conditions of release.

**A. The government's "Background" facts are inaccurate and irrelevant**

"Even before January 6, 2021," the government contends, Powell "showed an inclination towards violence." ECF No. 69, p. 1. That representation is inaccurate. The government uses

1

the weasel words "inclination towards violence" because Powell, 42, has no criminal history, much less one of violence. The mother of eight children, and grandmother to five more, Powell is gainfully employed full-time.

To support its claim that Powell has an "inclination towards violence," the government has used its vast resources to trawl her social media accounts in search of some stray remark that will suit its purposes. But even this effort at cherry picking falls flat. That in 2020 Powell commented on social media that she "agree[d] with the possibility of civil war happening," ECF No. 69, p. 1, does not mean the grandmother endorses that "possibility" or intends to bring it about through violence. If this sort of speculative political prediction justified taking the speaker's liberty, then the government should probably proceed immediately to arrest the editorial boards of the newspapers of record before moving on to millions of other Americans.

Next, the government describes Powell's communications about "her surveillance of a public official's home." ECF No. 69, p. 2. This representation is significant, as the government intends to convey the suggestion to the Court that Powell "surveilled" the unnamed "public official's home" in order to plan some act of violence. *Id.* In fact, when the government made this representation to the Court it was likely in possession of information showing that Powell's remarks concerned no "surveillance" of a public official or planned violence at all but rather her attendance at a political protest outside the official's residence, a not uncommon contemporary phenomenon that is not subject to criminal penalty. Exh. 1. Powell contacted local courthouse authorities before attending the protest to make sure it was legal for her to attend. As a flyer likely in the government's possession shows, protesters were directed to be "Peaceful!" *Id.* The government omitted that information from its opposition.

The government references social media photographs of Powell "at a gun range shooting

2

firearms." ECF No. 69, p. 2.  Indeed, Powell has attended handgun training courses, as all responsible and legal gun owners should do.  Powell has saved targets from training courses in which she participated.  Displaying them is not evidence of criminal or dangerous activity.

The government's representations about Powell and her large family are no more accurate.  It claims that when she "left for Washington, D.C., to attend the events of January 6, 2021, she left her minor children at home, unattended." ECF No. 69, p. 2.  That is false.  Powell's three older daughters, all experienced babysitters, were available to watch and take care of the younger children.  It is only on the rarest of occasions that Powell is unavailable to watch the children on her own.

**B.  The government's descriptions of Powell's actions on January 6 are inaccurate**

The government represents that, at the Capitol's west front on January 6, Powell "confront[ed] officers at [] bike rack barriers," "engag[ed] in physical confrontations," "pushed directly against the barriers (and officers) in a forceful effort to continue the intrusion into the Capitol," "did not respond to police commands or other efforts to disperse the crowd," and was "indifferen[t] to acts of violence in her presence." ECF No. 69, pp. 4-5.

Powell disputes each of these characterizations.  The government contends that the images depicted in its Exhibits 2-5 lend support to them.  ECF No. 69, pp. 4-7.  As the Court will see for itself, they do not.  Exhibit 2 appears to depict Powell touching a barrier.  Exhibit 3 merely depicts Powell's face.  While Exhibit 4 appears to depict a protester assaulting a law enforcement officer, Powell, to the right in a pink beanie hat, faces away from that incident.  Powell does not recall any moment where police officers ordered her to disperse or attempted to arrest her, which she would have peacefully permitted.

The government adds that "[w]hile outside of the archway at a nearby broken window,

3

[Powell] used a bullhorn to address others already inside the Capitol about its floor plan. . ." ECF No. 69, p. 7.  That is not accurate.  Powell has and had no knowledge of the "floor plan" of the Capitol Building.  The government's Exhibit 6 appears to depict Powell holding what it describes as an "ice-axe." *Id.* at 8.  Powell does not recall holding such a sickle-shaped object.  She asks that, insofar as that image is somehow important to the Court's resolution of this motion, the government produce the original images in its possession capturing this moment before the Court disposes of the motion.

Similarly inaccurate are the government's descriptions of Powell's activities after January 6.  Nothing in the government's narrative reveals that Powell was a "fugitive" before self-surrendering on February 4, 2021.  ECF No. 69, p. 10.  Rather, notwithstanding its halfhearted point that a magazine "described the defendant as a fugitive," the government appears to have abandoned any formal legal argument that Powell was a "fugitive" and thus a risk of flight under 18 U.S.C. § 3142(f)(2)(A).  Powell left her children in the care of their father, who knew she was away retaining counsel to inquire about the FBI's "Be On The Look-Out" notice featuring Powell.  As the government knows, there were no pending charges or arrest warrants out for Powell at the time she traveled to the Philadelphia area to meet with her then legal counsel.  After charges were filed, Powell surrendered immediately, not "eventually" as the government inaccurately represents.  ECF No. 69, p. 10.

