# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-cr-179-RCL |
| | : | |
| RACHEL POWELL, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' UPDATED SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of resentencing in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Rachel Powell ("Powell" and "the defendant") to 57 months' incarceration, 36 months' supervised release, $2,000 restitution, and a mandatory special assessment. The government's recommended sentence is in the midpoint of the newly calculated advisory Guidelines range for the defendant of 51-63 months.

## I.    INTRODUCTION

The defendant, Rachel Powell, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

1

On January 6, Powell was one of the first rioters to break through onto restricted Capitol grounds near the Peace Circle and she remained at the Capitol for over four hours. At the West Plaza, Powell pushed against barricades and encouraged other rioters to attack the police line. On the Lower West Terrace, Powell observed violence and chaos, including rioter assaults against officers. Powell then entered the Capitol building herself through a broken window. Later, Powell used an ice axe and a makeshift battering ram in an effort to break through a different window and breach the Capitol at a different location, encouraging other rioters to enter the Capitol building as well. After the riot, instead of remorse, Powell continued to call for political violence, minimized her conduct, and blamed officers for the violence on January 6.

The government recommends that the Court sentence Powell to 57 months' incarceration for her violations of 18 U.S.C. § 231(a)(3); 18 U.S.C. § 1361 (less than $1,000); 18 U.S.C. § 1752(a)(1) and (b)(1)(A); 18 U.S.C. § 1752(a)(2) and (b)(1)(A); 18 U.S.C. § 1752(a)(4) and (b)(1)(A); and 40 U.S.C. §§ 5104(e)(2)(D), (F), and (G). A 57-month sentence reflects the gravity of Powell's conduct, and continued contempt, but also acknowledges that, despite her planned violence and threatening conduct, she did not directly engage in violent conduct within the Capitol building.

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.     FACTUAL BACKGROUND

### a.   Defendant Powell's Role in the Capitol Attack

Defendant Powell's role in the Capitol attack has been well documented. The government need not recount it at length here, and incorporates by reference its original sentencing memo, ECF No. 121 ("Government's 2023 Sentencing Memo"), for a full discussion of Powell's criminal conduct. Below, the government emphasizes certain aspects of that conduct supporting the government's recommended sentence.

#### i.   Before January 6, 2021

Powell went to the U.S. Capitol with the intent of disrupting the certification of the 2020 presidential election and engaging in intimidation and violence to make that goal a reality. Social media posts before January 6, 2021, revealed that Powell believed that the 2020 election had been stolen, and engaged in disturbing behavior related to protesting the election that foreshadowed her violent and destructive behavior at the Capitol. *See* Government's 2023 Sentencing Memo at 3-5. For instance, Powell attended some November 2020 protests in Washington, D.C. "with a little beater bar all weekend and wasp spray and knives in [her] bag." *Id.* at 5. She also engaged in the intimidation of legislators before January 6, conducting surveillance at a female legislator's home. *Id.* In November 2020, when an associate questioned whether it would be better to contact legislators at their offices and "leave their family and private residences alone," Powell explained, "No, it isn't. These fuckers need to start listening to the people and doing their jobs… It's time to take protests to their doors." *Id.*

#### ii.   On January 6, 2021

On January 6, 2021, Powell impeded officers attempting to hold back the mob and encouraged and facilitated breaches of both police lines and the Capitol building itself. Powell was

one of the first rioters to break through onto Capitol grounds near the Peace Circle. *Id* at. 2, 6. At the West Plaza, Powell repeatedly pushed against barricades – both pushing against barricades with her hands to prevent officers from locking the barricades together and then pushing against the barricades with her body in an attempt to force the barricades to fall over. Id. at 6-7. During this time, Powell also encouraged other rioters to attack the police line. *Id.* at 7. As the police line at the West Plaza finally broke, Powell shoved a barricade against an officer on the line, and immediately after joined other rioters in collectively shoving retreating officers into a semi-circle near the corner of the West Plaza. *Id.* at 8-9. After the West Plaza was breached, Powell climbed up to the Lower West Terrace ("LWT") where she watched rioters at the "tunnel" thrash against and assault officers for over an hour. *Id.* at 9-10. Eventually Powell entered the Capitol building itself through a broken window. *Id.* at 10. After exiting the building, Powell then went to a different window and used an ice axe and a cardboard tube or pole that served as a makeshift battering ram to break through this second window and breach the Capitol building at a second location. *Id.* at 10-12. Powell observed that immediately on the other side of that second broken window was a room with a glass floor,  and underneath that floor was another set of rooms. *Id.* at 12. She encouraged other rioters to "coordinate together" if rioters wanted "to take the building." *Id.* at 12.

### iii.  **After January 6, 2021**

After January 6, 2021, social media revealed that Powell initially celebrated rioters' violence against officers on January 6 (e.g., "the police fought back well… that was a fight to get them to retreat. They had their barricades removed from them and were pushed back. Some police showed fear…"); then began to blame police for the violence (e.g., "[t]he police instigated us and brutally abused the whole crowd"); and then moved on to minimizing her and mischaracterizing her actions and motivations (e.g., "Should I go to prison for years over a broken window because

4

of a protest that got out of control?"). *Id.* 13-18. Additionally, Powell engaged in obstructive behavior with regard to the investigation into her criminal behavior on January 6.  Video and phone records revealed that Powell deleted significant video and/or photographic evidence from her time at the Capitol, specifically anything she recorded after 1:39 p.m. *Id.* at 18-20. Phone records also reveal that Powell hide her phone from the FBI. *Id.* at 20.