The government represents that agents executing the search warrant for Powell's residence "discovered several smashed cellular telephones, so-called 'go bags,' gun paraphernalia and ammunition, Ninja knives, and other weapons." ECF No. 69, p. 10.  This collection of insinuations is misleading.  The "smashed cellular telephones" were parts of mobile phones being repaired by Powell's husband and daughter, who fix such devices as a hobby and

to help friends. The "Ninja knives" and "go bags" belonged to one of Powell's younger sons, who throws the "Ninja knives" in the backyard. As Powell previously explained, she lawfully owns firearms ("gun paraphernalia and ammunition"), which is not evidence of a risk of flight or criminality.

### C. The government's arguments for maintaining home detention and location monitoring conditions are baseless

The government begins with the premise that "the burden that any release condition or even pretrial detention places on a defendant is not a relevant factor under the Bail Reform Act." ECF No. 69, p. 13. The government has it exactly backwards. If the burdens on a defendant created by pretrial detention or strict release conditions are not an enumerated "factor" under the BRA that is merely because "'[i]n our society liberty is the norm, and [its restriction] prior to trial or without trial is the carefully limited exception.'" *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The burdens on a defendant are not a "factor" only in the narrow sense that their absence is the constitutional default. Presuming any burden on liberty is unacceptable, the Court determines whether the government has shown that such burdens on the defendant are justified by "carefully limited exception[s]." *Id.* Where the exception is the defendant's dangerousness, the government must point to a "concrete, prospective threat to public safety." *Munchel*, 991 F.3d at 1280.

Here, the government does not articulate any specific danger to society that would necessitate further home detention and location monitoring for the grandmother defendant. Rather, it nitpicks Powell's "chosen living arrangements," as though these somehow justify burdening her liberty interests. ECF No. 69, p. 12. The government adds that "the primary residence for the defendant's children is with their father. . . Thus, the circumstances she complains of are intermittent and temporary." *Id.* That is wrong. Powell and her former spouse

5

amicably share even custody of the children. Prior to January 6, the children lived their entire lives with Powell and only stayed with their father every other weekend. To this day, the children are with their mother more than half the time, especially Powell's six-year-old daughter, as the father holds full-time employment and does not have anyone to assist him in taking care of the children. Powell's children are exceptionally dependent on her. So, the government is quite wrong to contend that the "circumstances [Powell] complains of are intermittent and temporary." To the contrary, Powell and her children have been burdened by them for over 482 days.

After selling her home to raise legal funds, Powell attempted to rent an inexpensive efficiency apartment with her children, located within walking distance of her place of employment. Bathing and cooking facilities were located in an adjacent dwelling. But Pretrial Services would not allow her to move into the apartment as the location-monitoring equipment would not reach the adjacent home. Without any other options available, Powell ultimately decided to both rent a room in the adjacent home, as well as the efficiency apartment. But as she previously explained to the Court, this solution means that her three teenage sons are living alone in the efficiency unit without her supervision.

The government represents that Powell's order of release "currently provides for home confinement with an exception 'for other activities approved in advance by the pretrial services office or supervising officer.'" ECF No. 69, p. 14 (citing ECF No. 9). "Thus," the government argues, "any modification of conditions that are working effectively is unnecessary." *Id.* That is quite wrong. Pretrial Services has made clear to Powell that she has permission only to work 40 hours per week and has denied her requests to visit ailing children and to attend funerals, her daughter's wedding, and the birth of her granddaughter. As explained, Powell's employer is losing business as a result of her inability to work more than 40 hours per week. The burdens

6

placed on Powell by her curfew and location monitoring are enormous, both personal and financial.

Because the government has not pointed to any concrete, particularized, prospective danger that Powell, who has no criminal history, poses to public safety, the Court should grant her motion to modify the conditions of her release such that she is no longer subject to location monitoring and a curfew.

Dated: June 12, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Nicholas D. Smith*
　　　　　　　　　　　　　　　　　　　Nicholas D. Smith (Va. Bar No. 79745)
　　　　　　　　　　　　　　　　　　　7 East 20th Street
　　　　　　　　　　　　　　　　　　　New York, NY 10003
　　　　　　　　　　　　　　　　　　　Phone: (917) 902-3869

**Certificate of Service**

I hereby certify that on the 12th day of June, 2022, I filed the foregoing motion with the Clerk of Court using the CM/ECF system, and counsel of record were served by electronic means.

　　　　　　　　　　　　　　　　　　　*/s/ Nicholas D. Smith*
　　　　　　　　　　　　　　　　　　　Nicholas D. Smith (Va. Bar No. 79745)
　　　　　　　　　　　　　　　　　　　7 East 20th Street
　　　　　　　　　　　　　　　　　　　New York, NY 10003
　　　　　　　　　　　　　　　　　　　Phone: (917) 902-3869