### III.    PROCEDURAL POSTURE AND THE CHARGES

On April 5, 2023, a federal grand jury returned a superseding indictment charging the Powell with nine counts. Following a two-day bench trial, Powell was convicted of all nine counts, including Count Two, Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and § 2.[2] On October 17, 2023, this Court sentenced Powell to 57 months of incarceration for her criminal conduct. Over a year later, on October 28, 2024, following a joint motion, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit Court") ordered that the defendant's conviction under § 1512(c)(2), be vacated. *United States v. Powell*, USCA Case # 23-3213, Order October 28, 2024 (D.C. Cir. 2024).

On November 13, 2024, the defendant filed a motion to vacate the defendant's conviction under 18 U.S.C. § 1512(c)(2). ECF No. 130. The government responded on November 19, 2024, and did not oppose the § 1512(c)(2) conviction being vacated.  ECF No. 131.  However, the government outlined that the Court *may* conclude that, even with the vacated § 1512(c)(2) conviction, a resentencing may not be necessary "given the Court's statements within the Findings of Fact and Conclusions of Law, coupled with the application of § 3553(a) factors set forth at sentencing." ECF No. 131 at 3.

---

[2] For Count Three, Powell was convicted of a lesser-included offense: misdemeanor destruction of government property instead of felony destruction of government property (damage over $1,000).

However, the government requested the opportunity to file a supplemental sentencing memorandum in aid of resentencing if the Court determined that a resentencing was necessary, and on December 10, 2024, this Court ordered, "within seven (7) days of this Order, the government shall submit an updated sentencing memorandum, with a recalculation of the sentencing guidelines to account for the vacatur of Ms. Powell's § 1512(c) conviction." ECF No. 133. The government recognizes that the Court is best positioned to answer whether a resentencing is necessary here.

After the vacatur of the § 1512(c)(2) conviction, eight of Powell's nine original counts of conviction, including four felonies, remain:

(1) 18 U.S.C. § 231(a)(3) (Civil Disorder), a five-year felony;

(3) 18 U.S.C. § 1361 (Destruction of Government Property), a one-year misdemeanor;

(4) 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), a ten-year felony;

(5) 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disruptive and Disorderly Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), a ten-year felony;

(6) 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Act of Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon), a ten-year felony;

(7) 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building), a six-month misdemeanor;

(8) 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in the Capitol Grounds or Buildings), a six-month misdemeanor; and

(9) 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building), a six-month misdemeanor.

## IV.    THE ORIGINAL SENTENCING

At Powell's original sentencing, the Court imposed a sentence of 57 months of incarceration on Counts One, Two, Four, Five, and Six. ECF No. 122 (Judgment); *see also* Sentencing Transcript dated October 17, 2023 ("Oct. 2023 Sentencing Tr."), at 25. At the time of the original sentencing, 57 months was the bottom of the Court's calculated Guidelines imprisonment range (of 57-71 months' imprisonment). At that time, the Court reasoned:

> You said all the right things today, but you didn't say the right things when you were wearing that mask with holes in them, which really almost put you in jail that day when I learned you were mocking the Court. You have skated along for a long time now.
> And I know you think it's been harsh, but I'm going to give you the minimum under the guidelines. I do not think that I can justify, in light of the serious nature of what happened here, a departure from the guidelines. I will give you the minimum of the guidelines, but that's as far as I'm willing to go.

Oct. 2023 Sentencing Tr. at 25, ln. 3-13.

Within the final PSR, the Probation Department correctly identified which offense guideline was applicable to each count of conviction; however, the PSR only went through the calculations for Count Two (now vacated). *See generally* ECF No. 117. The final PSR grouped all counts because each count of conviction "embodie[d] conduct that [wa]s treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another count." ECF no. 117, ⁋ 72. That count of conviction is no longer applicable.

Additionally, the Count heard brief arguments on specific objections to the application of the Guidelines; importantly, whether a plus-two enhancement would apply for obstruction of justice under U.S.S.G. § 3C1.1. The Court noted, "The Court will not apply a two-level adjustment for obstruction of justice pursuant to USSG §3C1.1." ECF No. 123 (Statement of Reasons). But the basis for the ruling was not on the merits, and instead on its late addition to the calculation. *See*

Oct. 2023 Sentencing Tr. at 7-8 (discussing that the defendant did not have an opportunity to object to the obstruction enhancement because it was not included in the initial PSR, and the Court noting that "I think it's late in the day to add it"). Given the timing and posture, this concern would also no longer be applicable.[3]

## V.    CONDUCT SINCE SENTENCING

At sentencing, Powell was provided an opportunity to address the Court. She told the Court, "I am deeply ashamed of my conduct on January 6. I regret it, and it will never happen again. If I could go back, things would be different, but I can't. My remorse and my feelings of guilt are deeper than anybody in this court could ever imagine." Oct. 2023 Sentencing Tr. at 21, ln. 19-25.

But after sentencing, in an interview with CNN on the weekend before she reported to begin her sentence, Powell was asked: "Do you regret that day?" She answered: "Umm. I regret . . . I have a lot of remorse for ruining my family's life. I mean in one day I destroyed everything, for really for nothing." *See* https://www.cnn.com/videos/politics/2024/01/09/convicted-january-6-rioter-prison-sentence-bu-orig.cnn (last accessed December 11, 2024) at 2:30-2:48. During this interview, Powell made clear that she mostly regretted her actions on January 6 in as much as they affected her family (noting again that "I do have remorse for…destroying my whole family's life"). *Id.* at 2:56-3:00. Powell minimized her conduct, expressing remorse "for breaking a window" "thinking irrationally," and not "just sit[ting] down at this protest." *Id.* at 2:56-3:13. Notably, she

---

[3] The Court also declined to apply a two-level upward departure, pursuant to U.S.S.G. 3A1.4, cmt. n.4, requested by the government. *See* Oct. 2023 Sentencing Tr. at 3-4 ("... I'll decline that two-level upward departure that the government seeks under application note 4 to Section 3A1.4… [E]ven if a departure were available, I would exercise my discretion here not to impose it. The reason is, Ms. Powell's conduct, while certainly serious, is not sufficiently egregious to warrant this departure. Imposing it in this case might create an unwarranted sentence disparity…In addition, there are many January 6 defendants whose conduct was even more serious than Ms. Powell's, but who did not receive this departure…").

expressed no awareness of the significance and serious effects of her actions. Powell did not express remorse for pushing and fighting with officers with while working with the mob to break a police line; for entering the Capitol building and providing a way for many more rioters to enter the building after her; for helping to delay the certification through violence and inducing fear;  for the terror she and other rioters put members of Congress and their staff through that day. Powell also did not explain her conduct prior to January 6 (visiting homes of sitting members of Congress), did not fully explain her conduct on January 6 (leaving out her other violent conduct that day, including pushing against a police line and shoving a barricade against an officer in the line as the line broke), and did not explain her conduct after January 6 (destroying evidence of her criminal activity).  Particularly telling, Powell also alluded to baseless conspiracy theories about January 6 ("I cannot prove it was a setup, but I feel like 'what if it was?'") .  *Id.* at 3:49-4:10.

The CNN interview was not the defendant's only interview prior to her self-surrender. On January 3, 2024, the defendant also took part in an internet show and was asked about January 6, 2021. During the interview, Powell attempted to blame officers and falsely cast them as aggressors who went after law-abiding protestors. In the video, Powell shares footage recorded from within restricted Capitol grounds – taken on the West Front on the concrete right next to the inaugural stage – on January 6, 2021, but describes herself as standing on a "public sidewalk" while police are shooting at her and her fellow rioters. https://rumble.com/v44z1hc-jan-3-2023-right-now-j6-political-target-rachel-powell-sentenced-to-51-mont.html  (Last Accessed December 11, 2024) at 14:56-15:17.



*Figure 1: Screenshot from https://rumble.com/v44z1hc-jan-3-2023-right-now-j6-political-target-rachel-powell-sentenced-to-51-mont.html at approximately 17:30 (Last Accessed December 11, 2024)*

Powell explained that the individuals "unjustly prosecuted" for assaults on police were just trying to save lives. The defendant additionally states, "I'm sorry for my actions on that day, but can I get a little bit of grace?" *Id.* at 20:45-20:50.



*Figure 2: The defendant at approximately 31:35 into the video explaining that it was the officers who were aggressive by attempting to push her off a "public sidewalk."*

Powell also asserted that the events of January 6, 2021, had been improperly portrayed in order to target her as a conservative political protester.

In another online interview occurring after sentencing, Powell also minimized her conduct. She lamented that her breaking a window should not require a 57-month sentence, and that the government should "suck it up" and pay for that broken window because "they" stole an election and beat "good people . . . good hard-working people for showing up and being good citizens." *See Figure 3 at 28:00-29:00.*



*Figure 3: Screenshot from https://rumble.com/v42fs9f-wait-til-you-hear-what-pres.-trump-said-privately-to-3-boys-whose-family-wa.html at approximately 27:25 (last accessed December 11, 2024)*

In referencing her sentencing, the defendant also described the Court as "a harsh sentencer." And that even though the Court "gave me the bottom of my guidelines," Powell insisted her sentence was still "really harsh."



*Figure 4: Screenshot from the same video as Figure 3 at time stamp 33:33.*

Each of the above three videos are linked within the defendant's personal fund-raising website. These additional statements can be considered by this Court if the Court orders resentencing. But the government has not been able to compile and organize other conduct that may have occurred since the defendant's sentencing and would be unlikely able to before January 5, 2025. For these reasons, the government would request that if the Court were to order a resentencing, that the timeline allow for the parties to compile post-sentencing conduct of the defendant.

## VI.    RECALCULATION OF THE SENTENCING GUIDELINES[4]

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

In review of this Court's findings of fact and conclusions of law ("Findings of Fact," ECF No. 110); the Government's 2023 Sentencing Memo; and the Final PSR (ECF No. 117), following the vacatur of Count Two, the correct Guidelines calculations are:

<u>Count One: 18 U.S.C. 231(a)(3) (Obstructing Officers on the West Plaza)</u>

No applicable Chapter Two Guideline exists in the Statutory Appendix for this offense. Accordingly, "the most analogous guideline" should be used. U.S.S.G. § 2X5.1. Here, the most analogous guideline for 18 U.S.C. § 231(a)(3), Obstructing Officers During a Civil Disorder, is U.S.S.G. §2A2.4, "Obstructing or Impeding Officers."

| | | |
|---|---|---|
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| U.S.S.G. § 2A2.4(b)(1)(A) | Physical Contact | +3 |
| U.S.S.G. § 2A2.4(c)(1)[5] | *Cross Reference (Aggravated Assault)* | |

---

[4] A recalculation of the sentencing guidelines requires this Court to consider first the relevant conduct. U.S.S.G. § 1B1.3. For this Court's consideration of the relevant conduct at this stage (pre-resentencing order) the government will not rely on any information not presented or originally relied upon at the defendant's October 17, 2023, sentencing. However, should this Court order a resentencing, the relevant conduct analysis may be different, for instance, it may include consideration of the post-sentencing conduct discussed above.

[5] The cross-reference in U.S.S.G. § 2A2.4(c)(1), directs that § 2A2.2 (Aggravated Assault) be

| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
|---|---|---|
| U.S.S.G. § 3A1.2(a) & (b) | Official Victim | +6 |
| U.S.S.G. § 3C1.1 | Obstruction | +2 |
| | **Total** | **22** |

<u>Count Three: 18 U.S.C. § 1361 (Damaging the Window to HT-2 with an Ice Axe and Large Cardboard Pole Battering Ram)</u>

The Statutory Appendix lists two potentially applicable guidelines for a Section 1361 offense, U.S.S.G. §2B1.1 (Property Damage or Destruction) and §2B1.5 (Damage to, or Destruction of, Cultural Heritage Resources). The Introduction to the Appendix states that, if "more than one guideline is referenced for a particular statute, use the guideline most appropriate for offense conduct." Here, U.S.S.G. § 2B1.1, which applies to property damage or destruction, is the most appropriate starting guideline for 18 U.S.C. § 1361, which applies to the damage or destruction of any government property.

| U.S.S.G. § 2B1.1(a) | Base Offense Level | 6 |
|---|---|---|
| U.S.S.G. § 2B1.1(b)(1)(A) | Loss: $6,500 or less | no increase |
| U.S.S.G. § 2B1.1(b)(16)(B) | Dangerous Weapon | increase to **14**[6] |
| U.S.S.G. § 3C1.1 | Obstruction | +2 |
| | **Total** | **16** |

---

applied if the conduct constituted aggravated assault. The commentary to § 2A2.2 defines aggravated assault as "a felonious assault that involved… (D) an intent to commit another felony." U.S.S.G. § 2A2.2, cmt., n.1. Here, the conduct includes an assault (Powell shoving a barricade against an officer as the police line broke), which was felonious as it involved physical contact with the officer and the intent to commit another felony, Obstructing Officers During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (both types of assault are punishable as felonies pursuant to 18 U.S.C. § 111(a)). Furthermore, because the felonious assault involved an intent to commit another felony aside from the assault, specifically, Obstructing Officers During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3)) the conduct constituted aggravated assault pursuant to U.S.S.G. § 2A2.2, cmt., n.1. Accordingly, the aggravated assault cross reference applies and § 2A2.2 is the correct guideline.

[6] U.S.S.G. § 2B1.1(b)(16) reads, "If the offense involved . . . (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14."

Additionally, the cross reference in U.S.S.G. § 2B1.1(c)(4) to U.S.S.G. § 2B1.5(b) (Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleontological Resources) does not apply here since the resulting offense level under § 2B1.5 (offense level 14, pursuant to § 2B1.5(b)(6)) is not greater than that determined above.

<u>Count Four: 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Entering and Remaining in Restricted Building or Grounds with a Deadly or Dangerous Weapon)</u>[7]

The Statutory Index in Appendix A to the Sentencing Guidelines identifies *two* Chapter Two Guidelines for violations of 18 U.S.C. § 1752: U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and U.S.S.G. § 2B2.3 (Trespass). Since Section 1752(a)(1) is essentially a trespass statute, § 2B2.3 (Trespass) is "the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." Appendix A, Introduction; *see also* U.S.S.G. § 1B1.2(a); U.S.S.G. § 2X5.1.

| | | |
|---|---|---|
| U.S.S.G. § 2B2.3(a) | Base Offense Level | 4 |
| U.S.S.G. § 2B2.3(b)(1)(A)(vii) | Restricted Building or Grounds | +2 |
| U.S.S.G. § 2B2.3(b)(2) | Dangerous Weapon Possessed | +2 |
| U.S.S.G. § 2B2.3(c)(1)[8] | *Cross Reference (Intent to Commit Another Felony)* | |
| U.S.S.G. § 2X1.1(a) | *Attempt, Solicitation, or Conspiracy (Other Felony – Count Six, Physical Violence on Restricted Grounds with a Dangerous Weapon)* | |
| | | |
| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
| U.S.S.G. § 2A2.4(b)(1) | Physical Contact or Dangerous Weapon | +3 |
| U.S.S.G. § 2A2.4(c)(1)[9] | *Cross Reference (Aggravated Assault)* | |

---

[7] While entering and remaining on restricted Capitol grounds, Powell both engaged in violent pushes of barricades and police lines and in destroying a window of the Capitol building with dangerous weapons (an ice axe and cardboard pole used as a battering ram), as discussed above. This was also noted in the Court's Findings of Fact for Count Four: (1) "Powell proceeded to engage in multiple violent confrontations with law enforcement officers as she attempted to bypass the bike racks" (referring to Powell pushing against barricades and police lines) and (2) "Powell used an ice axe and a large cardboard pole to smash a window of the Capitol." Findings of Fact at 20-21.

[8] The cross-reference in U.S.S.G. § 2B2.3(c)(1) (Trespass), directs that "[i]f the offense was committed with the intent to commit a felony offense, apply § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that felony offense, if the resulting offense level is greater than that determined above" under § 2B2.3(a)-(b) (a total offense level of 8).

Here while entering and remaining on restricted Capitol grounds, Powell had the intent to commit multiple other felonies, including obstructing officers during a civil disorder (as reflected in Count One); engaging in disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon (as reflected in Count Five); and engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon (as reflected in Count Six). The most serious of these felony offenses, i.e. the offense with the highest offense level, is Count Six's physical violence in a restricted building or grounds with a deadly or dangerous weapon. Accordingly, per U.S.S.G. § 2X1.1(a), we would apply "[t]he base offense level from the guideline for the substantive offense [Count Six below], plus any adjustments from such guideline [used by Count Six] for any intended offense conduct that can be established with reasonable certainty."

[9] For a detailed discussion of the applicability of the aggravated assault cross reference here, pursuant to U.S.S.G. § 2A2.4(c)(1), please see the discussion in footnote 3 above.

| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
|---|---|---|
| U.S.S.G. § 2A2(b)(2)(B) | Use of a Dangerous Weapon | +4 |
| U.S.S.G. § 3C1.1 | Obstruction | +2 |
| | **Total** | **20** |

<u>Count Five: 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon)</u>

As noted above, the Statutory Index in Appendix A lists *two* Chapter Two Guidelines for violations of 18 U.S.C. § 1752: U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and U.S.S.G. § 2B2.3 (Trespass). Since Section 1752(a)(2) involves more than mere trespass – specifically disorderly and disruptive conduct – § 2B2.3 (Trespass) is not appropriate here, and instead § 2A2.4 (Obstructing or Impeding Officers) is "the guideline most appropriate for the offense conduct charged." Appendix A, Introduction; *see also* U.S.S.G. § 1B1.2(a); U.S.S.G. § 2X5.1.

| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
|---|---|---|
| U.S.S.G. § 2A2.4(b)(1)(A) | Physical Contact or Dangerous Weapon | +3 |
| U.S.S.G. § 2A2.4(c)(1)[10] | *Cross Reference (Aggravated Assault)* | |
| U.S.S.G. § 2A2.2(a) | Aggravated Assault | 14 |
| U.S.S.G. § 2A2(b)(2)(B) | Use of a Dangerous Weapon | +4 |
| U.S.S.G. § 3C1.1 | Obstruction | +2 |
| | **Total** | **20** |

<u>Count Six: 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon – Pushing Officers and Damaging the Window)[11]</u>

As noted above, the Statutory Index in Appendix A lists *two* Chapter Two Guidelines for violations of 18 U.S.C. § 1752: U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) and U.S.S.G. § 2B2.3 (Trespass). Since Section 1752(a)(4) involves more than mere trespass – specifically physical violence – § 2B2.3 (Trespass) is not appropriate here, and instead § 2A2.4 (Obstructing or Impeding Officers) is "the guideline most appropriate for the offense conduct charged." Appendix A, Introduction; *see also* U.S.S.G. § 1B1.2(a); U.S.S.G. § 2X5.1.

---

[10] As discussed above, Powell engaged in various types of disorderly and disruptive conduct on restricted Capitol grounds, including violent pushes of barricades and police lines and destroying a window of the Capitol building with dangerous weapons (an ice axe and cardboard pole used as a battering ram). For a detailed discussion of the applicability of the aggravated assault cross reference here, pursuant to U.S.S.G. § 2A2.4(c)(1), please see the discussion in footnote 3 above.

[11] As discussed above, Powell engaged in multiple types of physical violence on restricted Capitol grounds, including violent pushes of barricades and police lines and destroying a window of the Capitol building with dangerous weapons (an ice axe and cardboard pole used as a battering ram). This was confirmed in the Court's Finding of Facts, which noted that "Powell engaged in acts of physical violence against property in a restricted building or grounds and did so knowingly. Specifically, she knowingly pushed against officers and destroyed a window." ECF No. 110 at 23.

| U.S.S.G. § 2A2.4(a) | Base Offense Level | 10 |
|---|---|---|
| U.S.S.G. § 2A2.4(b)(1) | Physical Contact or Dangerous Weapon | +3 |
| U.S.S.G. § 2A2.4(c)(1)[12] | *Cross Reference (Aggravated Assault)* | |
| U.S.S.G. § 2A2.2(a) | Base Offense Level | 14 |
| U.S.S.G. § 2A2(b)(2)(B) | Use of a Dangerous Weapon | +4 |
| U.S.S.G. § 3C1.1 | Obstruction | +2 |
| | **Total** | **20** |

<u>Counts Seven – Nine: 40 U.S.C. §§ 5104(e)(2)(D), (F), and (G)</u>

As Class B misdemeanors, the Guidelines do not apply. U.S.S.G. § 1B1.9.

<u>Grouping</u>

| Count | Offense | Victim | Offense Level |
|---|---|---|---|
| Count One | 18 U.S.C. § 231(a)(3): Obstructing Officer During a Civil Disorder | Officers on the West Plaza | 22 |
| Count Three | 18 U.S.C. § 1361: Destruction of Government Property (with axe and pole) | Architect of the Capitol | 16 |
| Count Four | 18 U.S.C. § 1752(a)(1) and (b)(1)(A): Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (axe and pole) | Congress | 20 |
| Count Five | 18 U.S.C. § 1752(a)(2) and (b)(1)(A): Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (axe and pole) | Congress | 20 |
| Count Six | 18 U.S.C. § 1752(a)(4) and (b)(1)(A): Engaging in Physical Violence against Property in a Restricted Building or Grounds with a Deadly or Dangerous Weapon (axe and pole) | Architect of the Capitol | 20 |

---

[12] The cross-reference in U.S.S.G. § 2A2.4(c)(1), directs that § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault. The commentary to § 2A2.2 defines aggravated assault as "a felonious assault that involved… (D) an intent to commit another felony." U.S.S.G. § 2A2.2, cmt., n.1. Here, the conduct includes an assault (Powell shoving a barricade against an officer as the police line broke), which was felonious as it involved physical contact with the officer and the intent to commit another felony, Obstructing Officers During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (both types of assault are punishable as felonies pursuant to 18 U.S.C. § 111(a)). Furthermore, because the felonious assault involved an intent to commit another felony aside from the assault (Obstructing Officers During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3)), the conduct constituted aggravated assault pursuant to U.S.S.G. § 2A2.2, cmt., n.1. Accordingly, the aggravated assault cross reference applies and § 2A2.2 is the correct guideline.

Under U.S.S.G. § 3D1.2, "closely related counts" group. Powell's five felony counts of conviction form two groups:

Group One: Count One forms its own group. The victim for Count One consists of the officers that Powell obstructed on the West Plaza. The offense level for this group is 22.

Group Two: Counts Three, Four, Five, and Six form the second group. In the first instance, Counts Three and Six have the same victim (the Architect of the Capitol) and so group pursuant to U.S.S.G. § 3D1.2(b). Similarly, Counts Four and Five have the same victim (Congress), and so group pursuant to U.S.S.G. § 3D1.2(b). However, all four counts ultimately group because one count (Count Three, the destruction of the Capitol window with an axe and pole) "embodies conduct that is treated as a specific offense characteristic" to Counts Four, Five, and Six, specifically the dangerous weapon enhancement. U.S.S.G. § 3D1.2(c). The offense level for this group is 20.

One unit is assigned to Group One because it is the group with the highest offense level. U.S.S.G. § 3D1.4(a). Group Two is two levels less serious and is counted as an additional unit. U.S.S.G. § 3D1.4(a). Because there are two units, there is a two-level increase in offense level. U.S.S.G. § 3D1.4. Accordingly, the combined offense level is **24**.

<u>Final Guidelines Range</u>

With the Criminal History category of I,[13] and an offense level of 24, the sentencing Guidelines range is 51 months to 63 months' imprisonment. The presently imposed sentence of 57 months is within this guideline range.[14] The government believes this would be an appropriate

---

[13] Powell is not eligible for a sentencing reduction under the Section 4C1.1 amendment because Powell "used violence or credible threats of violence" in connection with her offenses on January 6, including direct violent confrontations with officers, as discussed above. *See* U.S.S.G. § 4C1.1(a)(3).

[14] But if this Court were unpersuaded and believed the U.S.S.G. § 3C1.1 obstruction adjustment

sentence on resentencing in light of the fact that falls in the newly calculated Guidelines range. This Court is best suited to determine whether its original sentencing intent would have differed given these similar ranges.

## VII.    OTHER GUIDELINES CONSIDERATIONS

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c). Because the defendant's Guidelines range does not capture the unprecedented and uniquely harmful nature of her crimes, which struck at the heart of our democracy and the rule of law, the government must contextualize the crime. Moreover, the following information and argument make it clear that – while the government is not advocating for such variance or departure – the requested sentence of the midpoint of the guidelines range is not only reasonable, but the bare minimum needed to fully balance the defendant's conduct and the circumstances in which she committed said conduct. One cannot divorce the gravity of the overall threat to democracy from the defendant's violent and destructive behavior.

Indeed, as it stands now, nothing in this defendant's guidelines calculation reflects the fact that the defendant was responsible for substantial interference with Congress's work to peacefully transfer power from one administration to the next.[15] There are no specific offense characteristics here for attacking democracy or abandoning the rule of law. Thus, a sentence higher than the low

---

should remain inapplicable, the range for an offense level of 22 and Criminal History Category I is 41 months to 51 months.

[15] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *United States v. Fischer*, 114 S.Ct. 2176 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

end of the defendant's range better "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

It is not hyperbole to call what happened on January 6 a crime of historic magnitude. As judges of this district have repeatedly and clearly stated, January 6 was an unprecedented disruption of the nation's most sacred function—conducing the peaceful transfer of power "The events that occurred at the Capitol on January 6th will be in the history books that our children read, our children's children read and their children's children read. It's part of the history of this nation, and it's a stain on the history of this nation." *United States v. Miller*, 21-CR-75-RDM, Sent. Tr., at 67. But just as the history books will describe the crimes of January 6, so will they tell the story of how this nation responded. Future generations will rightly ask what this generation did to prevent another such attack from occurring. The damage done to this country on January 6 must be reflected in the sentences imposed on those who caused the damage—it must not be treated as just another crime.

Even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

Since *Fischer*, judges have similarly sentenced defendants to account for the disparity between the guidelines and the actual context. For example, in *United States v. Sparks*, 21-cr-87-TJK, Judge Kelly sentenced a defendant with an advisory guidelines range of 15-21 months to 53

months' imprisonment. In doing so, the Court applied U.S.S.G. §§ 5K2.7 and 5K2.21 and noted

that the jury had found that the defendant had the corrupt intent to interfere with Congress. Because

Sparks' advisory guideline range was driven by the § 231 conviction, that range did not "account

for the defendant's intent to obstruct, not just law enforcement officers doing their duty under that

statute, but a proceeding, or for the purposes of [U.S.S.G. §] 5K2.7, a governmental function.

Sentencing Tr., at 94-95. And not any proceeding, but one foundational to our country's

governance." *Id.* at 93. The court found Sparks' intent to "interfere or obstruct with the electoral

college vote certification . . . plays an important role in explaining why" Sparks' advisory guideline

range did not fully account for his criminal conduct. *Id.* at 94.

Other judges have recognized this disparity too. *See United States v. Robertson*, 21-cr-34-

CRC (imposing an upward departure because the conduct resulted in a significant disruption of

government); *United States v. Dunfee*, 23-cr-36-RBW (imposing an upward departure because the

guidelines no longer adequately captured the defendant's intent to stop the peaceful transfer of

power). While the Supreme Court's decision in *Fischer* has changed defendant's advisory

Guideline range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors

[because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its

entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically

different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507,

at 4-5 (cleaned up).  Indeed, "*Fischer* does not mean that I cannot consider at sentencing evidence

that establishes that the defendant intended to obstruct Congress' certification of the electoral vote

in determining whether . . . the resulting guideline range fully accounts for the criminal conduct."

*Sparks* Sentencing Tr. at 95. *See also United States v. Kelly*, 21-CR-708-RCL, ECF 151, at 5

("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the

severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)"); *United States v. Jensen*, 21-CR-6-TJK, Sent. Tr. at 16 ("given the importance and the significance of the proceeding of certifying the Electoral College votes, I would vary upward -- even if this [sentencing enhancement] didn't apply, I would vary upward when considering the nature of the offense.")

To be clear, the fact that the government is not seeking a variance or departure does not diminish the gravity of our request and the need to appropriately account for the conduct and the crime.[16]

## VIII.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

Powell's felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. As discussed above and in the Government 2023 Sentencing Memo, Powell was one of the first rioters to break through onto restricted Capitol grounds near the Peace Circle; she pushed against barricades and officers and encouraged other rioters to attack and breach the police line on the West Plaza; she entered the Capitol building through a broken window; she used an ice axe and a

---

[16]As noted above, if the court does not believe the U.S.S.G. § 3C1.1 obstruction adjustment is applicable here, the Guidelines range for an offense level of 22 and Criminal History Category I is 41 months to 51 months. If the Court believes this lower Guidelines range is applicable, the government would seek a departure or variance to 57 months' imprisonment from that range.

makeshift battering ram to break through a different window and breached the Capitol at a different location, encouraging other rioters to enter the Capitol building as well; and after the riot, she continued to call for political violence, minimized her conduct, and blamed officers for the violence on January 6. The nature and circumstances of Powell's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 57 months' imprisonment.

### B.  The History and Characteristics of the Defendant

As discussed above, January 6, 2021, was not the first time that Powell attempted to use intimidation against politicians because she was upset with the 2020 election results – even before January 6 she had surveilled a female legislators' private home. Also, as discussed in the Government's 2023 Sentencing Memo, Powell repeatedly violated her release conditions: in April 2021, Powell mocked the Court's pre-trial release conditions by participating in a Facebook livestream wearing a mesh mask attached together by strings; on July 25, 2022, Powell violated her location monitoring rules by joining her employer/boyfriend for a lunch date at a brewery; and on September 6, 2022, Powell again violated her location monitoring rules by exiting her residence during her curfew hours. *See* Government's 2023 Sentencing Memo at 30. The defendant's lack of criminal history fails to tell the whole story of her contempt for following the law.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Powell's criminal conduct on January 6 was the epitome of disrespect for the law.

### D.      The Need for the Sentence to Afford Adequate Deterrence

#### *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[17] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. From her initial statements on social media after January 6, 2021, it was clear that Powell failed to grasp the magnitude of what she had done at the Capitol, and instead she celebrated the violence on January 6, minimized her conduct, and blamed police for any violence instead. Post-sentencing interviews confirm that Powell still fails to grasp the magnitude of what she did at the Capitol, and instead she continues to celebrate the violence on January 6, minimize her conduct, and blame law enforcement for any violence, including perpetuating false conspiracy theories about January 6. This continued lack of acceptance of responsibility suggests that Powell needs a sentence that will provide sufficient deterrence/incentive for her to stop the troubling behaviors that began even before January 6.

### E.      The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United*

---

[17] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

*States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and

weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[18] "When an offense is uniquely serious, courts will consider the need to impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768–69 (D.C. Cir. 2018) (cleaned up).

Although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[19] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

A similar procedure is seen in *United States v. Jeremy Groseclose*, D.D.C. 21-cr-311-CRC. Following trial in *Groseclose*, the defendant was convicted of felony violations of 18 U.S.C. §§

---

[18] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[19] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

231(a)(3) and 1512(c)(2). On August 2, 2024, in light of the Supreme Court's decision in *United States v. Fischer*, 114 S.Ct. 2176 (2024), the government moved to dismiss the felony violation of 18 U.S.C. § 1512(c)(2). In *Groseclose*, the only felony violation the defendant was sentenced on was the violation of 18 U.S.C. § 231(a)(3).

Although the conduct of Groseclose and Powell appear similar, Powell's is far more severe. Powell pushed against officers on the West Plaza, where Groseclose prevented a security door from closing in the Capitol Visitor Center. Both defendants had online communications before January 6, 2021, suggesting an understanding of what was to occur on that day, but Powell's communications outline that she was acting on her rhetoric by "taking the protest to [the Representatives'] doors!" Powell's conduct after January 6, 2021, was also more severe as she took active steps to avoid apprehension by the FBI by destroying phones and fleeing.

At sentencing, on October 2, 2024, Judge Cooper determined the guidelines were properly scored at an offense level of 23 for Groseclose. At a level 23, the applicable guideline range is 46 to 57 months; however, Judge Cooper varied downward to 40 months reasoning the relatively brief nature of Groseclose's engagement with police officers warranted the variance. Here, Powell's engagement with police was anything but brief.

Powell was within a stone's throw of officers from the initial breach at 12:55 p.m., to when officers cleared the Presidential Inaugural Stage at approximately 5:10 p.m. During that time, she pushed against bicycle racks, used various implements to breach a window, encouraged other rioters to seek alternative routes to "take the building," and entered the building exclaiming "Our House!" Powell's more severe conduct warrants a more severe sentence. This is particularly so given her apparent lack of remorse, despite her initial claims of acceptance to this very Court.

27

The case of *United States v. Zachary Alam*, D.D.C. 21-cr-190-DLF, is also instructive. In *Alam*, the defendant encouraged other rioters to scale a wall to the Upper West Terrace to gain entry into the Senate Wing. Once inside, Alam moved to the House side of the building and procured a black helmet that he used to break the Speaker's Lobby windows. Alam completely dislodged the glass from the door's frame. Additionally, much like the present case, Alam was arrested with evidence of his flight from authorities and his plans to destroy evidence.

In *Alam*, the defendant was convicted by jury on September 13, 2023, but his sentencing was continued to November 7, 2024. In *Alam*, the government also moved to dismiss the felony violation of 18 U.S.C. § 1512(c)(2), in light of *Fischer*.

At sentencing, Judge Dabney L. Friedrich imposed a sentence of 96 months, followed by 36 months of supervised release, departing upward of the offense level 24 guideline range.[20] In *Alam*, the Court determined that the plus-two enhancement for obstruction was not appropriate because the defendant only made plans to destroy evidence instead of actually destroying evidence.

The focal point of violence in both *Powell* and *Alam* was the breaking of a window into Congress. The difference between the broken interior window feet from evacuating members of Congress, and the exterior window yards away from those members, meant Alam's window caused more fear to the individuals in that area; however, both defendants had the same idea in mind— both were attempting to "take the building."

IX.    **RESTITUTION**

Under 18 U.S.C. § 3556, a sentencing court must determine whether and how to impose restitution in a federal criminal case. Because a federal court possesses no "inherent authority to order restitution," *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012), it can impose

---

[20] Alam was in criminal category III, which produced a range of 63 – 78 months.

restitution only when authorized by statute, *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011). First, the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *Papagno*, 639 F.3d at 1096; *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA). Second, the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA. *Papagno*, 639 F.3d at 1096. The MVRA applies to certain offenses including those "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss," 18 U.S.C. § 3663A(c)(1)(B), a "crime of violence," § 3663A(c)(1)(A)(i), or "an offense against property … including any offense committed by fraud or deceit," § 3663A(c)(1)(A)(ii). *See Fair*, 699 F.3d at 512 (citation omitted). But Powell was convicted of multiple violations of offenses under Title 18, and so the VWPA does apply.

The applicable procedures for restitution orders issued and enforced under these two statutes is found in 18 U.S.C. § 3664. *See* 18 U.S.C. § 3556 (directing that sentencing court "shall" impose restitution under the MVRA, "may" impose restitution under the VWPA, and "shall" use the procedures set out in Section 3664).

Within the original sentence, the Court ordered restitution in the amount of $2,753. ECF No. 122, p. 7. Vacating one felony count does not disturb the amount of damage caused by Powell.

## X.    FINE

The defendant's convictions subject her to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See*

U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023). The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994). "In assessing a defendant's income and earning capacity, the court properly considers whether a defendant can or has sought to 'capitalize' on a crime that 'intrigue[s]' the 'American public.'" *United States v. Seale*, 20 F.3d 1279, 1284–86 (3d Cir. 1994).

Within the original sentence, the Court ordered a fine in the amount of $5,000. ECF No. 122, p. 7. Although the correctly scored guidelines would now move from an offense level of 25 to 24, the fine table provides the two levels are within the same range—between $10,000 and $100,000. *See* U.S.S.G. § 5E1.2.

XI.    **CONCLUSION**

a.  **Proposed Sentence**

This Court retains discretion to order resentencing. Ultimately, this Court's sentencing intent under the § 3553 factors at the time of the original sentencing determines whether the guideline calculation of the 18 U.S.C. § 1512(c)(2) conviction played a role in this Court's ultimate decision on the proper sentence. If the Court decides to resentence Powell, for the reasons set forth above, the government recommends that the Court sentence Powell to 57 months' incarceration, 36 months' supervised release, $2,753 in restitution, a fine of $5,000, and a mandatory assessment of $455.

### b. Proposed Dates for Resentencing.

On December 10, 2024, this Court also ordered the parties to submit proposed dates for resentencing to occur, "before January 5, 2025—the 12-month mark of Ms. Powell's incarceration." ECF No. 133. The government does not believe resentencing needs to be scheduled prior to January 5, 2025, given that the newly calculated Guidelines range (51-63 months' imprisonment) is substantially similar to the defendant's prior Guidelines range and the defendant's conduct on January 6, 2021, is no different now than it was on October 17, 2023. As shown above, the newly calculated Guidelines range is nowhere near the 6-to-12-month range argued for by the defendant. Accordingly, the government would respectfully request a later resentencing, that would allow the parties the benefit of an updated PSR and would include both updated Guidelines calculations as well as the defendant's conduct since the October 2023 sentencing date.

However, should the Court still believe that a resentencing date before January 5, 2025 is necessary, as previously indicated in the defendant's Proposed Dates for Resentencing filing (ECF No. 134), counsel for the government has availability on December 18, 19, and 20.  (Although on December 19, government counsel has a hearing at 10 a.m. and another at 4 p.m.) Additionally, counsel for the government is also available on Thursday, January 2, 2024, and Friday, January 3, 2024.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Date: December 17, 2024

/s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Mich. Bar No. P79246
601 D St. NW
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov

LUCY SUN
Assistant United States Attorney
Mass. Bar No. 691766
lucy.sun@usdoj.gov